UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

HYDENTRA HLP INT. LIMITED, a
foreign corporation d/b/a METART,

      Plaintiff,

vs.

MAXIMUM APPS INC., a foreign
company d/b/a SEX.COM; CLOVER
HOLDINGS LIMITED PARTNERSHIP,
a foreign company d/b/a SEX.COM;
SEX.COM; FREDERIC VALIQUETTE,
an individual; and John Does 1-20,

      Defendants.

_____/

**COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF**
**AND DEMAND FOR JURY TRIAL**

     Plaintiff, Hydentra HLP Int. Limited, d/b/a MetArt, (hereinafter referred to as "Plaintiff") by and through its counsel, file this complaint against Defendants, Maximum Apps Inc. d/b/a Sex.Com, Clover Holdings Limited Partnership d/b/a Sex.com; Sex.com; Frederic Valiquette, an Individual, and the John Doe Defendants (collectively hereinafter referred to as "Defendant" or "Defendants").

**JURISDICTION AND VENUE**

    1.    Plaintiff is a foreign corporation organized under the laws of the Cyprus, with offices located in Los Angeles, California.

- 1

2.      Defendant Maximum Apps Inc. is a foreign corporation, with offices in Montreal, Canada.  Upon information and belief, in conjunction with the other Defendants, Maximum Apps Inc. owns and operates Sex.com, an Internet website that displays and distributes adult oriented videos, photographs, content, and services.

3.      Defendant Clover Holdings Limited Partnership is a foreign corporation, with offices in Montreal, Canada.  Upon information and belief, in conjunction with the other Defendants, Clover Holdings owns and operates Sex.com, an Internet website that displays and distributes adult oriented videos, photographs, content, and services.

4.      Defendant Frederic Valiquette is a resident of Montreal, Canada.  Upon information and belief, Defendant Valiquette directs, controls, and/or assists in determining the content on Sex.com.

5.      Defendants registered the domain Sex.com through the registrar Network Solutions, LLC, a company located in Jacksonville, Florida.  By entering into an agreement with Network Solutions, LLC, Defendants agreed to jurisdiction in the State of Florida regarding any actions or obligations pertaining to the website.

6.      Defendants utilize Perfect Privacy LLC, a Florida company, to protect the identity of the owners and/or operators of Sex.com.

7.      Defendants have availed themselves of the trademark laws of the United States, seeking protection of the mark "sex.com" through registration at the United States Trademark Office, Registration Number 75448953.

8.      Defendants have further availed themselves of the intellectual property laws of the United States, registering as an Internet Service Provider with the United States Copyright Office

and seeking protections against copyright infringement liability through DMCA safe harbor protections.

9.      Defendants contract with United States advertisers, which use geotracking to target advertisements directly into districts of the United States, including Florida.

10.     Defendants specifically target Internet users in the United States. Defendants overtly state that 25% of its viewers are in the United States. Upon information and belief, over 40% of Sex.com's viewers are in the United States.

11.     Upon information and belief, the Defendants all transact business in this Judicial District by way of their interactive website and through their interactivity with subscription based and non-subscription based Florida members who have been offered the infringing and unlawful content at issue herein and who have, themselves, engaged in acts of infringement in this District and State. The Court has personal jurisdiction over the Defendants, who have engaged in business activities in and directed to this district, and have committed tortious acts within this district or directed at this district.

12.     The Court has personal jurisdiction over the Defendants, foreign companies and individuals who have engaged in business activities in and directed to the United States and this district, and have committed tortious acts within the United States and this district or directed at the United States and this district.

13.     Any alien defendant is subject to jurisdiction in any district. See 28 U.S.C. 1391 ("An alien may be sued in any district.") See also Fed. R. Civ. P. 4(k)(2).

14.     This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 17 U.S.C. § 101 et seq., Section 32 of the Lanham Act, 15 U.S.C. §1114(1), 15 U.S.C. § 1121, 15 U.S.C. §1125, 28 U.S.C. §1331 and 28 U.S.C. §1338.

15.     Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b) and/or (c).

16.     This Court has personal jurisdiction pursuant to 28 U.S.C. §§ 1391(b), (c) and/or (d) and 28 U.S.C. § 1400(a).

<u>**PARTIES**</u>

17.     The named Plaintiff is the rightful trademark and intellectual property owner of the respective United States trademarks and intellectual property that are the basis for this action.

18.     Plaintiff, more commonly known as the MetArt Network of adult entertainment properties, is a group of erotic websites that explore and deliver sensuality and sexuality through artistic photography, video, erotic stories, and through articles about beauty, culture, and nudity. These websites include MetArt.com, SexArt.com, Errotica-Archives.com, EroticBeauty.com, TheLifeErotic.com, RylskyArt.com, MichealNinn.com, ALSScan.com, VivThomas.com, EternalDesire.com, Stunning18.com, HollyRandall.com, domai.com, goddessnudes.com, MagikSex.com, and bbfilms.com.

19.     Since 1999, Plaintiff has grown its trademark brands into a globally recognized leader of sensual art garnering numerous industry awards through the use of studios around the globe, exotic locations, high budget productions, engaging storylines, famed photographers and directors coupled with the dedication from its artists and technicians.

20.     The MetArt library is comprised of exclusive content that features over 5000 models shot by 250 photographers/directors including such notables as Vivian Thomas and the late Zalman King, who also brought Hollywood films such as Wild Orchid, Two Moon Junction, 9 ½ Weeks, and the Showtime network groundbreaking series Red Shoes Diaries.

21.     The MetArt websites are paid membership sites.

22.     MetArt engages in extremely limited licensing of its content to other entities or websites for viewing, in addition to the small sample of promotional materials provided to MetArt affiliates for the sole purpose of the affiliates' promoting MetArt property.

23.     Any licensing is done with the intent for brand exposure and is limited to a small subset of hand-selected content.  Predominantly, the MetArt business model is simply that a user must be a paid member to a MetArt site to view MetArt's works.

24.     Plaintiff is the respective producer, distributor, and exclusive licensor of its own motion pictures in the United States as well as throughout the world.

25.     Plaintiff has registered with the United States Copyright Office the copyrighted works identified in this Complaint.

