UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:15-cv-22463-MGC

HYDENTRA HLP INT. LIMITED, a
foreign corporation d/b/a METART,

       Plaintiff,

vs.

MAXIMUM APPS INC., a foreign
company d/b/a SEX.COM; CLOVER
HOLDINGS LIMITED PARTNERSHIP,
a foreign company d/b/a SEX.COM;
SEX.COM; FREDERIC VALIQUETTE,
an individual; and John Does 1-20,

       Defendants.

_____/

**DEFENDANT CLOVER HOLDINGS LIMITED'S MOTION
TO DISMISS AMENDED COMPLAINT FOR INSUFFICIENT
<u>SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION</u>**

Defendant Clover Holdings Limited ("Clover"), pursuant to Rule 12(b)(2) and 12(b)(5), Fed. R. Civ. P., hereby moves to dismiss the Amended Complaint filed by Plaintiff Hydentra HLP Int. Limited ("Plaintiff").

This action should be dismissed because Plaintiff failed to effect proper service on Clover in St. Vincent and the Grenadines ("St. Vincent"), where Clover is incorporated. Plaintiff purports to have served Clover's corporate representative by hand through a private process server in St. Vincent. But the Hague Convention does not permit service in that manner where the foreign country has expressly objected to such service—as St. Vincent has done here. Nor was Plaintiff's attempt to serve Clover proper under the local law of St. Vincent, which does not permit hand service of a foreign lawsuit through a private process server.

This case should also be dismissed because the Court lacks personal jurisdiction over Clover, which has no employees, property, bank accounts, or business addresses in Florida, much less the United States.  Plaintiff attempts to allege jurisdiction over Clover in this Court based on the combined alleged contacts within the United States of all twenty-three named and unnamed Defendants.  But controlling law forbids aggregation of contacts among defendants to establish personal jurisdiction (and instead requires a plaintiff to allege *personal* jurisdiction based on sufficient individualized contacts with the forum state).  Even if such "lumping" were permitted, the Amended Complaint would still be deficient because it lacks sufficient allegations to establish either general or specific jurisdiction over Clover and because the jurisdictional allegations are belied by the evidence filed in support of this Motion.

## FACTUAL BACKGROUND

This is an intellectual property dispute brought by a foreign corporation against three named Defendants who each hail from foreign countries as well as up to twenty unidentified "John Does."  (Am. Compl. ¶¶ 2-4, 37)  Plaintiff is allegedly "organized under the laws of the Cyprus," Defendant Maximum Apps Inc. is allegedly "a foreign corporation, with offices in Montreal, Canada," Clover is allegedly "a foreign corporation, with offices in Montreal, Canada," and Defendant Frederic Valiquette is allegedly "a resident of Montreal, Canada."  (*Id.* ¶¶ 1-4)  The website that is the focus of this action, www.sex.com (the "Website"), has no particular connection to the United States or Florida and instead is allegedly accessible worldwide.  (*See id.* ¶ 10 (alleging that only a portion of the Website's viewers are in the United States))

Plaintiff allegedly owns "a group of erotic websites" with "trademark brands" and copyrighted videos.  (*Id.* ¶¶ 18, 25)  The Amended Complaint alleges that Defendants have

infringed "Plaintiff's copyrighted adult entertainment" videos by allowing third-party users of the Website to post and share erotic videos in which Plaintiff has intellectual property rights.  (*Id.* at ¶ 44) The Amended Complaint also alleges that Defendants use "Plaintiff's trademarks in Defendants' meta tags and/or meta descriptions."  (*Id.* at ¶ 58)  The Amended Complaint does not allege how Clover itself (as opposed to Defendants as a group) infringed the copyrights or trademarks at issue.  (*Id.* at ¶ 44)  Based on these allegations, the Amended Complaint asserts eight claims for trademark and copyright infringement (only one of which is a Florida statutory claim) and seeks, *inter alia*, an order requiring that "Defendants . . . transfer" the Website to Plaintiff.  (*See generally id.*)