26.     Plaintiff has taken industry standard steps to identify its products, including placing recorded warnings at the beginning and end of video productions that appear whenever those videos are played.  Plaintiff's videos and photographs are watermarked with Plaintiff's readily identifiable logo.

27.     Plaintiff's MetArt trademark and service mark have been continuously used in commerce since May 2002.

28.     U.S. Trademark Registration No. 3152759 was registered on October 10, 2006.

29.     Plaintiff has expended considerable effort and expense in promoting its trademark and the goods sold under the trademark MetArt.  As a result, the purchasing public has come to know, rely upon and recognize the mark MetArt as an international brand of high quality adult entertainment.

30.     Plaintiff's SexArt trademark and service mark have been continuously used in commerce since April 2011.

31.     U.S. Trademark Registration No. 4191754 was registered on August 14, 2012.

32.     Plaintiff has expended considerable effort and expense in promoting its trademark and the goods sold under the trademark SexArt.  As a result, the purchasing public has come to know, rely upon and recognize the mark SexArt as an international brand of high quality adult entertainment.

33.     Defendants Maximum Apps Inc. and Clover Holdings Limited Partnership are owners and/or operators of Sex.com and/or doing business as Sex.com.

34.     Defendant Valiquette is one of the directors and/or executives of the companies and directs, controls, and/or assists in determining the content on Sex.com.

35.     Defendants conduct business as Sex.com, operate the website, and derive direct financial benefit through advertising sales, memberships, and affiliate partnerships on the website.

36.     Defendants compete against Plaintiff in the distribution, display, and sale of adults-only audio-visual works through Internet distribution and divert potential customers from Plaintiff.

37.     Does 1-20 are individuals or entities that own Sex.com, and/or act in concert with Sex.com, the true names and capacities of which are presently unknown to Plaintiff.  It is for that reason Plaintiff sues these Defendants by fictitious names. Plaintiff avers that each of the Doe defendants, along with the named defendants, jointly or severally, is responsible for the damages alleged herein.

## STATEMENT OF FACTS

38.     Congress' implementation of safe harbor provisions in the Digital Millennium Copyright Act ("DMCA") provides true internet service providers with protection against liability for copyright infringement resulting from the actions and/or postings of their users.  As a primary

example, the safe harbor protections provide YouTube.com with protection from liability should one of its users post a copyright protected video without authority or license.

39.    The DMCA safe harbor provisions have been systematically abused by Internet copyright infringers in an attempt to garner protection for pirate websites displaying copyrighted adult entertainment content without license or authority for free viewing by the public.  Commonly, these websites attract Internet user attention through the combination of offering free viewing of copyrighted materials and the unauthorized use of trademarks, providing the user a road to the free website through the use of these marks.

40.    Sex.com is such a pirate website, displaying copyrighted adult entertainment content and utilizing trademarks without authorization in order to attract users, and distract them from the trademark owners' services for financial gain.

41.    The mere act of registering as an Internet Service Provider with the United States Copyright Office does not, by itself, render a web site to be an Internet Service Provider.

42.    Sex.com is not a true Internet Service Provider.

43.    Defendants host adult entertainment photographs and videos and/or host embedded code for adult entertainment photographs and videos to permit a user to view the photographs and videos on Sex.com for free.

44.    Based upon information and belief, Defendants' source and place Plaintiff's copyrighted adult entertainment on their website.

45.    Under the videos displayed on sex.com for free viewing, Defendants present alternative viewing options with buttons that state "HD," "MOV," "WMV/AVI," "HDFLASH," and "DOWNLOAD" along with a description of the video, category and other defining items.  The

experience clearly indicates to a user that these buttons will enable the user to watch the particular video in high-definition, download the video, or other format.

46.     If the user clicks any of these buttons, the user is taken to hd.sex.com and prompted to join a membership with a credit card.  While the membership is presented as free, signing up agrees to subsequent recurring charges to the users credit card unless overt actions are taken by the user.

47.     The initial video is not, thereafter, made available to the user for high definition viewing, download, or formatted for a mobile device.  Rather, the initial video was used purely to entice the user to join the premium program.  The initial video is used by the Defendants to gain a direct financial benefit.

48.     Defendants sell advertising space on Sex.com in several forms, including front load pop-up advertising and advertising banners on space in close proximity to free videos, often geocentric.

49.     Defendants derive additional revenue from "click through" affiliate relationships with other web properties. Defendants are paid based on the number of users who click on Plaintiff's copyrighted works to arrive at another web property.

50.     Defendants promote Sex.com as the "Pinterest for Porn."

51.     Defendants automatically repost works posted on Sex.com.  For instance, the work is distributed by Defendants through Twitter.

52.     Defendants have infringed Plaintiff's registered trademarks.

53.     For Plaintiff's videos and photographs that are displayed without authority on Sex.com, the Defendants have caused Plaintiff's trademarks to be used in the meta tags and/or meta descriptions for the URL of the infringing video.

54.     A meta tag is an HTML (hypertext markup language) code embedded on a Web page that is used by the website owner to identify the site content.  Meta tags are powerful tools because they have a direct effect on the frequency with which many search engines will find a website.

55.     Meta tags and/or meta descriptions are used by Internet search engines as an indexing tool to determine which web sites correspond to search terms provided by a user.

56.     Meta tags do not affect the appearance of a website and are not visible when one looks at a Web page, but they provide information regarding the content of the site.

57.     Some websites use meta tags in a deceptive manner to lure Web surfers. Instead of using terms that properly describe the site, some programmers substitute the names of competing companies. For example, a rival shoe manufacturer may bury the meta tag "Nike" in its Web page to lure Web surfers searching for Nike products.  In the case of the website selling handmade watches, the meta tag might include "Rolex, Swatch, Bulova, Cartier," or the like.

58.     By using Plaintiff's trademarks in Defendants' meta tags and/or meta descriptions, Defendants use Plaintiff's trademarks in commerce and in connection with their promotions, sales, and advertising.

59.     The use of Plaintiff's trademarks in Defendants' meta tags and/or meta descriptions causes confusion to the end users/consumers.

60.     For example, for many of the videos displayed without authority or license on Sextvx.com, "SexArt," a Plaintiff trademark, is included in the meta tags and/or meta description. Therefore, a user utilizing an internet search engine searching for "SexArt" will discover that Plaintiff's videos can be viewed for free on Sex.com.  This will and does create confusion on behalf of the user that Sex.com is an authorized distributor of Plaintiff's videos and, importantly, instills a belief that Plaintiff's videos are available for free viewing.  This also directly steals a paying

customer from Plaintiff and redirects them to Defendants' site to the direct and sole benefit of Defendants.