The Amended Complaint seeks to plead personal jurisdiction over Clover in this District by alleging that "*Defendants*" as a collective group have engaged "in business activities" and "committed tortious acts" in Florida.  (*Id.* ¶ 12 (emphasis added))  The Amended Complaint contains *no* jurisdictional allegations that apply specifically to Clover and instead aggregates all Defendants together in each of the jurisdictional allegations: (1) "*Defendants* registered the domain Sex.com through the registrar Network Solutions, LLC, a company located in Jacksonville, Florida" and by entering into an agreement with that company, agreed to Florida jurisdiction "regarding any actions or obligations" relating to the Website; (2) "*Defendants* utilize Perfect Privacy LLC, a Florida company, to protect the identity of the owners and/or operators of Sex.com"; (3) "*Defendants* contract with United States advertisers, which use geotracking to target advertisements directly into districts of the United States, including Florida"; and (4) "*Defendants* all transact business in this Judicial District by way of their interactive website."  (Am. Compl. ¶¶ 5-12 (emphases added))

Clover, however, is a foreign corporation with *no* presence whatsoever in Florida (or

even the United States).    As confirmed by the Declaration of Patrick T. O'Brien, as an Authorized Representative of Clover, Clover was incorporated in September 2009 in St. Vincent as an International Business Company under the International Business (Amendment and Consolidation) Act Chapter 149 of the Revised Laws of Saint Vincent and the Grenadines.  (*See* Declaration of Patrick T. O'Brien, attached hereto as Ex. A, ¶ 3)  Mr. O'Brien's Declaration further establishes that:

- Clover's Registered Office and Registered Agent are both located in Kingstown, St. Vincent.   Clover's sole Director is a limited company that is also located in Kingstown, St. Vincent;

- Clover has never been incorporated, licensed or registered to do business in any State of the United States;

- Clover does not have an office or any other type of physical presence in the United States;

- Clover does not maintain a U.S.-based phone number or postal address;

- Clover does not have any employees in the United States and has never had a U.S.-based director;

- Clover does not own or lease any real or personal property in the United States;

- Clover does not maintain a bank account in the United States;

- Clover does not have any subsidiaries or affiliates that are based in, or conduct business from, the United States;

- Clover does not own or operate any computer servers located in the United States. All of the servers that host the Website are located in Canada;

- Other than this lawsuit brought by Hydentra HLP Int. Limited, Clover has never been a party, either as a plaintiff or a defendant, in any lawsuit in the United States.  Clover also has never been a party, either as a claimant or a respondent, to any arbitration proceeding in the United States; and

- Clover does not specifically aim any marketing or other revenue-generating activity at the United States or its residents.

(*Id.* ¶¶ 4-14)

On August 12, 2015, Plaintiff filed its "Affidavit of Service." (ECF No. 16) The Affidavit of Service states that on August 6, 2015, a private "process server acting on behalf of Caribbean Process Servers, Saint Vincent," attempted to serve Clover by hand-delivering process to Clover's purported registered agent in St. Vincent. (*Id.*) The Affidavit of Service does not state how this method of service complies with the requirements of U.S. law, St. Vincent law, or any international treaties. (*See id.*)

## ARGUMENT

## I.   PLAINTIFF FAILED TO EFFECT SERVICE UPON CLOVER IN ACCORDANCE WITH RULE 4 AND THE HAGUE CONVENTION

The Amended Complaint should be dismissed because Plaintiff failed to serve Clover with process in accordance with the requirements of Rule 4 of the Federal Rules of Civil Procedure and the Hague Convention. "Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served." *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990); *see Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). Actual knowledge of the existence of a lawsuit is insufficient to confer personal jurisdiction over the defendant in the absence of valid service of process. *See Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007).

Rule 4(h)(2) of the Federal Rules of Civil Procedure governs service on foreign companies such as Clover and provides that service can be made "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Fed. R. Civ. P. 4(h)(2). Rule 4(f), in turn, provides in relevant part that a defendant not within any judicial district of the United States must be served: "by any internationally agreed means of service that

is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents."   Fed. R. Civ. P. 4(f)(1). The Hague Convention's procedures are mandatory when serving a foreign party in a signatory country.  *See Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 705 (1988) (stating that "[c]ompliance with the Convention is mandatory in all cases to which it applies"); *see also* Advisory Committee Notes to 1993 Amendment to Rule 4(f) ("Use of the Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service.").

The United States and St. Vincent are both signatories to the Hague Convention.  *See* Hague Conference on Private International Law Official Website: Status Table, Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, available at http://www.hcch.net/index_en.php?act=conventions.status&cid =17 (last visited Aug. 29, 2015).  Therefore, to serve Clover in St. Vincent, Plaintiff is required to comply with the requirements of the Hague Convention.  *See Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004) ("Because service of process was attempted abroad, the validity of that service is controlled by the Hague Convention, to the extent that the Convention applies.").