61.    In or about March 2015, and for an unknown time prior and up to the present, Defendants' website Sex.com utilized Plaintiff's trademark "MetArt" in the meta data for 833 separate and distinct URLs connected to Sex.com, each displaying a separate and distinct copyright work belonging to Plaintiff.   These web pages, each containing Plaintiff's trademark in the meta data, are listed in Exhibit A.   At no time did Defendants have any authority or license to utilize Plaintiff's trademark.

62.    In or about March 2015, and for an unknown time prior and up to the present, Defendants' website Sex.com utilized Plaintiff's trademark "Sexart" in the meta data for 824 separate and distinct URLs connected to Sex.com, each displaying a separate and distinct copyright work belonging to Plaintiff.   These web pages, each containing Plaintiff's trademark in the meta data, are listed in Exhibit B.   At no time did Defendants have any authority or license to utilize Plaintiff's trademark.

63.    Defendants placed an active sex.com link on the videos displayed on sex.com. Therefore, if a user were to take the video and display it anywhere else on the Internet, this link will direct any subsequent viewers to sex.com.

64.    In or about March 2015, and for an unknown time before and up to the present, Defendants' website Sex.com displayed Plaintiff's copyright registered works over 1,657 separate and distinct URLs  - each a part of Sex.com.   At no time did Defendants have any authority or license to display or distribute any portion of Plaintiff's copyrighted works.   These works are purported by Defendants to have been uploaded by third party Internet users.

65.     On or about March 20, 2015, Plaintiff delivered to Defendants DMCA compliant take down notices for each of Plaintiff's copyright registered works displayed on Sex.com and cease and desist demands for each URL utilizing Plaintiff's trademarks.

66.     Two months after receipt of the take down notices and cease and desist demands, Defendants wholly failed and refused to disable 39 of Plaintiff's copyright registered works.  These copyrighted works and their corresponding Sex.com page are listed in Exhibit C, attached hereto.

67.     Each of these works is currently (as of the date of this Complaint) displayed on Sex.com precisely as complained of in the DMCA take down notices.   These works are continuously displayed in violation of Plaintiff's copyrights *and* with the Defendants' specific knowledge.

68.     Further, each is displayed with the use of Plaintiff's trademarks in the meta data specific to each work, thereby enabling an Internet user to locate the infringing work through an Internet search for Plaintiff's works.

69.     Within four months after receipt of the take down notices and cease and desist demands, Defendants have maintained public display of 39 of Plaintiff's copyright registered works while having amended the naming convention of each work, deleting Plaintiff's trademarks from the URL.   The links for these works were the subject of take down notices and cease and desist demands.   Defendants modified the links by omitting Plaintiff's trademarks, but continued to display the works in violation of Plaintiff's copyrights.  Such egregious behavior can only be for purpose of continuing to display and benefit from Plaintiff's works without obvious detection through search engines.   Such action by the Defendants evidences their continuing willful and knowing infringement of Plaintiff's copyright registered works.

70.     While Defendants have removed Plaintiff's trademarks from the infringing URLs, Defendants have *not* ceased the use of Plaintiff's trademarks for purposes of search engines.  A search for Sexart or MetArt continues to result in location of the infringing works on Sex.com.

71.     On Sex.com, under the sites "Terms of Use," Defendants claim to have a copyright policy regarding repeat infringers.  The policy states as follows:

> "Copyright Policy
>
> Sex.com adheres to copyright law and expects its users to do the same. Sex.com has adopted and implemented a policy that provides for the termination, in appropriate circumstances, of registered users or other account holders who repeatedly infringe or are believed to be repeatedly infringing the rights of copyright holders. Please see Sex.com's Copyright Policy at: http://www.sex.com/about/terms for further information."

72.     However, the link presented for "further information" is the exact same web page upon which this language is displayed.  Thus, there is no "further information" and Defendants fail to inform its users of the supposed repeat infringer policy implemented on Sex.com.  Most notably, the users of Sex.com are not notified of the number of infringer allegations, which will result in the termination of their account with Sex.com.

73.     Defendants have failed to effectively and/or practically implement a reasonable repeat infringer policy on Sex.com.  The 1,657 works that were subject to DMCA take down notices were posted by a total of 159 Sex.com users/uploaders, each with *multiple* postings in access of any reasonable repeat infringer policy.   Of these 159 users, 51 users are still currently active on Sex.com.  The 159 users are listed in Exhibit D, and the 44 still currently active users are listed in Exhibit E.

74.     The fact that approximately one third of users with repeat infringements noticed to Defendants are still active is evidence that Defendants have failed to properly implement a

reasonable repeat infringer policy.  The number of notices these users were subject to, yet not terminated, is egregious.  For example:

a.  Sex.com user "TheBabesgalore" was the subject of 101 separate and distinct DMCA take down notices.  "TheBabesgalore" was not terminated as a user/posted on Sex.com. While these 101 works were disabled subject to the take down notices, "TheBabesgalore" has since posted 20 Plaintiff's works in violation of Plaintiff's copyrights. "TheBabesgalore" currently has 8,735 pins on Sex.com.

b.  Sex.com user "Tessa-Mondavi" was the subject of 20 separate and distinct DMCA take down notices.  "Tessa-Mondavi" was not terminated as a user/posted on Sex.com. While these 20 works were disabled subject to the take down notices, "Tessa-Mondavi" has since posted 45 Plaintiff's works in violation of Plaintiff's copyrights. "Tessa-Mondavi" currently has 2,093 pins on Sex.com.

c.  Sex.com user "HGB007" was the subject of 54 separate and distinct DMCA take down notices.  "HGB007" was not terminated as a user/posted on Sex.com.  While these 54 works were disabled subject to the take down notices, "HGB007" has since posted 51 Plaintiff's works in violation of Plaintiff's copyrights. "HGB007" currently has 7,053 pins on Sex.com.

75.    The number of distinct and separate DMCA take down notices, advising Defendants of separate infringements, for these users/posters which were not then terminated is beyond any reasonable repeat infringer policy.  (For instance, it is not uncommon for repeat infringer policies to mandate termination after 3 such notices.)