Plaintiff failed to do so.  Article 10*(c)* of the Hague Convention allows "any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination."  Hague Service Convention, Art. 10*(c)*.  But Article 10*(c)* does not apply to every signatory of the Hague Convention and instead applies ***only if*** "the State of destination does not object."  *Id.*  St. Vincent has specifically objected to service under Article 10*(c)*, declaring that "it is opposed to the channels of transmission provided for in Article 10*(b)* and *(c)* of the Convention."  *See* Undated

6

Declaration of Saint Vincent and the Grenadines on the Hague Convention, available at http://www.hcch.net/index_en.php?act=status.comment&csid=932&disp=resdn (last visited Aug. 29, 2015) (the "St. Vincent Hague Declaration").  Plaintiff's attempt to serve Clover through a private process server was thus ineffective under Article 10 of the Hague Convention.

Nor was service proper under Article 19 of the Hague Convention, which provides that service of process from abroad may be made by any method that the internal law of the receiving country "*permits*."   Hague Convention, Art. 19 ("To the extent that the internal law of a contracting State permits methods of transmission, other than those provided for in the preceding articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions.").  Any argument that Plaintiff effected service on Clover under Article 19 fails for two reasons.  First, by objecting to service of process under Article 10*(c)* of the Convention, St. Vincent made clear that service of a foreign lawsuit through a private process server is *not* "permitted" by the law of St. Vincent.  *See* St. Vincent Hague Declaration (stating the St. Vincent is "opposed to the channels of transmission provided for in" Article 10*(c)*).

Second, as confirmed by the Declaration of Zhinga Horne Edwards (an experienced and credentialed lawyer in St. Vincent), the local law of St. Vincent does not expressly permit hand delivery of a foreign lawsuit through a private process server:

> [S]ervice of process relating to a *domestic* legal proceeding may be effected on a limited company 'by leaving the claim form at the registered office of the company' or by personally serving one of a number of enumerated representatives of the limited company . . . .  I know of *no* rule of procedure or other authority, however, expressly permitting that method of service of process for a *foreign* legal proceeding, such as one commenced in the United States of America.

(Decl. of Zhinga Horne Edwards, Esq., dated Aug. 31, 2015, attached as Ex. B, ¶ 4)  As courts

have almost uniformly held, "the word 'permits' in Article 19 must be read, in accordance with its plain meaning, to authorize only those service methods that are *explicitly sanctioned* by the law of the receiving country." *ePlus Tech., Inc. v. Aboud*, 155 F. Supp. 2d 692, 699 (E.D. Va. 2001) (emphasis added); *see, e.g.*, *In re Mak Petroleum, Inc.*, 424 B.R. 912, 920 (Bankr. M.D. Fla. 2010) (holding that Article 19 only allows for service methods explicitly sanctioned by a foreign state); *Humble v. Gill*, 08-cv-00166, 2009 WL 151668, at *3 (W.D. Ky. Jan. 22, 2009) (holding that Article 19 "does not transform internal methods of intrastate service into methods of interstate service."); *GMA Accessories, Inc. v. BOP, LLC*, 07-cv-3219, 2009 WL 2856230, at *3 (S.D.N.Y. Aug. 28, 2009) (holding same and explaining that "[t]his conclusion gives meaning to every word of Article 19 . . . [and] is consistent with the plain language of that text"); *cf. Banco Latino, S.A.C.A. v. Lopez*, 53 F. Supp. 2d 1273, 1280 (S.D. Fla. 2009) (Highsmith, J.) (permitting foreign service in a manner to which the foreign country neither expressly objected (unlike here) nor expressly authorized).  Because St. Vincent law does not explicitly sanction delivery of a foreign lawsuit through a private process server, the method of service employed by Plaintiff here was ineffective, and the Amended Complaint should be dismissed.  *See Kammona v. Onteco Corp.*, 587 F. App'x 575, 578 (11th Cir. 2014) (affirming "district court's dismissal without prejudice of [plaintiff's] complaint pursuant to Rule 12(b)(5) for insufficient service of process with respect to" one of the defendants).[1]

---

[1]  Clover expressly reserves, and does not waive, the right to move the Court at an appropriate time to dismiss this action on *forum non conveniens* grounds, because the Southern District of Florida is not an appropriate forum for resolution of this action.  As is apparent from the allegations of the Amended Complaint and the Declaration of Patrick T. O'Brien, most, if not all, of the relevant documents, witnesses, and other evidence are located overseas.