76.    The number of users/posters on Sex.com that have been permitted to continue to post on Sex.com after clearly violating any reasonable repeat infringer policy evidences that Defendants'

failure to terminate these users is not mere inadvertence or excusable neglect.  Rather, the failure to terminate these users, given both the number of users that were not terminated and the number of infringements posted by each user, evidences Defendants' failure to adequately, reasonably, effectively, and practically implement a repeat infringer policy.

77.     Defendants' failures to properly respond to take down notices and to implement a reasonable repeat infringer policy makes it virtually impossible for Plaintiff to police infringement of Plaintiff's works on Sex.com.   While Plaintiff noticed Defendants about infringements on Sex.com, Defendants fail to consistently and reasonably disable the display of the works *and* Defendants permit repeat infringers to continue posting on Sex.com – including further unauthorized postings of Plaintiff's works.  Plaintiff cannot effectively thwart the piracy of its copyrighted works on Sex.com by use of the tools provided under the DMCA.

78.     Defendants' failure to be a true Internet Service Provider, failure to properly and reasonably respond to DMCA take down notices, and failure to implement a reasonable repeat infringer policy, individually and collectively, destroys any protection Defendants may seek under the DMCA safe harbor provisions.

79.     All conditions precedent to the filing of this lawsuit have been met, satisfied or waived.

<u>**COUNT I**</u>
<u>**Trademark Infringement – 15 U.S.C. §§ 1111 *et. seq.***</u>
**Against All Defendants**

80.     Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 79 above and further states that:

81.     By virtue of its trademark registrations, Plaintiff has the exclusive right to use of the trademarks, trade dress and service marks enumerated in this Complaint in the adult-oriented audio-visual markets, including Internet markets.

82.     Defendants' use of Plaintiff's registered trademarks and service marks is in a manner likely to cause consumer confusion, as alleged herein, constitutes trademark infringement pursuant to 15 U.S.C. § 1114.

83.     Defendants' infringement is intentional and willful, has caused and will continue to cause damage to Plaintiff in an amount to be proven at trial, and is causing irreparable harm to Plaintiff for which there is no adequate remedy at law, thus Plaintiff is entitled to statutory and treble damages.

WHEREFORE, Plaintiff, Hydentra HLP Int. Limited, d/b/a MetArt, requests the following relief:

A.     Enter judgment against Defendants finding that Defendants have engaged in, and continue to engage in, unfair competition in violation of 15 U.S.C. § 1125(a);

B.     Finding that Defendants have and continue to infringe Plaintiff's '3152759 trademark in violation of 15 U.S.C. § 1114;

C.     Finding that Defendants have and continue to infringe Plaintiff's '4191754 trademark in violation of 15 U.S.C. § 1114;

D.     That Defendants, their agents, servants, officers, directors, employees, attorneys, privies, representatives, successors and assigns and parent and subsidiary corporations or other related entities, and any or all persons in act of concert or participation with any of them, be preliminarily and permanently enjoined from:

(1)     Any and all reproduction, adaptation, public display and/or distribution of copies of the Plaintiff's copyrighted works by Defendants on any website, including but not limited to Sex.com;

(2)     Permitting any user to upload for reproduction, adaptation, public display and/or distribution of copies of the Plaintiff's copyrighted works by Defendants on any website, including but not limited to Sex.com; and

(3)     Marketing or selling any product containing or utilizing Plaintiff's intellectual property or business values.

E.     That Defendants be ordered to file with the Court and serve upon Plaintiff, within thirty (30) days after the entry of an injunction, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with any ordered injunction;

F.     That pursuant to 15 U.S.C. § 1117, Defendants be held liable for all damages suffered by Plaintiff resulting from the acts alleged herein;

G.     That Defendants be ordered to transfer the domain Sex.com, and all similar domains held by Defendants found in discovery, such as misspellings of the enumerated domains, domains held by Defendants linked to Sex.com, and the content therein to Plaintiff.

H.     That Plaintiff be awarded damages in an amount to be determined at trial for all infringing activities, including Plaintiff's damages and lost profits, Defendants' profits, plus any costs incurred in preventing future confusion, mistake or deception, all from the date of first infringement;

I.      That pursuant to 15 U.S.C. § 1117 Defendants be ordered to account to Plaintiff for all profits, gains and advantages which they have realized as a consequence of their unauthorized use of Plaintiff's copyrighted works;

J.      That the Court declare this to be an exceptional case and award Plaintiff's reasonable attorney fees pursuant to 15 U.S.C. § 1117;

K.      That Plaintiff be awarded enhanced damages and attorney's fees;

L.      For all other damages to the extent permitted by law;

M.      Ordering that this Court retain jurisdiction of this action for the purpose of enabling Plaintiff to apply to the Court at any time for such further orders and interpretation or execution of any order entered in this action; for the modification of any such order; for the enforcement or compliance therewith; or for the punishment of any violations thereof; and

N.      Such other and further preliminary and permanent relief be awarded to Plaintiff as the Court deems appropriate.

<u>COUNT II</u>
<u>Contributory Trademark Infringement – 15 U.S.C. §§ 1111 *et. seq.*</u>
**Against All Defendants**

84.      Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 79 above and further states that:

85.      By virtue of its trademark registrations, Plaintiff has the exclusive right to use of the trademarks, trade dress and service marks enumerated in this Complaint in the adult-oriented audio-visual markets, including Internet markets.

86.    Defendants' actions that encouraged use of Plaintiff's registered trademarks and service marks in manners likely to cause consumer confusion, as alleged herein, constitutes trademark infringement pursuant to 15 U.S.C. § 1114.

87.    Defendants' infringement is intentional and willful, has caused and will continue to cause damage to Plaintiff in an amount to be proven at trial, and is causing irreparable harm to Plaintiff for which there is no adequate remedy at law, thus Plaintiff is entitled to statutory and treble damages.