## II.  CLOVER IS NOT SUBJECT TO PERSONAL JURISDICTION IN THIS COURT

### A.  *Plaintiff Has Not Met Its Burden of Pleading Individualized Allegations of Personal Jurisdiction Over Each Defendant*

"A court must dismiss an action against a defendant over which it has no personal jurisdiction." *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1323-24 (M.D. Fla. 2011).  To withstand a motion to dismiss, a plaintiff must plead sufficient facts to establish a prima facie case of jurisdiction over the nonresident defendant.  *See Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x. 623, 625 (11th Cir. 2010).

A plaintiff cannot "aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant."  *Sabre Int'l Sec. v. Torres Advanced Enter. Solutions, LLC*, 60 F. Supp. 3d 21, 27 (D.D.C. 2014); *see Vision Motor Cars, Inc. v. Valor Motor Co.*, 981 F. Supp. 2d 464, 468 (M.D.N.C. 2013) ("Blanket conclusory allegations as to multiple defendants are insufficient [to establish personal jurisdiction].");  *Doe v. Del. State Police*, 939 F. Supp. 2d 313, 332 (S.D.N.Y. 2013) (noting that "a plaintiff asserting jurisdiction must tender *specific* allegations about the defendant's contacts with the forum state" (emphasis in original)).  It is "plainly unconstitutional" to attribute one defendant's contacts to another by considering the "'defending parties'" collectively and "aggregating their forum contacts."  *Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980) (noting that constitutional requirements "must be met as to each defendant over whom a state court exercises jurisdiction"); *see also Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Each defendant's contacts with the forum state must be assessed individually.");  *Fraser v. Smith*, 594 F.3d 842, 852 (11th Cir. 2010) (holding that a defendant's contact with Florida did not qualify as a U.S. jurisdictional contact for another foreign defendant).

9

The Amended Complaint fails to specify which jurisdictional allegations support the exercise of personal jurisdiction over which Defendants.  (Am. Compl. ¶¶ 5-12)  Plaintiff sued two corporate Defendants, one individual Defendant, and up to twenty unnamed "John Does." (*Id.* ¶¶ 2-4, 37)  Yet Plaintiff asserts *no* individualized jurisdictional allegations as to the various Defendants, instead lumping all of the alleged forum contacts of all the Defendants together.  (*Id.* ¶¶ 6-12)   In so doing, Plaintiff has failed to meet its burden to facially establish personal jurisdiction over Clover.  *See Vision Motor*, 981 F. Supp. 2d at 468 (dismissing complaint against all defendants where "[t]he complaint, with few exceptions, groups the defendants together and is not specific about the activities or actions of any particular defendant"); *see also Doe*, 939 F. Supp. 2d at 332, 335 (dismissing complaint on personal jurisdiction grounds because complaint lumped defendants together and "offered nothing by way of a specific allegation of [the out-of-state defendant's] contacts with New York").

> B.    *Even Accepting Plaintiff's Lumped-Together Allegations,*
> *Plaintiff Has Not Sufficiently Pled Personal Jurisdiction Over Clover*

The Amended Complaint relies exclusively on Fed. R. Civ. P. 4(k)(2), the national long-arm statute, as the basis for the Court's exercise of personal jurisdiction.  (*See* Am. Compl. ¶ 13) As the Eleventh Circuit has explained,

> Where, as here, a defendant is not subject to the jurisdiction of the courts of general jurisdiction of any one state, Rule 4(k)(2) permits a court to aggregate a foreign defendant's nationwide contacts to allow for service of process provided that two conditions are met: (1) plaintiff's claims must "arise under federal law;" and, (2) the exercise of jurisdiction must be "consistent with the Constitution and laws of the United States.