WHEREFORE, Plaintiff, Hydentra HLP Int. Limited, d/b/a MetArt, requests the following relief:

A.    Enter judgment against Defendants finding that Defendants have engaged in, and continue to engage in, unfair competition in violation of 15 U.S.C. § 1125(a);

B.    Finding that Defendants have and continue to infringe Plaintiff's '3152759 trademark in violation of 15 U.S.C. § 1114;

C.    Finding that Defendants have and continue to infringe Plaintiff's '4191754 trademark in violation of 15 U.S.C. § 1114;

D.    That Defendants, their agents, servants, officers, directors, employees, attorneys, privies, representatives, successors and assigns and parent and subsidiary corporations or other related entities, and any or all persons in act of concert or participation with any of them, be preliminarily and permanently enjoined from:

(1)    Any and all reproduction, adaptation, public display and/or distribution of copies of the Plaintiff's copyrighted works by Defendants on any website, including but not limited to Sex.com;

      (2)    Permitting any user to upload for reproduction, adaptation, public display and/or distribution of copies of the Plaintiff's copyrighted works by Defendants on any website, including but not limited to Sex.com; and

      (3)    Marketing or selling any product containing or utilizing Plaintiff's intellectual property or business values.

E.    That Defendants be ordered to file with the Court and serve upon Plaintiff, within thirty (30) days after the entry of an injunction, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with any ordered injunction;

F.    That pursuant to 15 U.S.C. § 1117, Defendants be held liable for all damages suffered by Plaintiff resulting from the acts alleged herein;

G.    That Defendants be ordered to transfer the domain Sex.com, and all similar domains held by Defendants found in discovery, such as misspellings of the enumerated domains, domains held by Defendants linked to www.sex.com, and the content therein to Plaintiff.

H.    That Plaintiff's be awarded damages in an amount to be determined at trial for all infringing activities, including Plaintiff's damages and lost profits, Defendants' profits, plus any costs incurred in preventing future confusion, mistake or deception, all from the date of first infringement;

I.    That pursuant to 15 U.S.C. § 1117, Defendants be ordered to account to Plaintiff for all profits, gains and advantages which they have realized as a consequence of their unauthorized use of Plaintiff's copyrighted works;

J.     That the Court declare this to be an exceptional case and award Plaintiff reasonable attorney fees pursuant to 15 U.S.C. § 1117;

K.     That Plaintiff be awarded enhanced damages and attorney's fees;

L.     For all other damages to the extent permitted by law;

M.     Ordering that this Court retain jurisdiction of this action for the purpose of enabling Plaintiff to apply to the Court at any time for such further orders and interpretation or execution of any order entered in this action; for the modification of any such order; for the enforcement or compliance therewith; or for the punishment of any violations thereof; and

N.     Such other and further preliminary and permanent relief be awarded to Plaintiff as the Court deems appropriate.

**COUNT III**
**False Designation of Origin under the Lanham Act – 15 U.S.C. §§ 1125 *et. seq.***
**Against All Defendants**

88.     Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 79 above and further states that:

89.     Upon information and belief, Defendants' conduct is likely to cause confusion, mistake or deception as to Defendants' affiliations, connection, or association with Plaintiff, or as to the origin, sponsorship or approval of their goods or commercial activities.

90.     Defendants' conduct as alleged herein, including but not necessarily limited to their use of Plaintiff's marks, constitutes false designation of origin pursuant to 15 U.S.C. § 1125(a).

91.     Plaintiff has been damaged by these acts in an amount to be proven at trial. Plaintiff is also entitled under the Lanham Act to injunctive and equitable relief against Defendants.

WHEREFORE, Plaintiff, Hydentra HLP Int. Limited, d/b/a MetArt, requests the following relief:

A. Enter judgment against Defendants finding that Defendants have engaged in, and continue to engage in, unfair competition in violation of 15 U.S.C. § 1125(a);

B. Finding that Defendants have and continue to infringe Plaintiff's '3152759 trademark in violation of 15 U.S.C. § 1114;

C. Finding that Defendants have and continue to infringe Plaintiff's '4191754 trademark in violation of 15 U.S.C. § 1114;

D. That Defendants, their agents, servants, officers, directors, employees, attorneys, privies, representatives, successors and assigns and parent and subsidiary corporations or other related entities, and any or all persons in act of concert or participation with any of them, be preliminarily and permanently enjoined from:

(1) Any and all reproduction, adaptation, public display and/or distribution of copies of the Plaintiff's copyrighted works by Defendants on any website, including but not limited to Sex.com;

(2) Permitting any user to upload for reproduction, adaptation, public display and/or distribution of copies of the Plaintiff's copyrighted works by Defendants on any website, including but not limited to Sex.com; and

(3) Marketing or selling any product containing or utilizing Plaintiff's intellectual property or business values.

E. That Defendants be ordered to file with the Court and serve upon Plaintiff, within thirty (30) days after the entry of an injunction, a report in writing and under oath,

setting forth in detail the manner and form in which Defendants have complied with any ordered injunction;

F.     That pursuant to 15 U.S.C. § 1117, Defendants be held liable for all damages suffered by Plaintiff resulting from the acts alleged herein;

G.     That Defendants be ordered to transfer the domain Sex.com, and all similar domains held by Defendants found in discovery, such as misspellings of the enumerated domains, domains held by Defendants linked to www.sex.com, and the content therein to Plaintiff.

H.     That Plaintiff be awarded damages in an amount to be determined at trial for all infringing activities, including Plaintiff's damages and lost profits, Defendants' profits, plus any costs incurred in preventing future confusion, mistake or deception, all from the date of first infringement;

I.     That pursuant to 15 U.S.C. § 1117, Defendants be ordered to account to Plaintiff for all profits, gains and advantages which they have realized as a consequence of their unauthorized use of Plaintiff's copyrighted works;

J.     That the Court declare this to be an exceptional case and award Plaintiff reasonable attorney fees pursuant to 15 U.S.C. § 1117;

K.     That Plaintiff be awarded enhanced damages and attorney's fees;

L.     For all other damages to the extent permitted by law;

M.     Ordering that this Court retain jurisdiction of this action for the purpose of enabling Plaintiff to apply to the Court at any time for such further orders and interpretation or execution of any order entered in this action; for the modification of any such order;

for the enforcement or compliance therewith; or for the punishment of any violations thereof; and

N.      Such other and further preliminary and permanent relief be awarded to Plaintiff as the Court deems appropriate.

## COUNT IV
## Copyright Infringement – 17 U.S.C. §§ 101 *et. seq.*
### Against All Defendants

92.     Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 79 above and further states that:

93.     Plaintiff holds the copyright on each of the infringed works alleged herein.

94.     Plaintiff registered each copyright with the United States Copyright Office.

95.     At all pertinent times, Plaintiff is the producer and registered owner of the audiovisual works illegally and improperly reproduced and distributed by Defendants.