*Consol. Dev. Corp., v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000).  "Jurisdiction consistent with the Constitution and laws of the United States is that which comports with due process.  Considerations of due process require that a non-resident defendant have certain

minimum contacts with the forum so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id.* (internal quotation marks omitted).  The question before the Court is whether the exercise of personal jurisdiction over Clover is constitutional.[2]  It is not.

i.   *The Court Lacks General Jurisdiction Over Clover*

"[A] court may assert [general] jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, ___ U.S. ___, ____, 134 S. Ct. 746, 751 (2014) ; *see also id.* at 762 n.20 ("General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide.  A corporation that operates in many places can scarcely be deemed at home in all of them.  Otherwise, 'at home' would be synonymous with 'doing business.'").  "The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction," *Consol. Dev.*, 216 F.3d at 1292, and such jurisdiction will only be found in "exceptional cases."  *Schulman v. Inst. for Shipboard Educ.*, ___ F. App'x ___, ____, 2015 WL 4896597, at *2 (11th Cir. Aug. 18, 2015) (affirming dismissal for lack of personal

---

[2]      All but one of Plaintiff's causes of action purports to arise under federal law.  (*See* Am. Compl. pp. 36-37 (Count VIII, alleging violation of Section 540.08, Fla. Stat.))  Rule 4(k)(2) thus does not permit the Court to exercise personal jurisdiction over Clover regarding that Florida claim.  *See Consol. Dev.*, 216 F.3d at 1291; Fed. R. Civ. P. 4(k)(2).  In any event, because the Court's exercise of jurisdiction over Clover would be unconstitutional based on Clover's insufficient minimum contacts with the United States, *see infra* Part II.B-C, the Court would necessarily lack personal jurisdiction based on Clover's Florida-specific contacts.  *See Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1219 n.25 (11th Cir. 2009) (noting that the due process analysis related to the jurisdiction for federal courts and state courts is "virtually identical").

11

jurisdiction where defendant's connections to the forum included distribution agreements, marketing efforts, and attending a trade show).

Clover's alleged contracts with two businesses in the United States—at unspecified times, for unspecified durations, and for unspecified amounts—is facially inadequate to establish general personal jurisdiction.  *See Fraser*, 594 F.3d at 845, 849 (holding that "a defendant does not confer personal jurisdiction on our courts by making purchases from American companies" in a case in which the foreign defendant had established numerous U.S. business relationships, including purchasing half of its boats in Florida, purchasing insurance through a Florida agent, receiving commissions for referrals to two American-owned car-rental companies, and being designated as the preferred service provider for a St. Louis-based travel company, among other things); *see also Daimler*, ___ U.S. at ___, 134 S. Ct. at 757 ("'[M]ere purchases, even if occurring at regular intervals . . . are not enough to warrant a State's assertion of *in personam* jurisdiction over a non-resident corporation in a cause of action not related to those purchase transactions.'"); *Associated Transp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen*, 197 F.3d 1070, 1075 (11th Cir. 1999) (recognizing that "[g]eneral jurisdiction has been found lacking even where a company had employees, agencies and sales people regularly in the forum; where the company was qualified to do business in the forum; and where it regularly solicited business in the forum and derived more than 26% of its income from the forum" (internal citation omitted)).

Advertising with U.S. companies also is constitutionally insufficient to justify general jurisdiction.  *See Fraser*, 594 F.3d at 845, 850 (holding that the court lacked general jurisdiction over a foreign defendant who advertised with several U.S. outlets, including on television, in travel guides, and in the Miami Herald).  Plaintiff further fails to plead the nature of these

advertisements, for whom they were allegedly placed, for how long, and for how much money. (*See* Am. Compl. ¶ 9)  These "conclusory assertions are not sufficient to meet [Plaintiff's] burden."  *MPS Entm't, LLC v. Headrush Apparel, Inc.*, 12-cv-23364, 2013 WL 5446543, at *5 (S.D. Fla. 2013) (Cooke, J.) (rejecting general jurisdiction claims based on allegations of defendant's "continuous activities [of] selling, marketing and promoting products in the State of Florida").

The internet-based allegations are not enough to establish general jurisdiction either. This Court has recognized this previously when faced with similar claims:

> [Defendant's] operation of a website is not, standing alone, a basis to confer general jurisdiction over [the Defendant] pursuant to § 48.193(2)[3] . . . . *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1075-76 (9th Cir. 2011) ("[i]nteractive websites where a user can exchange information with the host computer are now extremely common.  If maintenance of an interactive website were sufficient to support general jurisdiction in every forum in which users interacted with the website, the eventual demise of all restrictions on the personal jurisdiction of state courts would be the inevitable result.") (internal citations and quotations omitted).