96.     Defendants copied, reproduced, reformatted, and distributed Plaintiff's copyrighted works by and through servers and/or hardware owned, operated and/or controlled by Defendants.

97.     Defendants did not have authority or license to copy and/or display Plaintiff's original works.

98.     Defendants infringed Plaintiff's copyrighted works by reproducing and distributing works through Defendants' website without property approval, authorization, or license of Plaintiff.

99.     Defendants knew or reasonably should have known they did not have permission to exploit Plaintiffs' works on Motherless.com and further knew or should have known their acts constituted copyright infringement.

100.    Defendants made no attempt to discover the copyright owners of the pirated works before exploiting them.  Defendants failed and refused to take any reasonable measure to determine the owner or license holder of the copyrighted works.

101.    Defendants engaged in intentional, knowing, negligent, or willfully blind conduct sufficient to demonstrate they engaged actively in the improper collection and distribution of Plaintiff's copyrighted works.

102.    The quantity and quality of copyright files available to Internet users increased the attractiveness of Defendants' service to its customers, increased its membership base, and increased its ad sales revenue.

103.    Based on information and belief, Defendants actively uploaded pirated copyrighted files and/or embedded code, enabling users of Motherless.com to view copyrighted videos and images for free.

104.    Defendants controlled the files owned by Plaintiff and determined which files remained for display and distribution.

105.    Defendants never adopted procedures to ensure that distribution of Plaintiff's copyrighted materials would not occur. Further, Defendants never implemented or enforced a "repeat infringer" policy.

106.    Defendants either were aware, actually or constructively, should have been aware, or were willfully blind that pirated copyrighted materials comprised the most popular videos on the Defendants websites.

107.    Defendants, through Motherless.com, affirmatively and willfully accommodated Internet traffic generated by the illegal acts.

108.    Defendants' conduct was willful within the meaning of 17 U.S.C. § 101, *et seq*.  At a minimum, Defendants acted with willful blindness and reckless disregard of Plaintiff's registered copyrights.

109.    Because of their wrongful conduct, Defendants are liable to Plaintiff for copyright infringement. See 17 U.S.C. §501. Plaintiff suffers and will continue to suffer substantial losses, including, but not limited to, damage to its business reputation and goodwill.

110.    The law permits Plaintiff to recover damages, including readily ascertainable direct losses and all profits Defendants made by their wrongful conduct. 17 U.S.C. §504. Alternatively, the law permits Plaintiff to recover statutory damages. 17 U.S.C. §504(c).

111.    Because of Defendants' willful infringement, the law permits enhancement of the allowable statutory damages. 17 U.S.C. §504(c) (2).

112.    The law permits Plaintiff injunctive relief. 17 U.S.C. §502. Further, the law permits a Court Order impounding any and all infringing materials. 17 U.S.C. §503.

WHEREFORE, Plaintiff, Hydentra HLP Int. Limited, d/b/a MetArt, requests the following relief:

A.    That Defendants, their agents, servants, officers, directors, employees, attorneys, privies, representatives, successors and assigns and parent and subsidiary corporations or other related entities, and any or all persons in act of concert or participation with any of them, be preliminarily and permanently enjoined from:

(1)    Any and all reproduction, adaptation, public display and/or distribution of copies of the Plaintiff's copyrighted works by Defendants on any website, including but not limited to Sex.com;

(2)     Permitting any user to upload for reproduction, adaptation, public display and/or distribution of copies of the Plaintiff's copyrighted works by Defendants on any website, including but not limited to Sex.com; and

(3)     Marketing or selling any product containing or utilizing Plaintiff's intellectual property or business values.

B.     That Defendants be ordered to transfer the domain Sex.com, and all similar domains held by Defendants found in discovery, such as misspellings of the enumerated domains, domains held by Defendants linked to www.sex.com, and the content therein to Plaintiff.

C.     That Defendants be ordered to file with the Court and serve upon Plaintiff, within thirty (30) days after the entry of an injunction, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with any ordered injunction;

D.     That Plaintiff be awarded damages in an amount to be determined at trial for all infringing activities, including Plaintiff's damages and lost profits, Defendants' profits, plus any costs incurred in preventing future confusion, mistake or deception, all from the date of first infringement;

E.     That Defendants pay Plaintiff a sum sufficient to cover the cost of corrective advertising necessary to alleviate any existing or lingering confusion resulting from Defendants' unauthorized use of Plaintiff's trade dress and terms;

F.     That Defendants be ordered to account to Plaintiff for all profits, gains and advantages that they have realized as a consequence of their unauthorized use of Plaintiff's copyrighted works;

G.     That Plaintiff be awarded enhanced damages and attorney's fees;

H.     That Plaintiff be awarded pre-judgment and post-judgment interest;

I.      That Plaintiff be awarded costs and expenses incurred in prosecuting this action, including expert witness fees; and

J.      That such other and further preliminary and permanent relief be awarded to Plaintiff as the Court deems appropriate.

## COUNT V
## Contributory Copyright Infringement
### Against All Defendants

113.    Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 79 above and further states that:

114.    Unknown individuals, without authorization, reproduced and distributed Plaintiff's works through Defendants' websites, directly infringing Plaintiff's copyrighted works.

115.    Defendants contributed to the infringing acts of those individuals.

116.    Defendants were aware, should have been aware, or were willfully blind to the infringing activity.

117.    Defendants aided, abetted, allowed, and encouraged those individuals to reproduce and distribute Plaintiff's copyrighted works through Defendants' website without regard to copyright ownership.

118.    Defendants had the ability and obligation to control and stop the infringements. Defendants failed to do so.

119.     Defendants have engaged in the business of knowingly inducing, causing, and/or materially contributing to unauthorized reproduction, adaptation, public display and/or distribution of copies of the Plaintiff's copyrighted works, and thus to the direct infringement of Plaintiff's copyrighted works.

120.    Defendants received direct financial benefits from the infringements.

121.   On information and belief, Defendants' actions constitute contributory infringement of Plaintiff's copyrights and exclusive rights under copyright in the Plaintiff's copyrighted works in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.