*Id.*  Designating an agent under the Digital Millennium Copyright Act ("DMCA") to receive notice of possible infringing content on an owner's website also is irrelevant for jurisdictional purposes, especially where, as here, the designated agent is in Canada.  *Fraserside IP L.L.C. v. Gamma Entm't, Inc.*, 11-cv-3056, 2012 WL 1155682, at *3 (N.D. Iowa Apr. 5, 2012) (declining to factor into a personal jurisdiction analysis a website producer's designation of a DMCA agent and holding that defendants did not have minimum constitutional contacts); *see also Consol. Dev.*, 216 F.3d at 1292 (rejecting argument that defendant was subject to personal jurisdiction pursuant to Rule 4(k)(2) because it had appointed an agent for service of process in the United

---

[3]      "The reach of [Section 48.193(2), Fla. Stat.] extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment," *Fraser*, 594 F.3d at 846, so the Court's analysis under that statute is equally applicable to the constitutional analysis here.

States); Interim Designation of Agent to Receive Notification of Claimed Infringement, U.S. Copyright Office, available at http://copyright.gov/onlinesp/agents/m/maximum_apps.pdf (last visited Sept. 3, 2015) (designation by Defendant Maximum Apps of a DMCA agent in Montreal, Canada).  Lastly, a foreign defendant's registration of its trademark with the U.S. Patent and Trademark Office does not thereby render that defendant subject to the jurisdiction of all U.S. courts for any and all claims.  *See Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 345 (5th Cir. 2002) (holding that registration of mark in the United States did not subject the defendant to personal jurisdiction under Rule 4(k)(2)).

Plaintiff's jurisdictional assertions here are "unacceptably grasping" and would (if followed) constitute an "exorbitant exercise[] of general jurisdiction." *Daimler*, ___ U.S. at ___, 134 S. Ct. at 761-62.

    ii.    *The Court Lacks Specific Jurisdiction Over Clover*

    *a.*  Minimum Contacts

"Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint." *Consol. Dev.*, 216 F.3d at 1291.  More than a "but-for" relationship must exist between the alleged contacts and the alleged injury; a close "substantial causal relationship" between the two is required.  *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222-24 (11th Cir. 2009); *see also Fraser*, 594 F.3d at 851 (holding that it must have been both foreseeable that (1) plaintiffs' injuries would result from the forum contacts by defendant and (2) that defendant would be haled into a court in that forum based on defendant's conduct and connection with that forum).

None of Clover's alleged contacts with the United States was the substantial cause of the injuries Plaintiff complains of—the alleged improper use of Plaintiff's purported trademarks and

14

copyrighted materials on the Website.  Targeting and advertising the Website to U.S. consumers (even if done), (*see* Am. Compl. ¶¶ 9-10), could not foreseeably cause U.S. consumers to infringe Plaintiff's trademarks and copyrights by posting them illegally online.  *See Fraser*, 594 F.3d at 851 (holding that tort claims from a boat exploding in Caribbean were not a reasonably foreseeable result from purchasing a boat in Florida); *Oldfield*, 558 F.3d at 1223 (holding that sustaining injuries on a third-party's fishing vessel was not a foreseeable consequence of a Costa Rican resort's website advertising the resort and its "unique sport fishing" amenities); *Consol. Dev.*, 216 F.3d at 1292 (holding that "a nonresident corporation's contacts with the forum that are unrelated to the litigation must be substantial in order to warrant the exercise of personal jurisdiction under Rule 4(k)(2)" and placing advertisements in the forum were not).  And even had Plaintiff's injuries been reasonably foreseeable, it was not reasonably foreseeable that Clover would be haled into a U.S. court based on the infringing conduct of online users who may or may not be located in the United States.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (holding that the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether *a defendant* has sufficient contacts with a forum State to justify an assertion of jurisdiction"  (emphasis added)).

Nor can the operation of an interactive website—even one accessible in the United States—be the foreseeable cause of Plaintiff's alleged injuries.  (*See* Am. Compl. ¶ 11)  *See Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014) ("The interactivity of a website is also a poor proxy for adequate in-state contacts. We have warned that courts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is

interactive." (internal quotations and citation omitted)); *Louis Vuitton*, 736 F.3d at 1357-58 (rejecting the notion that "the mere operation of an interactive website alone gives rise to purposeful availment *anywhere* the website can be accessed"). A contrary rule would subject every company operating an interactive website to the jurisdiction of any court worldwide where the website is accessible for claims relating to the content published on its website. *See Cadle, Co. v. Schlichtmann*, 123 F. App'x 675, 679 (6th Cir. 2005) ("The law does not require that people avoid using the internet altogether in order to avoid availing themselves of the laws of every state.").