122.   The unauthorized reproduction, distribution, and public display of Plaintiff's copyrighted works that Defendant enables, causes, materially contributes to and encourages through the acts described above are without Plaintiff's consent and are not otherwise permissible under the Copyright Act.

123.   The acts of infringement by Defendants have been willful, intentional, and purposeful and in reckless disregard of and with indifference to Plaintiff's rights.

124.   As a direct and proximate result of the infringements by Defendants of Plaintiff's copyrights and exclusive rights under copyright in the Plaintiff's copyrighted works, Plaintiff is entitled to its actual damages and Defendants' profits pursuant to 17 U.S.C. § 504(b).

125.   Alternatively, Plaintiff is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c ).

126.   Plaintiff is further entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

WHEREFORE, Plaintiff, Hydentra HLP Int. Limited, d/b/a MetArt, requests the following relief:

A.   That Defendants, their agents, servants, officers, directors, employees, attorneys, privies, representatives, successors and assigns and parent and subsidiary corporations or other related entities, and any or all persons in act of concert or participation with any of them, be preliminarily and permanently enjoined from:

(1)    Any and all reproduction, adaptation, public display and/or distribution of copies of the Plaintiff's copyrighted works by Defendants on any website, including but not limited to Sex.com;

(2)    Permitting any user to upload for reproduction, adaptation, public display and/or distribution of copies of the Plaintiff's copyrighted works by Defendants on any website, including but not limited to Sex.com; and

(3)    Marketing or selling any product containing or utilizing Plaintiff's intellectual property or business values.

B.    That Defendants be ordered to transfer the domain Sex.com, and all similar domains held by Defendants found in discovery, such as misspellings of the enumerated domains, domains held by Defendants linked to www.sex.com, and the content therein to Plaintiff.

C.    That Defendants be ordered to file with the Court and serve upon Plaintiff, within thirty (30) days after the entry of an injunction, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with any ordered injunction;

D.    That Plaintiff be awarded damages in an amount to be determined at trial for all infringing activities, including Plaintiff's damages and lost profits, Defendants' profits, plus any costs incurred in preventing future confusion, mistake or deception, all from the date of first infringement;

E.    That Defendants pay Plaintiff a sum sufficient to cover the cost of corrective advertising necessary to alleviate any existing or lingering confusion resulting from Defendants' unauthorized use of Plaintiff's trade dress and terms;

F.     That Defendants be ordered to account to Plaintiff for all profits, gains and advantages that they have realized as a consequence of their unauthorized use of Plaintiff's copyrighted works;

G.     That Plaintiff be awarded enhanced damages and attorney's fees;

H.     That Plaintiff be awarded pre-judgment and post-judgment interest;

I.     That Plaintiff be awarded costs and expenses incurred in prosecuting this action, including expert witness fees; and

J.     That such other and further preliminary and permanent relief be awarded to Plaintiff as the Court deems appropriate.

**COUNT VI**
**Vicarious Copyright Infringement**
**Against All Defendants**

127.   Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 79 above and further states that:

128.   Without authorization, individuals reproduced, distributed, and publicly displayed Plaintiff's works through Defendants' website, directly infringing Plaintiff's copyrighted works.

129.   Defendants were actually or constructively aware or should have been aware or were willfully blind to the infringing activity.

130.   Defendants were able to control or completely end the illegal and improper infringement, but failed to do so.

131.   Defendants contributed materially to the infringement.

132.   Defendants received directly financial gain and profit from those infringing activities.

133.   The acts, omissions, and conduct of all Defendants constitute vicarious copyright infringement.

134.   The acts of infringement by Defendants have been willful, intentional, purposeful and in reckless disregard of and with indifference to Plaintiff's rights. As a direct and proximate result of the infringements by Defendants of Plaintiff's copyrights and exclusive rights under copyright in the Plaintiff's copyrighted works, Plaintiff is entitled to its actual damages and Defendants' profits pursuant to 17 U.S.C. § 504(b).

135.   Alternatively, Plaintiff is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

136.   Plaintiff is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

WHEREFORE, Plaintiff, Hydentra HLP Int. Limited, d/b/a MetArt, requests the following relief:

A.   That Defendants, their agents, servants, officers, directors, employees, attorneys, privies, representatives, successors and assigns and parent and subsidiary corporations or other related entities, and any or all persons in act of concert or participation with any of them, be preliminarily and permanently enjoined from:

(1)   Any and all reproduction, adaptation, public display and/or distribution of copies of the Plaintiff's copyrighted works by Defendants on any website, including but not limited to Sex.com;

(2)     Permitting any user to upload for reproduction, adaptation, public display and/or distribution of copies of the Plaintiff's copyrighted works by Defendants on any website, including but not limited to Sex.com; and

(3)     Marketing or selling any product containing or utilizing Plaintiff's intellectual property or business values.

B.     That Defendants be ordered to transfer the domain Sex.com, and all similar domains held by Defendants found in discovery, such as misspellings of the enumerated domains, domains held by Defendants linked to www.sex.com, and the content therein to Plaintiff.

C.     That Defendants be ordered to file with the Court and serve upon Plaintiff, within thirty (30) days after the entry of an injunction, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with any ordered injunction;

D.     That Plaintiff be awarded damages in an amount to be determined at trial for all infringing activities, including Plaintiff's damages and lost profits, Defendants' profits, plus any costs incurred in preventing future confusion, mistake or deception, all from the date of first infringement;

E.     That Defendants pay Plaintiff a sum sufficient to cover the cost of corrective advertising necessary to alleviate any existing or lingering confusion resulting from Defendants' unauthorized use of Plaintiff's trade dress and terms;

F.     That Defendants be ordered to account to Plaintiff for all profits, gains and advantages that they have realized as a consequence of their unauthorized use of Plaintiff's copyrighted works;

G.     That Plaintiff be awarded enhanced damages and attorney's fees;

H.     That Plaintiff be awarded pre-judgment and post-judgment interest;

I.      That Plaintiff be awarded costs and expenses incurred in prosecuting this action, including expert witness fees; and

J.      That such other and further preliminary and permanent relief be awarded to Plaintiff as the Court deems appropriate.