Clover's other alleged contacts with the United States also are constitutionally insufficient to support the Court's specific jurisdiction here. For instance, this lawsuit is about *Plaintiff's* purported copyrights and trademarks, not Clover's U.S.-registered trademark. (*See* Am. Compl. ¶ 7) Plaintiff's allegation that Clover entered into a contract with a Florida business that contained a Florida forum clause is also irrelevant as to Plaintiff's tort claims, especially as Plaintiff does not allege it is a party to that unrelated contract. *See Bahamas Sales Associate, LLC v. Byers*, 701 F.3d 1335, 1340-41 (11th Cir. 2012) (holding that a forum selection clause in property sale agreement did not dictate the forum for counterclaims related to the fraudulent appraisal of the property, even though the plaintiff and defendant were both parties to that contract, because the property sale agreement was unrelated to the tort claim); *cf. Int'l Textile Group, Inc. v. Interamerican Apparel Co., Inc.*, 08-cv-22859, 2009 WL 4899404, at *4 (S.D. Fla. Dec. 14, 2009) (Cooke, J.) ("[Defendant's] agreement to arbitrate any issues arising from *an unrelated contract* in Miami-Dade County is also not a cognizable contact for the purpose of establishing general personal jurisdiction over him." (emphasis added)). Because none of the alleged U.S. contacts can be fairly deemed to be the substantial and foreseeable cause of

16

Plaintiff's alleged injuries, it is fundamentally unfair to subject Clover to the jurisdiction of all U.S. courts on these claims.

>    *b.   Calder* Test

Nor is specific jurisdiction cognizable under the so-called *Calder* test.  *See Oldfield*, 558 F.3d at 1220 n.28 (recognizing that a plaintiff may establish personal jurisdiction in the respective forum when "the defendant (1) committed an intentional tort (2) *that was directly aimed at the forum*, (3) *causing an injury within the forum that the defendant should have reasonably anticipated*" (emphases added) (citing *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)).

The Amended Complaint does not allege that Clover should have reasonably anticipated that trademark infringement would harm Plaintiff in alleged forum—Florida and the United States—and for good reason.  Such trademark injuries like those complained of here occur in a plaintiff's *state of residence*.  *See Licciardello v. Lovelady*, 544 F.3d 1280, 1287-88 & n.8 (11th Cir. 2008) ("[W]here the internet is used as a vehicle for the deliberate, intentional misappropriation of a specific individual's trademarked name or likeness and that use is *aimed at the victim's state of residence*, the victim may hale the infringer into that state to obtain redress for the injury." (emphasis added)).  The Amended Complaint describes Plaintiff as a "foreign corporation" that neither is registered in nor operates a principal place of business from Florida or any other U.S. state.  (*See* Am. Compl. ¶ 1)  Based on these allegations, Plaintiff's injuries, if any, occurred in its country of residence, Cyprus, (*see id.*), and Plaintiff cannot hale Clover into a Florida or U.S. court to litigate the alleged trademark and copyright claims.  *See Licciardello*, 544 F.3d at 1288 n.8.  In any event, a plaintiff's injuries in the forum state that manifest there because that forum serves as the *plaintiff*'s state of residence do not qualify as sufficient

constitutional contacts by a *defendant*. *See Walden v. Fiore*, ___ U.S. ___, ___, 134 S. Ct. 1115, 1122 (2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him.").

      iii.    *Clover's Evidence Refutes Plaintiff's Allegations of Personal Jurisdiction*

In assessing either general or specific personal jurisdiction, the Court must not accept a plaintiff's allegations to the extent those allegations are controverted by the defendant's affidavits. *See Consol. Dev.*, 216 F.3d at 1291 ("We must accept the allegations in the complaint as true, to the extent that they are uncontroverted by the Defendant's affidavits and depositions . . . ."). If the defendant is able to refute personal jurisdiction through affidavits or other competent evidence, the burden shifts to the plaintiff to substantiate its jurisdictional allegations through affidavits, testimony, or other competent evidence of its own. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). Clover has submitted such evidence in support of this Motion.