## COUNT VII
### Inducement of Copyright Infringement
### Against All Defendants

137.    Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 79 above and further states that:

138.    Defendants designed and/or distributed technology and/or devices and/or induced individuals to use this technology to promote the use of infringed and copyrighted material. As a direct and proximate result of Defendants' inducement, individuals infringed Plaintiff's copyrighted works. These individuals reproduced, distributed and publicly disseminated Plaintiff's copyrighted works through Defendants' website.

139.    On information and belief, Defendants have encouraged the illegal uploading and downloading of Plaintiff's copyrighted works, thus inducing the unauthorized reproduction, adaptation, public display and/or distribution of copies of the Plaintiff's copyrighted works, and thus to the direct infringement of Plaintiff's copyrighted works.

140.    Defendants' actions constitute inducing copyright infringement of Plaintiff's copyrights and exclusive rights under copyright in the Plaintiff's copyrighted works in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.

141.    The infringement of Plaintiff's rights in and to each of the Plaintiff's copyrighted works constituted a separate and distinct infringement.

142.   The acts of infringement by Defendants have been willful, intentional, purposeful and in reckless disregard of and with indifference to Plaintiff's rights.

143.   As a direct and proximate result of the infringements by Defendants of Plaintiff's copyrights and exclusive rights under copyright in the Plaintiff's copyrighted works, Plaintiffs are entitled to its actual damages and Defendants' profits pursuant to 17 U.S.C. § 504(b).

144.   Alternatively, Plaintiff is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

145.   Plaintiff is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

WHEREFORE, Plaintiff, Hydentra HLP Int. Limited, d/b/a MetArt, requests the following relief:

A.   That Defendants, their agents, servants, officers, directors, employees, attorneys, privies, representatives, successors and assigns and parent and subsidiary corporations or other related entities, and any or all persons in act of concert or participation with any of them, be preliminarily and permanently enjoined from:

(1)   Any and all reproduction, adaptation, public display and/or distribution of copies of the Plaintiff's copyrighted works by Defendants on any website, including but not limited to Sex.com;

(2)   Permitting any user to upload for reproduction, adaptation, public display and/or distribution of copies of the Plaintiff's copyrighted works by Defendants on any website, including but not limited to Sex.com; and

(3)    Marketing or selling any product containing or utilizing Plaintiff's intellectual property or business values.

B.    That Defendants be ordered to transfer the domain Sex.com, and all similar domains held by Defendants found in discovery, such as misspellings of the enumerated domains, domains held by Defendants linked to www.sex.com, and the content therein to Plaintiff.

C.    That Defendants be ordered to file with the Court and serve upon Plaintiff, within thirty (30) days after the entry of an injunction, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with any ordered injunction;

D.    That Plaintiff be awarded damages in an amount to be determined at trial for all infringing activities, including Plaintiff's damages and lost profits, Defendants' profits, plus any costs incurred in preventing future confusion, mistake or deception, all from the date of first infringement;

E.    That Defendants pay Plaintiff a sum sufficient to cover the cost of corrective advertising necessary to alleviate any existing or lingering confusion resulting from Defendants' unauthorized use of Plaintiff's trade dress and terms;

F.    That Defendants be ordered to account to Plaintiff for all profits, gains and advantages that they have realized as a consequence of their unauthorized use of Plaintiff's copyrighted works;

G.    That Plaintiff be awarded enhanced damages and attorney's fees;

H.    That Plaintiff be awarded pre-judgment and post-judgment interest;

I.    That Plaintiff be awarded costs and expenses incurred in prosecuting this action, including expert witness fees; and

J.     That such other and further preliminary and permanent relief be awarded to Plaintiff as the Court deems appropriate.

## COUNT VIII
### Unauthorized Publication of Name and Likeness in Violation
### Of Section 540.08, Florida Statutes
### Against All Defendants

146.    Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 79 as if set forth herein.

147.    Plaintiff's erotic photographs and motion pictures depict models who performed under contract.

148.    Said contract contains a release of each model's rights and interest for their appearance in an erotic motion picture, and an assignment in ownership of the same to Plaintiff.

149.    Defendants published, printed, displayed or otherwise used publicly images that depict numerous models that signed Plaintiff's release agreement.

150.    Defendants' websites commercially exploit Plaintiff's images without the Plaintiff's knowledge or consent.

151.    Defendants gained pecuniary benefit from the unauthorized use of Plaintiff's name, images and likeness.

152.    The Defendants use of Plaintiff's name, images and likeness was not part of a bona fide news report, nor did it have a legitimate public interest, but rather, was used by Defendants for their sole commercial benefit.

153.    The use of Plaintiff's name, image and likeness for commercial purposes, without express consent, violates Florida Statute §540.08.

WHEREFORE, Plaintiff, Hydentra HLP Int. Limited, d/b/a MetArt, requests the following relief:

A.      That Defendants be enjoined from using the name, image, and likeness of any MetArt models for commercial, advertising, or any other unauthorized use on Sex.com, and all similar domains held by Defendants found in discovery, such as misspellings of the enumerated domains, and domains held by Defendants linked to www.sex.com;

B.      That Defendants be ordered to recover damages for any loss or injury resulting from Defendants' unauthorized use of Plaintiff's name and likeness;

C.      That Defendants be ordered, pursuant to Florida Statute § 540.08 to pay Plaintiff a reasonable royalty, plus exemplary and/or punitive damages; and

D.      Such other and further preliminary and permanent relief be awarded to Plaintiff as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

DATED:  June 30, 2015.

Respectfully submitted,

BeharBehar
1840 North Commerce Parkway
Suite One
Weston, Florida 33326
Telephone: (954) 688-7642
Facsimile: (954) 332-9260
E-mail: AB@BeharBehar.com

By:      ____/s/Aaron Behar_____

- 37

Aaron Behar, Esquire
Florida Bar No.: 166286
Jaclyn Behar, Esquire
Florida Bar No.: 63833
***Counsel for Plaintiff***

And:    Spencer D. Freeman
Freeman Law Firm, Inc.
1107 ½ Tacoma Avenue South
Tacoma, WA 98402
Telephone:  (253) 383-4500
Facsimile:  (253) 383-4501
E-mail: sfreeman@freemanlawfirm.org
***Counsel for Plaintiff***
(Moving for Admission pro hac vice)