As to general jurisdiction, the record evidence confirms that Clover is not "at home" in Florida or the United States, and as to specific jurisdiction, the record evidence confirms that Clover has no domestic connections related to the claims at issue. Clover is organized under the laws of St. Vincent with Kingstown, St. Vincent as its principal place of business. (*See* O'Brien Decl. ¶ 3) Clover is not registered to do business anywhere in the United States and maintains no U.S. offices, physical presence, phone numbers, postal addresses, or bank accounts. (*Id.* ¶¶ 4-6, 8) It owns no real or personal property in the United States; has no U.S.-based subsidiaries or affiliates; does not have any employees in the United States and has never had a U.S.-based director; and had never (until the instant case) been a party to a lawsuit or arbitration proceedings

in the United States.  (*Id.* ¶¶ 6-7, 9, 11)  Nor does Clover specifically aim its marketing or revenue-generating activities at the United States or its residents.  (*Id.* ¶ 12)  Indeed, the servers in which the alleged infringing content were housed are all located outside the United States—in Canada. (*See id.* ¶ 10)

 Based on this record evidence, Plaintiff's aggregated, jurisdictional allegations aimed  at the "Defendants" as a group must be disregarded.  *See Consol. Dev.*, 216 F.3d at 1291; *Future Tech. Today*, 218 F.3d at 1249.

  C. *A Finding of Personal Jurisdiction Over Clover Would Violate Constitutional Principles*

Plaintiff must also prove that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010) (internal quotation marks omitted).  "In making this determination, a court may consider several factors, including the burden on the defendant of litigating in the forum, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute." *JMA, Inc. v. Biotronik SE & Co. KG*, No. 12-cv-23466, 2013 WL 1402322, at *3 (S.D. Fla. Apr. 5, 2013) (internal quotation marks omitted).  The Eleventh Circuit has held that "in cases involving international defendants, courts should consider the unique burdens placed upon one who must defend oneself in a foreign legal system." *Oldfield*, 558 F.3d at 1221 (internal quotation marks and alteration omitted).

Such unique burdens are present here.  Plaintiff and Clover are Cyprus and St. Vincent companies, respectively.  None of Clover's documents, offices, employees, or servers are located within the United States, thus making it extremely burdensome to defend the claims at issue in this forum. *See Asahi Metal Indus. Co. v. Superior Court of Calif.*, 480 U.S 102, 114 (1987)

(holding that that the burden on the defendant was severe in that it had to "traverse the distance between [its] headquarters in Japan and the Superior Court of California" and "submit its dispute with [plaintiff] to a foreign nation's judicial system").  Similarly, both Plaintiff and the other Defendants are foreign companies with no constitutionally significant ties to Florida or the United States, whose courts should have no interest in regulating an erotic website with no real connection to those forums.  *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1080 (10th Cir. 2004) ("Because the majority of the five reasonableness factors weigh in [the defendant's] favor, we hold that an exercise of personal jurisdiction over [the defendant] would offend traditional notions of fair play and substantial justice.").

## <u>CONCLUSION</u>

For all of the foregoing reasons, the Court should grant this Motion and dismiss the Amended Complaint against Clover.

Respectfully submitted,

By: */s/ John F. O'Sullivan*
John F. O'Sullivan
Fla. Bar No. 143154
Allen P. Pegg
Fla. Bar No. 597821
Jason D. Sternberg
Fla. Bar No. 72887
HOGAN LOVELLS US LLP
600 Brickell Ave., Suite 2700
Miami, FL 33131
Telephone:  (305) 459-6500
Facsimile:  (305) 459-6550
john.osullivan@hoganlovells.com
allen.pegg@hoganlovells.com
jason.sternerg@hoganlovells.com

*Attorneys for Defendant Clover Holdings Limited*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 3, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel and that a true and correct copy was served via electronic mail on all counsel of parties of record:

Aaron Behar
Fla. Bar No. 166286
Jaclyn Behar
Fla. Bar NO. 63833
BeharBehar
1840 North Commerce Parkway
Suite One
Weston, Florida  33326
Telephone:  (954) 688-7642
Facsimile:  (954) 332-9260
AB@BeharBehar.com

And

Spencer D. Freeman
Freeman Law Firm, Inc.
1107 ½ Tacoma Avenue South
Tacoma, WA 98402
Telephone:  (253) 383-4500
Facsimile:  (253) 383-4501
sfreeman@freemanlawfirm.org

*Counsel for Plaintiff*

By: */s/ Allen P. Pegg*
      Allen P. Pegg
      Fla. Bar No. 597821
      allen.pegg@hoganlovells.com