UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:15-cv-22463-MGC

HYDENTRA HLP INT. LIMITED, a
foreign corporation d/b/a METART,

      Plaintiff,

vs.

MAXIMUM APPS INC., a foreign
company d/b/a SEX.COM; CLOVER
HOLDINGS LIMITED PARTNERSHIP,
a foreign company d/b/a SEX.COM;
SEX.COM; FREDERIC VALIQUETTE,
an individual; and John Does 1-20,

      Defendants.
_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO CLOVER
HOLDINGS LIMITED PARTNERSHIP'S MOTION TO DISMISS AMENDED
COMPLAINT FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF
PERSONAL JURISDICTION**

      COMES NOW, Plaintiff, HYDENTRA HLP INT. LIMITED d/b/a METART, by

and through the undersigned counsel, and hereby files its Memorandum of Law in

Opposition to Defendant's, CLOVER HOLDINGS LIMITED PARTNERSHIP ("Clover"

or "Defendant"), Motion to Dismiss Plaintiff's Amended Complaint for Insufficient

Service of Process and Lack of Personal Jurisdiction. (D.E. #24).

      On June 30, 2015, Plaintiff filed its Complaint in this cause. The following day,

Plaintiff filed an Amended Complaint to correct a certain typographical error appearing

in its prior filing. On August 6, 2015, Plaintiff served Defendant Clover in St. Vincent

and the Grenadines. *See Affidavit of Service of Process, attached hereto as Exhibit "A."*

On September 3, 2015, Defendant Clover filed its Motion to Dismiss Amended Complaint, contesting jurisdiction and proper service of process.

Plaintiff asserts that Defendant Clover's position is inconsistent with the legal obligations imposed upon parties obtaining service of process in St. Vincent and the Grenadines as well as the factual and legal issues governing personal jurisdiction over a Defendant.

<div align="center">

**PLAINTIFF PROPERLY EFFECTUATED SERVICE
OF PROCESS UPON CLOVER**

</div>

Clover suggests that service upon Clover was improper because the procedures set forth by the Hague Convention are mandatory when serving a foreign party in a signatory country. That assertion is flawed, however, as while the United States is a signatory to the Hague Convention, Saint Vincent and the Grenadines is not. Instead, Saint Vincent and the Grenadines is a "Non-Member Contracting State" under the Hague Convention. *See Hague Conference on Private International Law,* www.hcch.net. Looking further, the page for St. Vincent and the Grenadines on that website reflects "No Results" under the heading "Has Signed" (*See webpages for St. Vincent and the Grenadines attached as Exhibit "B" pages 37-38, and Exhibit "C").* Accordingly, Defendant is incorrect in its claim that Saint Vincent and the Grenadines is a signatory to the Hague Convention for the purpose of service of process.

Additionally, and also as set forth in the Hague Convention website, Saint Vincent and the Grenadines considers itself to be bound by the Hague Convention only as a result of succession, rather than by any other formal means. During the period that Saint Vincent and the Grenadines had been under rule of the United Kingdom and Northern Ireland, those countries had been signatories. Following its independence in 2005, Saint

Vincent and the Grenadines informally declared itself to be bound. This important historical perspective is set forth on page 38 of the Hague Convention website, which provides, in part, that:

> "By a Note received at the Ministry of Foreign Affairs of the Kingdom of the Netherlands on 6 January 2005, the Government of Saint Vincent and the Grenadines informed the Ministry of Foreign Affairs that it does consider itself bound by the Convention, which had been declared applicable to Saint Vincent by the Government of the United Kingdom of Great Britain and Northern Ireland on 20 May 1970. The date of entry into force is the date of independence of this State."

*See page 38 of Hague Convention website attached hereto as Exhibit "D."* This demonstrates that even though they consider themselves to be bound, Saint Vincent and the Grenadines never underwent any formal procedures for becoming a signatory to the Hague Convention and thus its status is in name-only, rather than in fact.

The Southern District of Florida has ruled in an analogous factual situation concerning the country of Belize. As reflected in Exhibit D, Belize, like St. Vincent and the Grenadines, is also a Non-Member Contracting State to the Hague Convention. In *Mayoral-Amy v. BHI Corp.*, the Southern District of Florida held that Belize's status under the Hague Convention was "uncertain". *Mayoral-Amy v. BHI Corp.*, 180 F.R.D. 456 (S.D. Fla. 1998). Specifically, Belize's predecessor in sovereignty, British Honduras, was a party to the Convention as a territory of the United Kingdom. "Since achieving independence, Belize has not become a signatory. Whether or not this constitutes de facto acceptance or rejection of the Convention is uncertain". *Id*. at N. 2. Similar to Belize, whether St. Vincent and the Grenadines is subject to the Hague Convention remains uncertain given that it never became a signatory to the Hague Convention following its independence. *See Exhibit "B."* Accordingly, and as a matter of law, service under the

Hague Convention is not mandatory to effectuate proper service in St. Vincent and the Grenadines.

Because the Hague Convention does not apply to St. Vincent and the Grenadines, the procedures for perfecting service upon individuals in foreign countries is governed by the Federal Rule of Civil Procedure. Federal Rule of Civil Procedure 4(h)(2), addresses service of process upon a foreign corporation and provides that:

> "(h) Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:
>
> > (2) at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)."

*Federal Rules of Civil Procedure 4(h)( 2)*. Rule 4(f) provides, in pertinent part:

> (f) Serving an Individual in a Foreign Country. Unless federal law provides otherwise, an individual -- other than a minor, an incompetent person, or a person whose waiver has been filed -- may be served at a place not within any judicial district of the United States:
>
> > (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
> >
> > (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
> >
> > > (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
> > >
> > > (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
> > >
> > > (C) unless prohibited by the foreign country's law, by:
> > > > (i) delivering a copy of the summons and of the complaint to the individual personally; or
> > > > (ii) using any form of mail that the clerk addresses

and sends to the individual and that requires a
signed receipt; or

(3) by other means not prohibited by international agreement, as
the court orders.

*Federal Rules of Civil Procedure, 4(f).*

The very concept of service of process stems from the due process clauses of the

Fifth and Fourteenth Amendments to the U.S. Constitution. Due process requires notice

reasonably calculated under all the circumstances, to apprise interested parties of the

pendency of the action and to afford them an opportunity to present their objections.

*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950) (citing *Milliken*

*v. Meyer*, 311 U.S. 457 (1941).

Such notice is present in this case. As set forth above, on August 6, 2015, Plaintiff

effectuated service upon Mr. Ralph A. Baes with the Summons and Complaint in this

action as prescribed by the laws of St. Vincent and the Grenadines. Plaintiff obtained a

sworn statement from Israel A. Bruce, Barrister-At-Law & Solicitor in St. Vincent and

the Grenadines attesting to the legality of Plaintiff's service of process under the laws of

that country. See Exhibit "E." More specifically, Barrister and Solicitor Bruce testified to

the following concerning Plaintiff's method of service upon Clover:

> "The Affidavit of Process Service dated 11th August, 2015, before me
> Israel R. Bruce and conducted by Nicole Charles, upon Mr. Ralph E.
> Baynes Office Manager of LEEWARD TRUST CORPORATION the
> registered agent for CLOVER HOLDINGS LIMITED PARTNERSHIP at
> Egmont street, Bonadie's plaza suite 3, Kingstown, Saint Vincent on the
> 6th of August 2015 at 3:30PM was served according to the laws and
> customs of Saint Vincent and the Grenadines."

See Exhibit "E."

Additionally, and in further support of its position that due process was complied

with, it should be noted that Saint Vincent and the Grenadines is an English speaking Country. *See Department of State, travel information page attached hereto as Exhibit F.* Accordingly, there is and can be no due process question as to whether the Defendant correctly understood the issues raised by the Amended Complaint and Summons.

Given these factors, Defendant is hard pressed to argue that service of process upon it violates any *due process rights* it may have. Once again, service was effectuated through a "method that is reasonably calculated to give notice" to the Defendant and consistent with all legal requirements for service of process. As such, because Saint Vincent and the Grenadines is not a signatory to the Hague Convention but rather a Non-Member Contracting State, personal service upon Plaintiff's designated representative is a proper means of service, as a matter of law.

## THIS COURT HAS PERSONAL JURISDICTION OVER CLOVER

Defendant Clover asserts that this case should be dismissed as this Honorable Court lacks personal jurisdiction over it. Defendant is incorrect. Personal jurisdiction "is an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999). The plaintiff bears the burden of establishing that a court has personal jurisdiction over a defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 28  797, 800 (9th Cir. 2004). The plaintiff is "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784 (9th Cir. 1977). There is no statutory method for resolving this issue; thus, "the mode of its determination is left to the trial court." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). If a court decides to rule on a

motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, a plaintiff must make only a prima facie showing of jurisdictional facts to survive the motion. *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909 (9th Cir. 2011). The "uncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor" for purposes of deciding whether Plaintiff has established a prima facie showing of personal jurisdiction. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). A federal court may exercise personal jurisdiction over a defendant only if the following two requirements are met: (1) the state long-arm statute allows the court to exercise jurisdiction; and (2) exercise of jurisdiction would not violate the Due Process Clause of the Fourteenth Amendment. Posner v. Essex Ins. Co., 178 F.3d 1209 (11th Cir. 1999).

### *Florida's Long Arm Statute*

Florida Statute §48.193, more commonly known as Florida's Long-Arm Statute, provides for the exercise of either general or specific personal jurisdiction over a defendant. *KVAR Energy Sav., Inc. v. Tri-State Energy Solutions*, No.6:08-cv-85-Orl-19KRS, 2009 U.S. Dist. LEXIS 3007, at *11 (M.D. Fla. Jan. 15, 2009). In the instant case, this Honorable Court has personal jurisdiction over Clover under either standard.

A defendant is subject to the specific jurisdiction of Florida courts if it commits any one of the following acts:

(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

(b) Committing a tortious act within this state . . . .

7

(f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

    1. The defendant was engaged in solicitation or services within this state; or

    2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

Fl. Stat. 48.193(1).

Similarly, a defendant is subject to general jurisdiction if it "is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise . . . whether or not the claim arises from that activity." Fla. Stat. § 48.193(2).

### *Plaintiff's Prima Facie Case*

In determining whether a defendant is subject to personal jurisdiction in the state, the Court must analyze the evidence provided by both parties using the burden-shifting framework supplied by the Florida Supreme Court in *Venetian Salami Co. v Parthenais*, 554 So.2d 499, 502-03 (Fla. 1989). Plaintiff "need only allege sufficient facts [in the complaint] to make out a prima facie case of jurisdiction." *Posner v. Essex Ins. Co.*, 178 F.3d 1209 (11th Cir. Fla. 1999); *United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).

Here, Plaintiff alleges that Defendant is subject to personal jurisdiction by virtue of the fact that it has engaged in business activities in and directed to the United States and this District, and has committed tortious acts within the United States and this

District or directed at the United States and this District.  As established in its Amended

Complaint:

> 9)  Defendants contract with United States advertisers, which use geotracking to target advertisements directly into districts of the United States, including Florida.
>
> 10) Defendants specifically target Internet users in the United States. Defendants overtly state that 25% of its viewers are in the United States. Upon information and belief, over 40% of Sex.com's viewers are in the United States."
>
> *Plaintiff's Amended Complaint (DE#5).*

In addition, the information touted by Clover on in its own Press Kit, proudly

advertises and asserts: "BONUS INFO - About 25% of our total traffic is 100%

American."  *See Sex.com Press Kit, attached hereto as Exhibit "G."* Further, statistics

gathered by Similarweb.com, a website which evaluates web traffic for advertising

purposes, reflects that in August of 2015 alone there were 8.8 MILLION visits to

Defendant's Sex.com site and that 39.21% of those visits were from desktop computers

in the United States. Additionally, 58.26% of those visits were from direct traffic rather

than links from other web sites. *See Similarweb.com Traffic Overview, attached hereto as

Exhibit H.* This information and these statistics clearly demonstrate that Defendant's

activities are directed to and targeted at the United States specifically.

Plaintiff's allegations in its Amended Complaint track the language of the Florida

Long-Arm Statute and are sufficient under the law to establish a prima facie case of

personal jurisdiction. See *Posner*, 178 F.3d at 1214; *United Tech.*, 556 F.3d at 1274 and

*Venetian*, 554 So. 2d at 502. See also *Gregory v. Ebf & Assocs., L.P.*, 595 F. Supp. 2d

1334, 1339 (S.D. Fla. 2008). "In order to plead a prima facie showing of personal

jurisdiction, a plaintiff may either track the language of §48.193, without pleading supporting facts, or allege specific facts to fit within one or more of the subsections." *Milligan Elec. Co. v. Hudson Constr. Co.*, 886 F. Supp. 845, 849 (N.D. Fla. 1995) (The court found plaintiff's allegation that defendant conducted business in the State of Florida was within the language of Florida's long-arm statute and sufficient to state a prima facie basis of jurisdiction against that defendant); *Hilltopper Holding Corp. v. Estate of Cutchin*, 955 So. 2d 598, 601 (Fla. 2d DCA 2007).

Here, not only does Plaintiff comply with the Florida Long-Arm Statute, but as set forth below, Defendant has also contractually submitted itself to the jurisdiction of the Court in Florida for third party disputes exactly like this one.

Defendant maintains Internet domain names that are registered with Network Solutions, specifically SEX.COM, the domain at issue in this case. This domains is accessible through the Internet from anywhere in the world, including by anyone in the State of Florida. Network Solutions is located in Jacksonville, Florida (Duval County). The Terms of Service agreement between Defendant and Network Solutions, attached hereto as Exhibit "I", contains the following provisions pertaining to jurisdiction and the parties involved:[1]

> "21. GOVERNING LAW.
>
> > a. Except as otherwise set forth in the UDRP or any similar ccTLD policy with respect to any dispute over a domain name registration, this Agreement, your rights and obligations and all actions

---

[1] For purposes of convenience, Plaintiff provides the Court with a copy of the Terms of Service, which only include the first three pages, page 11 (which sets forth the relevant provisions), and pages 136-137, which are the last two pages of the document. Should the Court wish to examine the full document, Plaintiff can provide same under a separate filing or the Court may access the document at http://www.networksolutions.com/legal/static-service-agreement.jsp.

contemplated by this Agreement shall be governed by the laws of the United States of America and the State of Florida, without regard to conflict of laws principles, as if the Agreement was a contract wholly entered into and wholly performed within Duval County in the State of Florida.

b. Except as otherwise set forth in the UDRP or any similar ccTLD policy with respect to any dispute over a domain name registration, any judicial proceeding relating to or arising out of this Agreement or the Services **shall be instituted only in a federal or state court of competent jurisdiction in Duval County in the State of Florida, and you consent to the personal jurisdiction of such court and waive the right to challenge the jurisdiction of such court on grounds of lack of personal jurisdiction or forum non conveniens or to otherwise seek a change of venue.** You also agree to waive the right to trial by jury in any action that takes place relating to or arising out of this Agreement or the Services.

c. Notwithstanding the forgoing, f**or the adjudication of third party disputes (i.e., disputes  between yourself and another party, not Network Solutions)** concerning or arising from use of domain names registered hereunder, **you acknowledge and agree that you shall submit, without prejudice to other potentially applicable jurisdictions, to the jurisdiction of the courts (i) of the domain name holder's domicile, and (ii) where Network Solutions' principal place of business is located, currently Jacksonville, Florida**." (Emphasis supplied)

Thus, pursuant to the clear terms of the service agreement, Defendant has agreed to submit to the jurisdiction of the Court in Florida and to waive the right to challenge such jurisdiction, not only for cases involving Network Solutions but also for cases involving third-parties, such as the one before this Court. Accordingly, Defendant is estopped from asserting that jurisdiction is improper herein, and its position to the contrary is frivolous in light of the unequivocal terms of service. In *Cybernet Entertainment LLC v. IG Media Inc. et al*, CV-12-01101-PHX-SRB, the United States District Court for the District of Arizona reached the very same finding in a case

11

involving just such an agreement.  In that case, while the Court found that it had personal jurisdiction over the Defendant under Rule 4(k) of the Federal Rules of Civil Procedure, and thus needed to go no further in its analysis, the Court stated that the Plaintiff Defendant subjected itself to personal jurisdiction by agreeing to a forum selection clause in a contract such as the one before this Honorable Court.

## <u>CONCLUSION</u>

For the reasons set forth herein, Defendant's Motion to Dismiss for Insufficient Service of Process and Lack of Personal Jurisdiction should be DENIED. Plaintiff effectuated service of process on Clover by means permitted under the applicable laws of this State and the laws of St. Vincent and the Grenadines. Clover additionally is subject to personal jurisdiction given the undisputable extent of the business that it transacts in and directed to the Southern District of Florida and the fact that it is party to an agreement that unequivocally establishes jurisdiction over it in the State of Florida.

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 18th day of September, 2015 we electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Brady J. Cobb, Esq., Counsel for Maximum Apps Inc. d/b/a Sex.Com and Frederic Valiquette; and to: Allen P. Pegg, Esq. and John F. O'Sullivan, Esq., Counsel for Clover Holdings Limited Partnership d/b/a Sex.Com.

Respectfully submitted,

*/s/Aaron Behar, Esq.*

Aaron Behar, Esq.
Florida Bar No.: 166286
Jaclyn Behar, Esq.
Florida Bar No.: 63833
BeharBehar
1840 North Commerce Parkway
Suite 1
Weston, Florida 33326
Telephone:  (954) 688-7642
Facsimile: (954) 332-9260
E-mail: ab@beharbehar.com
***Counsel for Plaintiff***

# EXHIBIT "A"

Filed on behalf of: Plaintiff

Name of the Deponent: Ms. Nicole Charles

Number of Statement: 1

No. of Exhibits: "A"

Case Action No.: 1:15-cv-22463-MGC

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

BETWEEN

HYDENTHRAHLP INT. LIMITED, A FOREIGN CORPORATION d/b/a METART            PLAINTIFF

-VS-

CLOVER HOLDINGS LIMITED PARTNERSHIP d/b/a SEX.COM                      DEFENDANTS

C/O E.M. FRENCH, DIRECTOR, EGMONT STREET, BONADIES PLAZA

SUITE 3, KINGSTOWN, SAINT VINCENT

---

### THE AFFIDAVIT OF PROCESS SERVICE

---

Prepared By:

ISRAEL R. BRUCE LL.B
(Hons)
BARRISTER AT LAW & SOLICITOR
ST VINCENT & THE GRENADINES

Israel R. Bruce

**BRUCE LAW CHAMBERS**

**Chambers**

**Sprott Brothers Plaza, 2nd Floor**

**Bay Street**

**P.O. Box 699, Kingstown**

**St Vincent and the Grenadines**

# EXHIBIT "B"

# 14: Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters

Entry into force: 10-II-1969

# Members of the Organisation

| States | S[1] | R/A/Su [2] | Type [3] | EIF [4] | Ext [5] | Auth [6] | Res/D/N [7] |
|---|---|---|---|---|---|---|---|
| Albania | | 1-XI-2006 | A | 1-VII-2007 | | 3 | |
| Argentina | | 2-II-2001 | A | 1-XII-2001 | | 2 | D,Res 5,10,15,16 |
| Armenia | | 27-VI-2012 | A | 1-II-2013 | | 1 | |
| Australia | | 15-III-2010 | A | 1-XI-2010 | 7 | 5 | D 5,8,9,10,15,16,17,29 |
| Belarus | | 6-VI-1997 | A | 1-II-1998 | | 1 | |
| Belgium | 21-I-1966 | 19-XI-1970 | R | 18-I-1971 | | 2 | D 8,15,16 |
| Bosnia and Herzegovina | | 16-VI-2008 | A | 1-II-2009 | | 1 | |
| Bulgaria | | 23-XI-1999 | A | 1-VIII-2000 | | 3 | D 5,8,10,15,16 |
| Canada | | 26-IX-1988 | A | 1-V-1989 | | 4 | D 15,16 |
| China, People's Republic of | | 6-V-1991 | A | 1-I-1992 | | 8 | D,N 5,8,10,15,16 |
| Croatia | | 28-II-2006 | A | 1-XI-2006 | | 3 | Res,D 5,6,8,9,10,15,16 |
| Cyprus | | 26-X-1982 | A | 1-VI-1983 | | 4 | D 8,10,15,16 |
| Czech Republic | | 28-I-1993 | Su | 1-I-1993 | | 4 | D,Res 8,10,15,29 |
| | 7-I- | 2-VIII- | | 1-X- | | | D |

| | | | | | | |
|---|---|---|---|---|---|---|
| Denmark | 1969 | 1969 | R | 1969 | 3 | 10,15,16 |
| Egypt | 1-III-1966 | 12-XII-1968 | R | 10-II-1969 | 1 | Res 8,10 |
| Estonia | | 2-II-1996 | A | 1-X-1996 | 1 | D 10,15,16 |
| Finland | 15-XI-1965 | 11-IX-1969 | R | 10-XI-1969 | 2 | D 2,9,10 |
| France | 12-I-1967 | 3-VII-1972 | R | 1-IX-1972 | 1 | 3 | D 8,15,16 |
| Germany | 15-XI-1965 | 27-IV-1979 | R | 26-VI-1979 | 3 | 5,8,10,15,16 |
| Greece | 20-VII-1983 | 20-VII-1983 | R | 18-IX-1983 | 1 | D 8,10,15 |
| Hungary | | 13-VII-2004 | A | 1-IV-2005 | 3 | D 2,5,6,8,9,10,15,16 |
| Iceland | | 10-XI-2008 | A | 1-VII-2009 | 1 | D,Res 10,15,16 |
| India | | 23-XI-2006 | A | 1-VIII-2007 | 1 | D,Res 8,10,15,16 |
| Ireland | 20-X-1989 | 5-IV-1994 | R | 4-VI-1994 | 3 | D,Res 10,15 |
| Israel | 25-XI-1965 | 14-VIII-1972 | R | 13-X-1972 | 2 | D,Res 10,16 |
| Italy | 25-I-1979 | 25-XI-1981 | R | 24-I-1982 | 3 | D 5,12 |
| Japan | 12-III-1970 | 28-V-1970 | R | 27-VII-1970 | 3 | D 10,15 |
| Korea, Republic of | | 13-I-2000 | A | 1-VIII-2000 | 2 | D,Res 8,10,15 |
| Latvia | | 28-III-1995 | A | 1-XI-1995 | 4 | D 5,8,10,15 |
| Lithuania | | 2-VIII-2000 | A | 1-VI-2001 | 1 | D,Res 8,10,15,16 |
| Luxembourg | 27-X-1971 | 9-VII-1975 | R | 7-IX-1975 | 1 | D,Res 5,8,15,16 |
| Malta | | 24-II-2011 | A | 1-X-2011 | 1 | D 8,10 |
| Mexico | | 2-XI-1999 | A | 1-VI-2000 | 2 | D 5,6,7,8,10,12,15,16 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Monaco | | 1-III-2007 | A | 1-XI-2007 | [2] | D<br>8,10,15,16 |
| Montenegro | | 16-I-2012 | A | 1-IX-2012 | [2] | D<br>8,10,15 |
| Morocco | | 24-III-2011 | A | 1-XI-2011 | [1] | |
| Netherlands | 15-XI-1965 | 3-XI-1975 | R | 2-I-1976 | [1] | [5] | D<br>15,16 |
| Norway | 15-X-1968 | 2-VIII-1969 | R | 1-X-1969 | [3] | D,Res<br>8,10,15,16 |
| Poland | | 13-II-1996 | A | 1-IX-1996 | [4] | Res<br>8,10 |
| Portugal | 5-VII-1971 | 27-XII-1973 | R | 25-II-1974 | [2] | D<br>8,15,16 |
| Romania | | 21-VIII-2003 | A | 1-IV-2004 | [2] | D<br>8,16 |
| Russian Federation | | 1-V-2001 | A | 1-XII-2001 | [4] | D,Res<br>2,3,5,6,8,9,10,12,15 |
| Serbia | | 2-VII-2010 | A | 1-II-2011 | [2] | D<br>5,6,8,10,15,16 |
| Slovakia | | 15-III-1993 | Su | 1-I-1993 | [4] | D<br>8,10,15,29 |
| Slovenia | | 18-IX-2000 | A | 1-VI-2001 | [1] | D,Res<br>8,10,15,16 |
| Spain | 21-X-1976 | 4-VI-1987 | R | 3-VIII-1987 | [3] | D<br>15,16 |
| Sri Lanka | | 31-VIII-2000 | A | 1-VI-2001 | [3] | D<br>7,8,10,15 |
| Sweden | 4-II-1969 | 2-VIII-1969 | R | 1-X-1969 | [2] | D<br>5,10 |
| Switzerland | 21-V-1985 | 2-XI-1994 | R | 1-I-1995 | [3] | D,Res<br>1,5,8,10,15 |
| The former Yugoslav Republic of Macedonia | | 23-XII-2008 | A | 1-IX-2009 | [1] | D,Res<br>5,6,8,9,10,15,16,21 |
| Turkey | 11-VI-1968 | 28-II-1972 | R | 28-IV-1972 | [3] | Res,D<br>8,10,15,16 |
| Ukraine | | 1-II-2001 | A | 1-XII-2001 | [3] | D,Res<br>8,10,15,16 |
| United Kingdom of Great Britain | 10-XII- | 17-XI- | | 10-II- | | D |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| and Northern Ireland | 1965 | 1967 | R | 1969 | 14 | 4 | 2,5,10,15,16,18 |
| United States of America | 15-XI-1965 | 24-VIII-1967 | R | 10-II-1969 | 1 | 1 | D<br>2,15,16,29 |
| Venezuela | | 29-X-1993 | A | 1-VII-1994 | | 1 | D,Res<br>5,8,10,1516 |

## Type

**Czech Republic Type [Su]**

On 28 January 1993, the Czech Republic declared itself to be bound by the Convention – including reservations and declarations made by Czechoslovakia – as of January 1, 1993, date of the division of Czechoslavakia.

**France Type [R]**

*Translation by the Permanent Bureau:*
France has declared that, in the absence of a declaration to the contrary, the Service Convention applies to the entire territory of the French Republic (see in this respect the Circular from the French Ministry of Justice dated 1 February 2006, which is accessible at the following address: http://www.entraide-civile-internationale.justice.gouv.fr). Consequently, besides Metropolitan France and the Overseas Departments (French Guyana, Guadeloupe, Reunion, Martinique), the Convention applies to all of the other French overseas territories.

**Slovakia Type [Su]**

On 15 March 1993, the Slovak Republic declared itself to be bound by the Convention – including reservations and declarations made by Czechoslovakia as well as objections by Czechoslovakia in respect of reservations made by other treaty parties – as of January 1, 1993, date of the division of Czechoslovakia.

**United States of America Type [R]**

(Ratification for all the states of the United States, the District of Columbia, Guam, Puerto Rico and the Virgin Islands)

## Res/D/N

**Argentina: Declarations Reservations**
*Articles [5,10,15,16]*

**(Click here for the Central Authority designated by Argentina and other practical information)**

**Text of the declarations:**

"...

1- To Article 5, third paragraph: "The ARGENTINE REPUBLIC shall not accept documents to be served or transmitted unless they are accompanied by a translation into the Spanish language."

2- To Article 21, first paragraph, a): "The Argentine Government designates the Ministry of Foreign Affairs, International Trade and Worship as the Central Authority."

3- To Article 21, second paragraph, a): "The ARGENTINE REPUBLIC opposes to the use of methods of transmission pursuant to Article 10."

4- To Article 21, second paragraph b): "The Argentine Government accepts declarations pursuant to second paragraph of Article 15 and third paragraph of Article 16."

5- The ARGENTINE REPUBLIC rejects the claimed extension of application of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, adopted at The Hague on November 14, 1965, to the Malvinas, South Georgias and South Sandwich Islands as notified on May 20, 1970 by the UNITED KINGDOM OF GREAT BRITAIN AND NORTHERN IRELAND to the KINGDOM OF THE NETHERLANDS as Depositary of the Convention under the "Falkland Islands and dependencies" inaccurate denomination. Therefore, the ARGENTINE REPUBLIC similarly rejects the designation of the "Registrar of the Supreme Court" in the Malvinas Islands as application authority of this Convention which was made on that same opportunity, as well as any other act derived or that may be derived from this claimed territorial extension.

The General Assembly of the United Nations has recognized the existence of a dispute on the Malvinas, South Georgias and South Sandwich Islands sovereignty and has urged the ARGENTINE REPUBLIC and the UNITED KINGDOM OF GREAT BRITAIN AND NORTHERN IRELAND to hold negotiations in order to find, as soon as possible, a peaceful and definite solution to such dispute, with United Nations Secretary General's good offices mediation, who shall inform the General Assembly about the progress made (Resolutions 2065 (XX), 3160 (XXVIII), 31/49, 37/9, 38/12, 39/6, 40/21, 41/40, 42/19 and 43/25). The Special Committee on Decolonization having equally declared, has annually adopted a resolution which proclaims that to put and end to this colonial situation the negotiations must be resumed in order to peacefully and definitely solve this sovereignty dispute. The last of these resolutions was adopted on July 1, 1999.

The ARGENTINE REPUBLIC reaffirms its sovereignty on the Malvinas, South Georgias and South Sandwich Islands and its maritime surrounding areas which are an integral part of its national territory."

## Australia: Declarations
*Articles [5,8,9,10,15,16,17,29]*

*Article 5, paragraph 3 - translation requirements*
Documents forwarded for service under a method prescribed in Article 5(a) and (b) must be written in or translated into English. A translation is not required where an addressee voluntarily accepts service of documents in another language and the Central or Additional Authority to which it was sent has no objection. In this circumstance, the Letter of Request must confirm that the documents forwarded for service are duly certified.

*Article 8*
Australia does not object to service upon a national who is not from the requesting State.

*Article 9*
The requirements set out in Articles 3 and 5 regarding use of the model form and translation apply for service via indirect consular channels.

*Article 10, paragraph a - service by postal channels*
Australia does not object to service by postal channels, where it is permitted in the jurisdiction in which the

process is to be served. Documents forwarded via postal channels must be sent via registered mail to enable acknowledgement of receipt.

*Article 15, paragraph 2 - default judgments*
Australia accepts that a default judgment may be awarded against a defendant even if no evidence of service had been provided, if all of the conditions outlined in Article 15, paragraph 2, are satisfied.

*Article 16, paragraph 3 - relief from expiration of time for appeal*
An application for relief by a defendant from the effects of the expiration of the time to appeal will not be entertained if it is filed after the expiration of one year following the date of the judgment, except where it is determined otherwise by the Court seized by the matter.

*Article 17*
The requesting State must bear responsibility for costs incurred in the employment of a competent officer for the service of extrajudicial documents in Australia.

*Article 29 - external territories*
The Convention shall extend to all the States and Territories of Australia including external territories.

**Belgium: Declarations**
*Articles [8,15,16]*

**[(Click here for the Central Authority designated by Belgium and other practical information)](#)**

**Text of the declarations:**

(...)
3. Le Gouvernement belge s'oppose à l'usage sur le territoire belge de la faculté prévue à l'article 8, alinéa premier;
4. Le Gouvernement belge déclare se prévaloir de la disposition contenue dans l'article 15, alinéa 2;
5. Conformément à l'article 16, alinéa 3, le Gouvernement belge déclare que les demandes visées à l'article 16, alinéa 2, sont irrecevables si elles sont formées après l'expiration d'un délai d'un an à compter du prononcé de la décision;
6. Le Gouvernement belge croit devoir attirer l'attention sur le fait que toute demande de signification ou de notification fait en application de l'article 5, alinéa premier, lettres a) ou b), donne lieu à l'intervention d'un huissier de justice et que les frais qui en résultent doivent être remboursés conformément à l'article 12 de la Convention.

**Bulgaria: Declarations**
*Articles [5,8,10,15,16]*

**[(Click here for the Central Authority designated by Bulgaria and other practical information)](#)**

**Text of the declarations:**

Declaration on Article 5, paragraph 3
The Republic of Bulgaria requires the document, which is to be served, to be written in or accompanied by a translation into the Bulgarian language.

Declaration on Article 8, paragraph 2
The Republic of Bulgaria declares that within Bulgarian territory foreign diplomatic and consular agents may effect service of judicial and extrajudicial documents only upon nationals of the State which they represent.

Declaration on Article 10
The Republic of Bulgaria objects to the use of the channels of transmission for service mentioned in Article 10 of the Convention.

Declaration on Article 15, paragraph 2
The judge gives judgment provided that all certificates under Article 15, paragraph 2, are available.

Declaration on Article 16, paragraph 3
The Republic of Bulgaria will not accept applications for relief concerning judgments under paragraph 1 of this article after the expiration of one year following the date of the judgment.

**Canada: Declarations**
*Articles [15,16]*

Click here for the Central Authorities designated by Canada and other practical information.

Declarations made pursuant to Articles 15, paragraph 2, and 16, paragraph 3.

1. Stays of entry (Article 15, paragraph 2)

Canada declares that the judges may give judgment under the conditions stated in Article 15 of the Convention.

2. Relief from expiration of the period of time for appeal (Article 16, paragraph 3)

Canada declares that an application filed under Article 16 of the Convention will not be entertained if it is filed after the expiration of one year following the date of the judgment, except in exceptional cases determined by the rules of the Court seized of the matter.

**China, People's Republic of: Declarations Notifications**
*Articles [5,8,10,15,16]*

**(Click here for the Authorities designated for the People's Republic of China and the Special Administrative Regions of Hong Kong and Macao, and other practical information)**

**Text of the declarations:**

**People's Republic of China**

(Courtesy translation)
"(...) 2. to declare according to the second paragraph of Article 8 that the means of service stipulated in the first paragraph of that Article may be used within the territory of the People's Republic of China only when the document is to be served upon a national of the State in which the documents originate.
3. to oppose the service of documents in the territory of the People's Republic of China by the

methods provided by Article 10 of the Convention.

4. to declare in accordance with the second paragraph of Article 15 of the Convention that if all the conditions provided in that paragraph are fulfilled, the judge, notwithstanding the provisions of the first paragraph of that Article, may give judgment even if no certificate of service or delivery has been received.

5. to declare in accordance with the third paragraph of Article 16 of the Convention that the application for relief from the effects of the expiration of the time for appeal shall not be entertained except that it is filed within one year following the date of the judgment."

_____

**Special Administrative Region of Hong Kong (entry into force: 19 July 1970)**

The Convention had been extended to Hong Kong by the United Kingdom by Note dated 20 May 1970 (entry into force for Hong Kong: 19 July 1970), with the following declarations:

"*(a)* In accordance with Article 18 of the Convention the Colonial Secretary of Hong Kong* is designated as the Authority competent to receive requests for service in accordance with Article 2 of the Convention.

* "The Colonial Secretary of Hong Kong" has been re-designated as "the Chief Secretary of Hong Kong" (May 1984).

*(b)* The authority competent under Article 6 of the Convention to complete the Certificate of Service is the Registrar of the Supreme Court of Hong Kong.

*(c)* In accordance with the provisions of Article 9 of the Convention the Registrar of the Supreme Court of Hong Kong is designated as the receiver of process sent through consular channels.

*(d)* With reference to the provisions of paragraphs *(b)* and *(c)* of Article 10 of the Convention, documents sent for service through official channels will be accepted in Hong Kong only by the central or additional authority and only from judicial, consular or diplomatic officers of other Contracting States.

*(e)* The acceptance by the United Kingdom of the provisions of the second paragraph of Article 15 of the Convention shall equally apply to Hong Kong.

The authorities designated above will require all documents forwarded to them for service under the provisions of the Convention to be in duplicate and, pursuant to the third paragraph of Article 5 of the Convention, will require the documents to be written in, or translated into, the English language."

The Ministry of Foreign Affairs of the Kingdom of the Netherlands, depositary of the Convention, gave notice that on 16 June 1997 the Minister for Foreign Affairs of the Kingdom of the Netherlands received a Note dated 11 June 1997 from the Ambassador of the United Kingdom of Great Britain and Northern Ireland at The Hague and a Note dated 10 June 1997 from the Ambassador of the People's Republic of China at The Hague concerning Hong Kong.

The Note from the Ambassador of the United Kingdom of Great Britain and Northern Ireland reads as follows:

"Your Excellency,
I am instructed by Her Britannic Majesty's Principal Secretary of State for Foreign and Commonwealth Affairs to refer to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters done at The Hague on 15 November 1965 (hereinafter referred to as the Convention) which applies to Hong Kong at present.
I am also instructed to state that, in accordance with the Joint Declaration of the Government of the United Kingdom of Great Britain and Northern Ireland and the Government of the People's Republic of China on the Question of Hong Kong signed on 19 December 1984, the Government of the United Kingdom will restore Hong Kong to the People's Republic of China with effect from 1 July 1997. The Government of the United Kingdom will continue to have international responsibility for Hong Kong until that date. Therefore, from that date the Government of the United Kingdom will cease to be responsible for the international rights and obligations arising from the application of the Convention to Hong Kong.
I should be grateful if the contents of this Note could be placed formally on record and brought to the attention of the other Parties to the Convention. (...)
(signed Rosemary Spencer)

The Note from the Ambassador of the People's Republic of China reads as follows:

(Translation)
"Your Excellency,
In accordance with the Joint Declaration of the Government of the People's Republic of China and the Government of the United Kingdom of Great Britain and Northern Ireland on the Question of Hong Kong signed on 19 December 1984, the People's Republic of China will resume the exercise of sovereignty over Hong Kong with effect from 1 July 1997. Hong Kong will, with effect from that date, become a Special Administrative Region of the People's Republic of China and will enjoy a high degree of autonomy, except in foreign and defence affairs which are the responsibilities of the Central People's Government of the People's Republic of China.
In this connection, I am instructed by the Minister of Foreign Affairs of the People's Republic of China to make the following notification:
The Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters done on 15 November 1965 (hereinafter referred to as the "Convention"), by which the Government of the Kingdom of the Netherlands is designated as the depositary, to which the Government of the People's Republic of China deposited its instrument of accession on 3 May 1991, will apply to the Hong Kong Special Administrative Region with effect from 1 July 1997.
(...)
The Government of the People's Republic of China will assume responsibility for the international rights and obligations arising from the application of the Convention to the Hong Kong Special Administrative Region.
It would be appreciated if the contents of this Note could be placed formally on record and brought to the attention of the other Parties to the Convention. (...)
(signed Zhu Manli, Ambassador Extraordinary and Plenipotentiary of the People's Republic of

China to the Kingdom of the Netherlands)".

Declarations (articles 8 and 10):

1. In accordance with paragraph 2 of Article 8 of the Convention, it declares that the means of service referred to in paragraph 1 of this article may be used within the Hong Kong Special Administrative Region only when the document is to be served upon a national of the State in which the document originates.
2. (...)
3. (...)
4. With reference to the provisions of sub-paragraphs b and c of Article 10 of the Convention, documents for service through official channels will be accepted in the Hong Kong Special Administrative Region only by the Central Authority or other authority designated, and only from judicial, consular or diplomatic officers of other Contracting States.

_____

## Special Administrative Region of Macao (entry into force: 12 April 1999)

By a Note dated 9 February 1999, Portugal had extended the Convention to *Macao*.

On 7 October 1999, Portugal communicated the following to the depositary:

"1. In accordance with Article 18 of the Convention, the Ministério Público de Macao is designated as the competent authority in Macao to receive requests for service coming from other Contracting States and to proceed in conformity with the provisions of Articles 3 to 6.

The address of the Ministério Público de Macao is as follows:

Ministério Público de Macao
Praceta 25 de Abril
Macao
Phone: 326736
Fax: 326747

2. Court clerks (escrivães de direito) and deputy court clerks (escrivães adjuntos) from the Supreme Court of Justice (Tribunal Superior de Justiça) of Macao are entitled to complete in Macao the certificate provided for [in] Articles 6 and 9 of the Convention.

3. In accordance with the provisions of the second paragraph of Article 8 of the Convention, Portugal reiterates that it recognizes to the diplomatic or consular agents the right to forward documents, for the purpose of service, exclusively to the nationals of the State in which the documents originate.

4. The Ministério Público de Macao is also designated as the competent authority in Macao to receive documents forwarded through consular channels, in accordance with Article 9 of the Convention.

5. Portugal declares that the judges of the courts of Macao, notwithstanding the provisions of the first paragraph of Article 15 of the Convention, may give judgment on whether the conditions referred to in the second paragraph of the same article are fulfilled.

6. In accordance with the third paragraph of Article 16 of the Convention, Portugal declares that the applications referred to in the second paragraph of Article 16 will not be entertained if they are filed after the expiration of one year following the date of the judgment."

The Ambassador of Portugal at The Hague informed the Minister for Foreign Affairs of the Kingdom of the Netherlands by letter of 26 November 1999 of the following:

"Upon instructions from my Government and referring to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters concluded at The Hague on 15 November 1965 (hereinafter referred to as the Convention) which currently applies to Macao, I have the honour to inform Your Excellency of the following:
In accordance with the Joint Declaration of the Government of the Portuguese Republic and of the Government of the People's Republic of China on the question of Macao, signed in Beijing on 13 April 1987, the Government of the Portuguese Republic will remain internationally responsible for Macao until 19 December 1999, the People's Republic of China resuming from that date the exercise of sovereignty over Macao, with effect from 20 December 1999.
From 20 December 1999 the Portuguese Republic will cease to be responsible for the international rights and obligations arising from the application of the Convention in Macao. (…)"

The Ambassador of the People's Republic of China at The Hague informed the Minister for Foreign Affairs by letter of 10 December 1999 of the following:

(Translation)
" In accordance with the Joint Declaration of the Government of the People's Republic of China and the Government of the Republic of Portugal on the Question of Macao signed on 13 April 1987, the Government of the People's Republic of China will resume the exercise of sovereignty over Macao with effect from 20 December 1999. Macao will from that date become a Special Administrative Region of the People's Republic of China and will enjoy a high degree of autonomy, except in foreign and defence affairs which are the responsibilities of the Central People's Government of the People's Republic of China.
In this connection, I am instructed by the Minister of Foreign Affairs of the People's Republic of China to inform Your Excellency of the following:
The Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, concluded at The Hague on 15 November 1965 (hereinafter referred to as the Convention), to which the Government of the People's Republic of China deposited the instrument of accession on 3 May 1991, shall apply to the Macao Special Administrative Region with effect from 20 December 1999.
(...)
The Government of the People's Republic of China shall assume the responsibility for the international rights and obligations arising from the application of the Convention to the Macao Special Administrative Region. (...)".

Declarations (Articles 5, 8, 15 and 16)

1. (...)
2. In accordance with the second paragraph of Article 8 of the Convention, it declares that the means of service stipulated in the first paragraph of that article may be used within the Macao Special Administrative Region only when the document is to be served upon a national of the State in which the document originates.
3. In accordance with the second paragraph of Article 15 of the Convention, it declares that if all the conditions provided in that paragraph are fulfilled, the judge of the Macao Special Administrative Region, notwithstanding the provisions of the first paragraph of that article, may give judgment even if no certificate of service or delivery has been received.
4. In accordance with the third paragraph of Article 16 of the Convention, it declares that in the Macao Special Administrative Region, the application for relief from the effects of the expiration of the time for appeal shall not be entertained except that it is filed within one year following the date of the judgment.

Furthermore, the Government of the People's Republic of China made the following supplementary declaration:

"In accordance with paragraph 3 of Article 5 of the Convention, it declares that documents to be served in the Macao Special Administrative Region under the first paragraph of Article 5 shall be written in either Chinese or Portuguese, or be accompanied by a translation in either Chinese or Portuguese".

**Croatia: Reservations Declarations**
*Articles [5,6,8,9,10,15,16]*

Declaration in accordance with Article 5 of the Convention:
The Republic of Croatia declares that documents served pursuant to Article 5, paragraph 1, should be accompanied by a translation into the Croatian language.

Declaration in accordance with Article 6 of the Convention:
The Republic of Croatia declares that municipal courts according to residence, abode, and headquarters of the addressee of documents are competent for the completion of the certificate of reception of documents.

Declaration in accordance with Article 8 of the Convention:
The Republic of Croatia declares that is opposed to direct service of judicial documents upon persons within its territory through foreign diplomatic or consular agents, unless the document is to be served upon a national of the State in which the document originate.

Declaration in accordance with Article 9 of the Convention:
The Republic of Croatia declares that the documents served in accordance with Article 9 of the Convention are forwarded to the Ministry of Justice of the Republic of Croatia for the purpose of service to parties.

Declaration in accordance with Article 10 of the Convention:
The Republic of Croatia declares that it is opposed to the mode of service specified in Article 10 of the Convention.

Declaration in accordance with Article 15 of the Convention:
The Republic of Croatia declares that Croatian courts may give a judgement if all the conditions set out in paragraph 2 of Article 15 of the Convention are fulfilled.

Declaration in accordance with Article 16 of the Convention:
The Republic of Croatia declares that applications for relief set out in Article 16 of the Convention will not be entertained if they are filed after the expiration of a period of one year following the date on which the judgement was given.

**Cyprus: Declarations**
*Articles [8,10,15,16]*

[(Click here for the Central Authority designated by Cyprus and other practical information)](#)

**Text of the declarations:**

By Note dated 5 January 1984 the Government of Cyprus made the following declarations:

"(...)
(d) Articles 8 and 10
No opposition to the methods of transmission of documents provided by these articles.

(e) Article 15
Declaration that judgment may be given if all conditions laid down in paragraph 2 are fulfilled.

(f) Article 16
Declaration pursuant to paragraph 3 that the application will not be entertained if it is filed after the expiration of one year from the date of the judgment.

(...)

**Czech Republic: Declarations Reservations**
*Articles [8,10,15,29]*

[(Click here for the Central Authority designated by the Czech Republic and other practical information)](#)

**28-01-1993**
The Czech Republic maintains the declarations made by Czechoslovakia.

**Text of the declarations made by the former Czechoslovakia:**

(Translation)
– in accordance with Article 8 of the Convention, within the territory of the Socialist Republic of Czechoslovakia judicial documents may not be served directly through the diplomatic or consular agents of another Contracting State unless the document is to be served upon a national of the State in which the documents originate;
– in accordance with Article 10 of the Convention, within the territory of the Socialist Republic of Czechoslovakia judicial documents may not be served by another Contracting State through postal channels

nor through the judicial officers, officials or other competent persons;
– in accordance with Article 15, paragraph 2, of the Convention, Czechoslovakian judges may give judgment even if the conditions pursuant to Article 15, paragraph 1, have not been fulfilled;
– the provisions of Article 29 of the Convention concerning the extension of the Convention to territories for the international relations of which the Contracting States are responsible are at variance with the Declaration of the United Nations General Assembly on the Granting of Independence to Colonial Countries and Peoples of 14 December 1960, and for this reason the Socialist Republic of Czechoslovakia does not consider itself to be bound by these provisions.

By Note dated 31 March 1982 and received at the Ministry of Foreign Affairs on 1 April 1982, the Embassy of the Czechoslovak Socialist Republic communicated the following with regard to the above-cited declaration concerning Article 29 of the Convention:

"This declaration cannot be considered a reserve in view of the fact that it does not follow other purposes than a similar declaration made at the ratification of the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, though a different formulation was used.
By this declaration the Czechoslovak Socialist Republic expresses its disagreement of principle with the status of colonies and other dependent territories which is in contradiction with the Declaration of the United Nations General Assembly on the Granting of Independence to Colonial Countries and Peoples of December 14, 1960. The Czechoslovak Socialist Republic, however, has no intention to exclude the application of the Convention on the relations with the territories on which the use of the Convention has been extended in accordance with its Art. 29."

### Denmark: Declarations
*Articles [10,15,16]*

**[(Click here for the Central Authority designated by Denmark and other practical information)](#)**

**Text of the declarations:**

*(Translation)*
(...)
re Art. 10
Denmark is unable to recognize the method of effecting service set out in Art. 10, para. c.

re Art. 15
Denmark avails itself of the power, provided for in Art. 15, second paragraph, to declare that the judge may give judgment in a matter even if the provisions of Art. 15, first paragraph, are not fulfilled.

re Art. 16
Denmark avails itself of the power, provided for in Art. 16, third paragraph, to declare that an application will not be entertained if it is made after the expiration of a period of one year following the date of judgment.

The question of the re-hearing of a matter in which a person has been judged by default shall be decided in accordance with the rules of the code of procedure, Art. 373 and Art. 374, cf. Art. 434. According to these rules, any person against whom judgment is given by default in an action in first instance may apply for a re-hearing of the matter if he can prove that the default cannot be imputed to him. The application for a re-hearing should be filed as soon as possible and may not be submitted after the expiration of a period of one

year following the date of judgment.

**Egypt: Reservations**
*Articles [8,10]*

**(Click here for the Central Authority designated by Egypt and other practical information)**

**Text of the declaration:**

The Government of the United Arab Republic opposes the use of the methods of transmitting abroad the Judicial and Extra-Judicial Documents according to Articles 8 and 10 of the Convention.

**Estonia: Declarations**
*Articles [10,15,16]*

**(Click here for the Central Authority designated by Estonia and other practical information)**

**Text of the declarations:**

1 The Republic of Estonia is against the way of forwarding referred to in point c of Article 10;
2 on the basis of Article 15 the judge may give judgement under the said conditions;
3 on the basis of paragraph 3 of Article 16 for a period of three years.

**Finland: Declarations**
*Articles [2,9,10]*

**(Click here for the Central Authority designated by Finland and other practical information)**

**Text of the declarations:**

"1. The Ministry of Justice has been designated Central Authority, pursuant to the first paragraph of Article 2 of the Convention.
2. The Central Authority (the Ministry of Justice) is acting as the authority presupposed in Art. 9 of the Convention.
3. Finnish authorities are not obliged to assist in serving documents transmitted by using any of the methods referred to in sub-paragraphs (b) and (c) of Art. 10 of the Convention."

*Additional information re translation requirements (Article 5)*
A translation is not required; however, if the addressee does not accept a document made out in a foreign language, service can only be effected if the document is translated into one of the official languages of Finland, i.e. Finnish or Swedish, or if the addressee must be deemed to understand the foreign language. Accordingly, f.ex. companies with international business relations must be deemed to understand English, German or French.

**France: Declarations**
*Articles [8,15,16]*

**(Click here for the Central Authority designated by France and other practical information)**

**Text of the declarations:**

(...)
4) Le Gouvernement de la République française déclare s'opposer, ainsi qu'il est prévu à l'article 8, à la notification directe, par les soins des agents diplomatiques et consulaires des Etats contractants, des actes destinés à des personnes qui ne sont pas ressortissantes de ces Etats.
5) Le Gouvernement de la République française déclare que les dispositions du deuxième alinéa de l'article 15 reçoivent son agrément.

Il déclare, en outre, en se référant à l'article 16, alinéa 3, que la demande tendant au relevé de la forclusion résultant de l'expiration des délais de recours ne sera plus recevable si elle est présentée plus de douze mois après le prononcé de la décision.

N.B. France has declared that, in the absence of a declaration to the contrary, the Service Convention applies to the entire territory of the French Republic (see in this respect the Circular from the French Ministry of Justice dated 1 February 2006, which is accessible at the following address: http://www.entraide-civile-internationale.justice.gouv.fr). Consequently, besides Metropolitan France and the Overseas Departments (French Guyana, Guadeloupe, Reunion, Martinique), the Convention applies to all of the other French overseas territories. *(Translation by the Permanent Bureau)*

**Germany: Declarations**
*Articles [5,8,10,15,16]*

**(Click here for the Central Authority designated by Germany and other practical information)**

**Text of the declarations:**

(...)
The Central Authorities are empowered to have requests for service complied with directly by postal channels if the conditions for service in accordance with paragraph 1 (a) of Article 5 of the Convention have been fulfilled. In that case the competent Central Authority will hand over the document to the postal authorities for service. In all other cases the local court (Amtsgericht) in whose district the documents are to be served shall be competent to comply with requests for service. Service shall be effected by the registry of the local court.

Formal service (paragraph 1 of Article 5 of the Convention) shall be permissible only if the document to be served is written in, or translated into, the German language.

2. The Central Authority shall complete the certificate (paragraph 1 and 2 of Article 6 of the Convention) if it has itself arranged for the request for service to be complied with directly by postal channels; in all other cases this shall be done by the registry of the local court.

3. (...)

4. In accordance with paragraph 2 (a) of Article 21 of the Convention, the Government of the Federal Republic of Germany objects to the use of methods of transmission pursuant to Articles 8 and 10. Service through diplomatic or consular agents (Article 8 of the Convention) is therefore only permissible if the document is to be served upon a national of the State sending the document. Service pursuant to Article 10 of

the Convention shall not be effected."

By a Note dated 19 November 1992, the Federal Republic of Germany made the following declaration:

"1. Notwithstanding the provisions of the first paragraph of Article 15, a German judge may give judgment even if no certificate of service or delivery has been received, if all the following conditions are fulfilled:

– the document was transmitted by one of the methods provided for in this Convention,
– a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,
– no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.

2. An application for relief in accordance with Article 16 will not be entertained if it is filed after the expiration of one year following the termination of the time-limit which has not been observed."

### Greece: Declarations
*Articles [8,10,15]*

**(Click here for the Central Authority designated by Greece and other practical information)**

### Text of the declarations:

(Translation)
The judges of the Hellenic Republic may give judgment if all the conditions in Article 15, paragraph 2, letters (a), (b) and (c), of the Convention are fulfilled even if no certificate of service or delivery has been received.

Greece declares that formal service will be effected only if the document to be served is written in, or translated into, Greek.

Greece is opposed to the method of service provided in Article 8, unless the document to be served is addressed to a citizen of the requesting State.

Greece is opposed to the method of services provided in Article 10.

### Declaration of 24 July 2009

With respect to the declaration made by the former Yugoslav Republic of Macedonia relating to Article 5 of the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil or Commercial Matters of 1965, which was attached to its instrument of accession, Greece declares that all documents exchanged between Greece and the former Yugoslav Republic of Macedonia pursuant to this Convention shall continue to be written in or translated into the French language following the practice established in accordance with the 1959 Convention between Greece and the former Socialist Federal Republic of Yugoslavia concerning Mutual Legal Relations, which remains in force between Greece and the former Yugoslav Republic of Macedonia by virtue of article 12 of the Interim Accord of 13 September 1995. Furthermore, the provisions of the Memorandum on "Practical Measures" related to the above Interim Accord concerning the official correspondence between the two countries shall continue to apply between them. Subject to this condition, Greece will not exercise its right to object to the accession by the former Yugoslav Republic of Macedonia to the 1965 Convention.

**Hungary: Declarations**
*Articles [2,5,6,8,9,10,15,16]*

**[(Click here for the Central Authority designated by Hungary and other practical information)](#)**

**Text of the declarations:**

To Article 2
In the Republic of Hungary the Ministry of Justice is designated as the Central Authority in accordance with Article 2 of the Convention.

To Article 5
The service methods prescribed in Paragraph 1 of Article 5 of the Convention shall only be applied in the Republic of Hungary in case the document to be served is accompanied by an official translation into the Hungarian language.

To Article 6
The certificate of service prescribed in Article 6 of the Convention is completed in the Republic of Hungary by the court that has performed such service.

To Article 8
The Republic of Hungary objects to the direct service of documents by foreign diplomatic or consular agents on the territory of the Republic of Hungary unless the addressee is a national of the sending state of the diplomatic or consular agent.

To Article 9
In accordance with Article 9 of the Convention in the Republic of Hungary the Ministry of Justice receives the documents to be served sent through consular channels.

To Article 10
The Republic of Hungary objects to the use of the service methods prescribed in Article 10 of the Convention.

To Article 15
The Republic of Hungary declares that the Hungarian courts may give judgement if all the conditions set out in Paragraph 2 of Article 15 of the Convention are fulfilled.

To Article 16
The Republic of Hungary declares that applications for relief set out in Article 16 of the Convention will not be entertained if it is filed more than one year after the date of judgement.

**Iceland: Declarations Reservations**
*Articles [10,15,16]*

Iceland objects to the use of such methods of service of documents on its territory as mentioned in paragraphs (b) and (c) of Article 10 of the Convention.
Iceland declares that a judge, notwithstanding the provisions of paragraph 1 of Article 15, may give judgment even if no certificate of service or delivery has been received, if all the conditions provided for in paragraph 2

of Article 15 have been fulfilled.

In accordance with Article 16, paragraph 3, of the Convention, Iceland declares that an application for relief will not be entertained if it is filed after the expiration of a period of one year following the date of the judgment.

## India: Declarations Reservations
*Articles [8,10,15,16]*

All requests for service of documents should be in English language or accompanied by an English translation;

The service of judicial documents through diplomatic or consular channels will be limited to the nationals of the State in which the documents originate;

India is opposed to the methods of service provided in Article 10;

In terms of Article 15, Indian courts may give judgment if all conditions specified in the second paragraph of that Article are fulfilled; and

For purposes of Article 16, an application for relief will not be entertained if filed after the expiration of one year following the date of the judgment.

## Ireland: Declarations Reservations
*Articles [10,15]*

**(Click here for the Central Authority designated by Ireland and other practical information)**

**Text of the declarations:**

Article 15
Pursuant to the second paragraph of Article 15 a Judge in Ireland may give judgment even if no certificate of service or delivery has been received, if the conditions set out in the second paragraph of Article 15 of the Convention are fulfilled.

Article 10
In accordance with the provision in Article 10 of the Convention the Government of Ireland objects to

(i) the freedom under Article 10(b) of judicial officers, officials or other competent persons of the State of origin to effect service in Ireland of judicial documents directly through judicial officers, officials or other competent persons and

(ii) the freedom under Article 10(c) of any person interested in a judicial proceeding to effect service in Ireland of judicial documents directly through judicial officers, officials or other competent persons,

but this is not intended to preclude any person in another Contracting State who is interested in a judicial proceeding (including his lawyer) from effecting service in Ireland directly through a solicitor in Ireland.

## Israel: Declarations Reservations
*Articles [10,16]*

**(Click here for the Central Authority designated by Israel and other practical information)**

**Text of the declarations:**

(...)

b) The State of Israel, in its quality as State of destination, will, in what concerns Article 10, paragraphs b) and c), of the Convention, effect the service of judicial documents only through the Directorate of Courts, and only where an application for such service emanates from a judicial authority or from the diplomatic or consular representation of a Contracting State;

c) An application to relieve a defendant from the effects of the expiration of the time of appeal from a judgment within the meaning of Article 16 of the Convention will be entertained only if filed within one year from the date of the judgment in question."

**Italy: Declarations**
*Articles [5,12]*

[**(Click here for the Central Authority designated by Italy and other practical information)**](#)

**Text of the declarations:**

(...)

d) the costs proceeding from each request for service in accordance with Article 5, first paragraph, under a and b, which requires the employment of a bailiff, have to be paid in advance in the amount of 6,000 lira, subject to adjustment at the time of return of the document served.

However, the costs in relation to the document served pursuant to Article 12, paragraph 2, of the Convention, can be paid after its return to the extent specifically fixed by the bailiff. The Italian State shall not require any advance or repayment of costs for service of documents requested by the Contracting States in so far as those States for their parts shall not require the payment or repayment of costs for documents originated from Italy.

**Japan: Declarations**
*Articles [10,15]*

[**(Click here for the Central Authority designated by Japan and other practical information)**](#)

**Text of the declarations:**

(...)

(4) It is declared that the Government of Japan objects to the use of the methods of service referred to in sub-paragraphs (b) and (c) of Article 10.

(5) It is declared that Japanese courts may give judgment if all the conditions specified in the second paragraph of Article 15 are fulfilled.

**Korea, Republic of: Declarations Reservations**
*Articles [8,10,15]*

[**(Click here for the Central Authority designated by the Republic of Korea and other practical information)**](#)

**Text of the declarations:**

1. Pursuant to Article 8, the Republic of Korea objects to service of judicial documents directly through diplomatic or consular agents upon persons in its territory, unless the document is to be served upon a national of the State in which the documents originate.

2. Pursuant to Article 10, the Republic of Korea objects to the following:

a) the freedom to send judicial documents, by postal channels, directly to persons abroad,
b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officials or other competent persons of the State of destination.
c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

3. Pursuant to Article 15, paragraph 2, the judge of the Republic of Korea may give judgment even if no certificate of service or delivery has been received if all the following conditions are fulfilled:

a) the document was transmitted by one of the methods provided for in this Convention,
b) a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,
c) no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.

**Latvia: Declarations**
*Articles [5,8,10,15]*

In accordance with paragraph 2 and paragraph 3 of Article 5 of the Convention the Ministry of Justice of the Republic of Latvia as the Central Authority requires the document to be translated into the official language or into the language understandable to the addressee if the addressee has refused to accept the document in the cases provided for in the Civil Procedure Law of the Republic of Latvia.

In accordance with paragraph 2 of Article 8 of the Convention the Republic of Latvia declares that it is opposed to the service of documents under Article 8 of the Convention within its territory, unless the document is to be served upon a national of the State in which the documents originate.

In accordance with Article 10 of the Convention the Republic of Latvia does not object to the freedom to send a judicial document, by postal channels, directly to an addressee within the Republic of Latvia (paragraph (a) of Article 10) if the document to be served is in Latvian or it is accompanied by translation into Latvian and it is sent to the addressee using a registered postal letter (with an acknowledgement of receipt).

In accordance with Article 10 of the Convention the Republic of Latvia objects to the channels of transmission specified in paragraphs (b) and (c) of Article 10.

In accordance with paragraph 2 of Article 15 of the Convention court may render a judgment as stated by the Civil Procedure Law of the Republic of Latvia even if no certificate of service or delivery has been received, if all the conditions set out in the afore mentioned paragraph are fulfilled.

**Lithuania: Declarations Reservations**

*Articles [8,10,15,16]*

**[(Click here for the Central Authority designated by Lithuania and other practical information)](#)**

**Text of the declarations:**

(...)
And whereas it is provided in Article 8 of the said Convention, the Republic of Lithuania declares that it opposes to the ways of service of documents provided in this Article, unless the documents are to be served upon a national of the State in which the documents originate; And whereas it is provided in Article 10 of the said Convention, the Republic of Lithuania declares that it is opposed to the ways of service of documents provided in this Article;
And whereas it is provided in paragraph 2 of Article 15 of the said Convention, the Republic of Lithuania declares that the judge of the Republic of Lithuania may give judgment even if no certificate of service or delivery has been received, if all conditions of paragraph 2 of Article 15 are fulfilled;
And whereas it is provided in paragraph 2 of Article 16 of the said Convention, the Republic of Lithuania declares that an application for relief will not be entertained if it is filed after the expiration of one year following the date of the final judgment; (...)

**Luxembourg: Declarations Reservations**
*Articles [5,8,15,16]*

**[(Click here for the Central Authority designated by Luxembourg and other practical information)](#)**

**Text of the declarations:**

(...)
2. In accordance with Article 8, the Luxembourg Government is opposed to diplomatic and consular agents directly serving within its territory judicial documents on persons other than nationals of their own country.

(3. In accordance with Article 10, the Luxembourg Government is opposed to judicial documents being sent through postal channels to persons residing within its territory *.

* Luxembourg communicated the withdrawal of this declaration by a Note dated 2 June 1978).

4. When foreign judicial documents are served, in connection with Articles 5 a) and 10 b) and c), through the intermediary of a Luxembourg official, they must be drawn up in French or German or accompanied by a translation into one of those languages.

5. The Luxembourg Government declares that notwithstanding the provisions of Article 15, para. 1, of the Convention, its judges can enter judgment if the conditions set out in para. 2 of the said Article are fulfilled.

6. In accordance with Article 16, para. 3, of the Convention, the Luxembourg Government declares that the applications referred to in para. 2 of the said Article will not be entertained if they are filed after the expiration of a period of one year following the date of the judgment.

**Malta: Declarations**
*Articles [8,10]*

Pursuant to Article 8 of the Convention, the Government of Malta declares, that it is opposed to service of documents within the territory of Malta effected directly through the diplomatic or consular agents of other Contracting States, in accordance with the first paragraph of the said Article 8, other than upon the national of the Contracting State effecting such service.

Pursuant to Article 10 of the Convention, the Government of Malta declares, that it is opposed to the use by other Contracting States of any of the methods of transmission and service of documents mentioned in the said Article 10 within its territory.

**Mexico: Declarations**
*Articles [5,6,7,8,10,12,15,16]*

[(Click here for the Central Authority designated by Mexico and other practical information)](#)

**Declaration of May 2011:**

1.  The Government of the United Mexican States modifies the declarations made at the moment of acceding to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, done at The Hague on 15 November 1965, to read as follows:

I. In relation to Article 2, the Government of Mexico appoints the Directorate-General for Legal Affairs of the Ministry of Foreign Affairs as the Central Authority to receive requests for service of process of judicial and extrajudicial documents from other Contracting States who will forward them to the competent judicial authority for service.

II.  In relation to Article 5, where the judicial or extrajudicial documents written in a language other than Spanish are to be served in Mexican territory, they must be accompanied by the corresponding Spanish translation.

III.  In relation to Article 6, the competent judicial authority handling the request for service will also be responsible for issuing the certificate concerning the service of the document in accordance with the model form. The Central Authority will only validate the certificate.

IV.  In relation to Article 7, second paragraph, it will be much appreciated if the blanks of the forms could be filled in Spanish.

V.  In relation to Article 8, the Contracting States shall not be able to serve directly, nor perform the service process of judicial documents through its diplomatic or consular agencies in Mexican territory, unless the document is to be served upon a national of the State wherein the documents originate, provided that such procedure does not contravene the ordre public or violate constitutional rights.

VI.  In relation to Article 12, second paragraph, the costs incurred by serving judicial or extrajudicial documents will be covered by the applicant.

VII.  In relation to Article 15, second paragraph, the Government of Mexico does not recognize the power of the judicial authority to give judgment, where the defendant does not appear and there is no communication evidencing that the document was served or that documents originating outside the country were indeed delivered, as referred in to sub-paragraphs a) and b) of the first paragraph.

VIII.  In relation to Article 16, third paragraph, the Government of Mexico declares that such an application shall not be entertained if it is filled later than a year following the date of the judgment, or a longer period which the judge may deem reasonable. The Government of Mexico shall understand that, in cases in which sentence has been passed without the defendant having been duly served, the annulment of the proceedings shall be established under the provisions of the applicable legislation.

2.  In accordance with Article 21, second paragraph, subparagraph a), Mexico declares that it is opposed to the use in its territory of the methods of transmission provided for in Article 10.

**Declaration of 24 January 2002:**
(...) besides English and French, request forms addressed to the Mexican Central Authority should be filled in Spanish, according to Article 5 of the Convention.

**Declarations made at the moment of accession (1999):**
*(Courtesy translation)*
II. In relation to Article 5, when the judicial and extrajudicial documents to be served in Mexican territory are written in a language other than Spanish, they must be accompanied by the corresponding translation.

IV. In relation to Article 8, the contracting States shall not be able to effect service of judicial documents directly through its diplomatic or consular agencies in Mexican territory, unless the document is to be served upon a national of the State in which the documents originate and provided that such a procedure does not contravene public law or violate individual guarantees.

V. In relation to Article 10, the United Mexican States are opposed to the direct service of documents through diplomatic or consular agents to persons in Mexican territory according to the procedures described in sub-paragraphs a), b) and c), unless the Judicial Authority exceptionally grants the simplification different from the national regulations and provided that such a procedure does not contravene public law or violate individual guarantees. The request must contain the description of the formalities whose application is required to effect service of the document.

VI. In relation to the first paragraph of Article 12, the costs occasioned by serving judicial or extrajudicial documents will be covered by the applicant, unless the State in which the documents originate does not demand payment for those services from Mexico.

VII. In relation to Article 15, second paragraph, the Government of Mexico does not recognize the faculty of the Judicial Authority to give judgement when the defendant has not appeared and there is no communication establishing that the document was served, or that documents originating outside the country were indeed delivered, according to sub-paragraphs a) and b) of the first paragraph.

VIII. In relation to Article 16, third paragraph, the Government of Mexico declares that such an application will not be admitted if it is filed later than a year following the date of the decision, or a longer period which the judge may deem reasonable.
The Government of Mexico will understand that, in cases in which sentence has been passed without the defendant having been duly summoned, the nullity of the proceedings will be established under the provisions of the applicable legislation.

**Monaco: Declarations**
*Articles [8,10,15,16]*

*Translation*
1. The Principality of Monaco declares, as provided in article 8, that it is opposed to the service of judicial documents directly through the diplomatic or consular agents of the contracting States upon persons who are not nationals of these States.
2. The Principality of Monaco declares that it objects to the exercise of the freedom described in article 10, paragraph 1 (a).
3. The Principality of Monaco declares that it approves the dispositions laid down in article 15, paragraph 2.
4. With regard to article 16, paragraph 3, the Principality of Monaco declares that an application to relieve a defendant who has not appeared from the effects of the expiration of the time for appeal will no longer be entertained if it is filed more than twelve months after the date of the judgment.

**Montenegro: Declarations**
*Articles [8,10,15]*

[...]
b) Montenegro is opposed to effect service directly through foreign diplomatic or consular agents in accordance with Article 8 of the Convention, unless the document is to be served upon a national of the State in which the documents originate;
c) Montenegro is opposed to methods of transmission pursuant to Article 10 of the Convention;
d) Courts in Montenegro can give the judgment if conditions pursuant to the second paragraph of Article 15 are fulfilled;
e) the application (*restitutio in integrum*) will not be entertained after one year following the date of the judgment;
[...].

**Netherlands: Declarations**
*Articles [15,16]*

**[(Click here for the Central Authority designated by the Netherlands and other practical information)](#)**

**Text of the declarations:**

(...)
5. Notwithstanding the provisions of Article 15, paragraph 1, of the Convention, the Netherlands Court may give judgment, even if no certificate of service or delivery has been received, if all the following conditions are fulfilled:

a) the document was transmitted by one of the methods provided for in this Convention;
b) a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document;
c) no certificate, either of service or of delivery, has been received even though every reasonable effort has been made to obtain it through the competent authorities.

6. An application for relief from the effects of the expiration of the time for appeal as provided for in Article 16 is only admissible if it is submitted within a year, to be calculated from the date on which the judgment is given.

**Norway: Declarations Reservations**

*Articles [8,10,15,16]*

**[(Click here for the Central Authority designated by Norway and other practical information)](#)**

**Text of the declarations:**

(...)
4. The Government of Norway is opposed to the use of such methods of service or transmission of documents on its territory as mentioned in Articles 8 and 10 of the Convention.

5. Norwegian courts may give judgment when all the conditions specified in the second paragraph of Article 15 are fulfilled.

6. In accordance with the third paragraph of Article 16, application for relief according to Article 16 will not be entertained if they are delivered to the competent Norwegian authorities after the expiration of three years following the date of the judgment.

**Poland: Reservations**
*Articles [8,10]*

**[(Click here for the Central Authority designated by Poland and other practical information)](#)**

**Text of the declaration:**

*(Translation)*
The Republic of Poland has decided to join the Convention, declaring that it is opposed to the modes of service specified in Articles 8 and 10 within its territory.

**Portugal: Declarations**
*Articles [8,15,16]*

**[(Click here for the Central Authority designated by Portugal and other practical information)](#)**

**Text of the declarations:**

*(Translation)*
(...)
In accordance with Article 8, paragraph 2, of the Convention, the Portuguese government grants diplomatic and consular agents the power to serve documents on their own nationals only.

The Portuguese Government declares that, notwithstanding the provisions of the first paragraph of Article 15 of the Convention, its judges may give judgment if the conditions listed in paragraph 2 of the said Article are fulfilled.

In accordance with Article 16, paragraph 3, of the Convention, the Portuguese Government states that the applications referred to in Article 16, paragraph 2, will not be considered if they are made after the expiration of a period of one year from the date of the judgment.

**Romania: Declarations**

*Articles [8,16]*

**(Click here for the Central Authority designated by Romania and other practical information)**

**Text of the declarations:**

(...)
3. In accordance with Article 8, paragraph 2, of the Convention, Romania declares that the foreign diplomatic and consular agents can effect service of judicial or extrajudicial documents within the territory of Romania, exclusively upon nationals of the state they represent.

4. In accordance with Article 16, paragraph 3, of the Convention, Romania shall not entertain the application pursuant to Article 16, paragraph 2, if these are filed after the expiration of a period of one year following the date of the judgment."

**Russian Federation: Declarations Reservations**
*Articles [2,3,5,6,8,9,10,12,15]*

**(Click here for the Central Authority designated by the Russian Federation and other practical information)**

**Text of the declarations** (click here for the original text of the declarations to the Convention made by the Russian Federation)**:**

"In conformity with Article 21 of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters of 15 November 1965 (hereinafter referred to as the Convention) the Russian Federation thus informs the Ministry of Foreign Affairs of the Kingdom of Netherlands of the following.

I. The Ministry of Justice of the Russian Federation is designated as the Central Authority for the purposes of Article 2 of the Convention, as well as the authority competent to receive documents transmitted by consular channels, pursuant to Article 9 of the Convention.

Contact details: click here.

II. The following authorities are competent to forward requests in accordance with Article 3 of the Convention:
- Federal courts (the Constitution Court of the Russian Federation; the Supreme Court of the Russian Federation; the supreme courts of Republics, the courts of Krai (Territory) and Oblast (Region), the courts of cities of federal importance (Moscow and St. Petersburg), the courts of Autonomous Oblast and Autonomous Okrug, regional courts, military and specialized courts, which form the system of federal courts of common jurisdiction; The Higher Arbitration Court of the Russian Federation, federal arbitration courts of Okrug (arbitration cassation courts), arbitration appellate courts, arbitration courts of the subjects of the Russian Federation, which form the system of federal arbitration courts), constitutional (charter) courts and Justices of the Peace of the subjects of the Russian Federation;
- Federal bodies of executive power and bodies of executive power of the subjects of the Russian Federation;
- The Procurator's Office of the Russian Federation;
- Civilian registry offices;

- Notaries and other officials authorised to perform notary functions;
- Guardianship and trusteeship bodies;
- Members of advocacy.

III. Pursuant to the third paragraph of Article 5 of the Convention documents to be served within the territory of the Russian Federation shall only be accepted if they have been written in, or translated into, the Russian language. Forms of the request for service, the certificate of service, and the document summary (with standard terms translated into Russian) are attached. Filling the blanks in Russian is most appreciated.

IV. It is highly desirable that documents intended for service upon the Russian Federation, the President of the Russian Federation, the Government of the Russian Federation, the Ministry of Foreign Affairs of the Russian Federation are transmitted through diplomatic channels, i.e. by Notes Verbales of diplomatic missions of foreign States accredited in the Russian Federation.

V. Pursuant to Article 8 of the Convention, diplomatic and consular agents of foreign States are not permitted to effect service of documents within the territory of the Russian Federation, unless the document is to be served upon a national of the State in which the documents originate.

VI. Service of documents by methods listed in Article 10 of the Convention is not permitted in the Russian Federation.

VII. Certificates of service provided for by Article 6 of the Convention are completed and countersigned by the courts of the Russian Federation which directly execute requests for service of documents.

VIII. The Russian Federation assumes that in accordance with Article 12 of the Convention the service of judicial documents coming from a Contracting State shall not give rise to any payment or reimbursement of taxes or costs for the services rendered by the State addressed. Collection of such costs (with the exception of those provided for by subparagraphs a) and b) of the second paragraph of Article 12) by any Contracting State shall be viewed by the Russian Federation as refusal to uphold the Convention in relation to the Russian Federation, and, consequently, the Russian Federation shall not apply the Convention in relation to this Contracting State.

IX. In accordance with the legislation of the Russian Federation the courts of the Russian Federation may give judgments pursuant to the second paragraph of Article 15 of the Convention."

**Serbia: Declarations**
*Articles [5,6,8,10,15,16]*

In accordance with Article 21 of the Convention, Republic of Serbia declares:
a) Way of service prescribed by paragraph 1 of the Article 5 of the Convention will be applied in the Republic of Serbia if the document(s) for which its service is requested is accompanied with official translation into Serbian.
b) Receipt on delivery prescribed by Article 6 of the Convention in the Republic of Serbia makes the Competent Court which is also competent for service of document(s).
c) Republic of Serbia is against directly document service on its territory performed by foreign diplomatic or consular Representatives in accordance with Article 8 of the Convention, except if the Recipient is Citizen of diplomatic or consular Representative's Country.
d) Republic of Serbia is against the way of service (delivery) prescribed in Article 10 a) and c) of the

Convention.
e) Republic of Serbia declares that all Courts in the Republic of Serbia can pronounce verdicts if all conditions are fulfilled in accordance with paragraph 2 of the Article 15 of the Convention.
f) Republic of Serbia declares that the Request for return to previous state prescribed in Article 16 of the Convention will be rejected as unallowed if is submitted after expiration of one year from the day of pronounce of verdict.

**Slovakia: Declarations**
*Articles [8,10,15,29]*

**[(Click here for the Central Authority designated by Slovakia and other practical information)](#)**

**Text of the declarations (made by the former Czechoslovakia):**

(Translation)
– in accordance with Article 8 of the Convention, within the territory of the Socialist Republic of Czechoslovakia judicial documents may not be served directly through the diplomatic or consular agents of another Contracting State unless the document is to be served upon a national of the State in which the documents originate;

– in accordance with Article 10 of the Convention, within the territory of the Socialist Republic of Czechoslovakia judicial documents may not be served by another Contracting State through postal channels nor through the judicial officers, officials or other competent persons;

– in accordance with Article 15, paragraph 2, of the Convention, Czechoslovakian judges may give judgment even if the conditions pursuant to Article 15, paragraph 1, have not been fulfilled;

– the provisions of Article 29 of the Convention concerning the extension of the Convention to territories for the international relations of which the Contracting States are responsible are at variance with the Declaration of the United Nations General Assembly on the Granting of Independence to Colonial Countries and Peoples of 14 December 1960, and for this reason the Socialist Republic of Czechoslovakia does not consider itself to be bound by these provisions.

By Note dated 31 March 1982 and received at the Ministry of Foreign Affairs on 1 April 1982, the Embassy of the Czechoslovak Socialist Republic communicated the following with regard to the above-cited declaration concerning Article 29 of the Convention:

"This declaration cannot be considered a reserve in view of the fact that it does not follow other purposes than a similar declaration made at the ratification of the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, though a different formulation was used.
By this declaration the Czechoslovak Socialist Republic expresses its disagreement of principle with the status of colonies and other dependent territories which is in contradiction with the Declaration of the United Nations General Assembly on the Granting of Independence to Colonial Countries and Peoples of December 14, 1960. The Czechoslovak Socialist Republic, however, has no intention to exclude the application of the Convention on the relations with the territories on which the use of the Convention has been extended in accordance with its Art. 29.

**Slovenia: Declarations Reservations**

*Articles [8,10,15,16]*

**18 December 2012**

In accordance with Article 8, paragraph 2, of the Convention, the Republic of Slovenia declares that diplomatic and consular agents of foreign States are not permitted to effect the service of documents within the territory of Slovenia unless the document is to be served upon a national of the State in which the documents originate.

In accordance with Article 10 of the Convention, the Republic of Slovenia declares that the service of documents pursuant to Article 10, item a), is only permitted if judicial documents are sent to the addressee by registered letter with acknowledgement of receipt and the documents are written in, or accompanied by, a translation into the Slovene language.

In accordance with Article 10 of the Convention, the Republic of Slovenia objects to the use of the methods of transmission pursuant to Article 10, items b) and c).

In accordance with Article 15, paragraph 2, of the Convention, the Republic of Slovenia declares that notwithstanding the provisions of Article 15, paragraph 1, a Slovenian judge may give judgment even if no certificate of service or delivery has been received, if all conditions under Article 15, paragraph 2, of the Convention have been met.

In accordance with Article 16, paragraph 3, of the Convention, the Republic of Slovenia declares that applications for relief as set out in Article 16 of the Convention will not be entertained if filed more than one year following the date of judgment.

**Spain: Declarations**
*Articles [15,16]*

**(Click here for the Central Authority designated by Spain and other practical information)**

**Text of the declarations:**

1) El Estado español declara que sus Jueces, no obstante las disposiciones del párrafo 15, podrán proveer a pesar de no haber recibido notificación alguna acreditativa de la notificación o de la remisión de documentos si se dan los requisitos previstos en el citado artícula 15, párrafo 2.

2) El Estado español declara que el plazo de preclusión a que se refiere el artículo 16 es de dieciséis meses a computar desde la fecha de la resolución.

(Translation)
1) The Spanish State declares that its judges, notwithstanding the provisions of Article 15, may give judgment even if no certificate of service or delivery of documents has been received, if all the conditions enumerated in the said Article 15, paragraph 2, are fulfilled.

2) The Spanish State declares that the time of expiration, referred to in Article 16, is sixteen months from the date of the judgment.

**Sri Lanka: Declarations**

*Articles [7,8,10,15]*

**[(Click here for the Central Authority designated by Sri Lanka and other practical information)](#)**

**Text of the declarations:**

(...)
c) For purposes of Article 7, the documents should be in the English language.
d) For purposes of Article 8, the service of judicial documents through diplomatic or consular channels should be limited only in respect of the nationals of the State in which the documents originate.
(...)
f) For purposes of Article 10, Sri Lanka has no objection to the procedure set out in paragraph (b) thereof. However it does not agree to the procedure set out in paragraphs (a) and (c).
g) In terms of Article 15, Sri Lanka wishes to declare that the Judge may proceed to give judgement even if no certificate of service or delivery has been received, provided the conditions set out in Article 15 are fulfilled.

**Sweden: Declarations**
*Articles [5,10]*

**[(Click here for the Central Authority designated by Sweden and other practical information)](#)**

**Text of the declarations:**

(...)
c) Swedish authorities are not obliged to assist in serving documents transmitted by using any of the methods referred to in sub-paragraphs (b) and (c) of Art. 10.

By virtue of the third paragraph of Art. 5 of the Convention the Central Authority requires that any document to be served under the first paragraph of the same article must be written in or translated into Swedish.

**Switzerland: Declarations Reservations**
*Articles [1,5,8,10,15]*

**[(Click here for the Central Authority designated by Switzerland and other practical information)](#)**

**Text of the declarations:**

*(Translation)*
Re Article 1
1. With regard to Article 1, Switzerland takes the view that the Convention applies exclusively to the Contracting States. In particular, it believes that documents which are effectively addressed to a person resident abroad cannot be served on a legal entity who is not authorized to receive them in the country in which they were drawn up without derogating from Articles 1 and 15, first paragraph, of the Convention.

(...)
Re Article 5, third paragraph
3. Switzerland declares that in cases where the addressee does not voluntarily accept a document, it cannot officially be served on him or her in accordance with Article 5, first paragraph, unless it is in the language of

the authority addressed, i.e. in German, French or Italian, or accompanied by a translation into one of these languages, depending on the part of Switzerland in which the document is to be served (cf. annex).

(...)
Re Articles 8 and 10
5. In accordance with Article 21, second paragraph (a), Switzerland declares that it is opposed to the use in its territory of the methods of transmission provided for in Articles 8 and 10.
(...)

**The former Yugoslav Republic of Macedonia: Declarations Reservations**
*Articles [5,6,8,9,10,15,16,21]*

The Republic of Macedonia declares that all documents which are served pursuant to Article 5, paragraph 1, of the Convention should be written in or translated into, the Macedonian language according to the Article 7 of the Constitution of the Republic of Macedonia dated 17 November 1991.*
In accordance with Article 6 of the Convention, the Republic of Macedonia declares that the courts of first instance in the Republic of Macedonia shall be competent to complete the certificate in the form of the model annexed to this Convention.
In accordance with Article 15 of the Convention, the Republic of Macedonia declares that courts in the Republic of Macedonia may give judgment if all the conditions set out in paragraph 2 of Article 15 of the Convention are fulfilled.
In accordance with Article 16, paragraph 3, of the Convention the Republic of Macedonia declares that an application for relief set out in Article 16 of the Convention will not be entertained if it is filed after the expiration of a period of one year following the date when the judgement was given.
In accordance with paragraph 2(a) of Article 21 of the Convention, the Republic of Macedonia objects to the use of methods of service pursuant to Article 8 and 10.
In accordance with Article 8, paragraph 2, of the Convention, within the territory of the Republic of Macedonia judicial documents may not be served directly through the diplomatic or consular agents of another Contracting State unless the document is to be served upon a national of the State in which the documents originate.
The Republic of Macedonia objects to the use of the service methods prescribed in Article 10 of the Convention.
The Republic of Macedonia declares that the documents served in accordance with Article 9 of the Convention are forwarded to the Ministry of Justice of the Republic of Macedonia for the purpose of service to the parties.

_____

* See also the [declaration made by Greece](#) on 27 July 2009.

**Turkey: Reservations Declarations**
*Articles [8,10,15,16]*

**(Click here for the Central Authority designated by Turkey and other practical information)**

**Text of the declarations:**

(...)

4. Le Gouvernement de la République de Turquie reconnaît aux agents diplomatiques ou consulaires la faculté de faire des significations ou des notifications, conformément à l'article 8 de la Convention seulement à ses propres ressortissants.

5. Le Gouvernement de la République de Turquie déclare s'opposer à l'utilisation des méthodes de signification et de notification énumérées à l'article 10 de la Convention.

6. Le Gouvernement de la République de Turquie déclare que, nonobstant les dispositions de l'alinéa premier de l'article 15, si les conditions visées à l'alinéa 2 dudit article sont réunies, ses juges peuvent statuer.

7. Conformément à l'article 16, alinéa 3, le Gouvernement de la République de Turquie déclare que, les demandes visées à l'article 16, alinéa 2, sont irrecevables si elles sont formées après l'expiration d'un délai d'un an à compter du prononcé de la décision.

**Ukraine: Declarations Reservations**
*Articles [8,10,15,16]*

**[(Click here for the Central Authority designated by Ukraine and other practical information)](#)**

**Text of the declarations:**

(...)
3) on Article 8 of the Convention: service of judicial documents through diplomatic or consular agents of another State within the territory of Ukraine may be effected only upon nationals of the State in which the documents originate;
(...)
5) on Article 10 of the Convention: Ukraine will not use on its territory methods of transmission of judicial documents provided for in Article 10 of the Convention;
6) on Article 15 of the Convention: if all the conditions provided for in the second paragraph of Article 15 of the Convention are fulfilled, the judge, notwithstanding the provisions of the first paragraph of Article 15 of the Convention, may give judgment even if no certificate of service or delivery has been received;
7) on Article 16 of the Convention: application for relief will not be entertained in Ukraine if it is filed after the expiration of one year following the date of the judgment.

**United Kingdom of Great Britain and Northern Ireland: Declarations**
*Articles [2,5,10,15,16,18]*

**[(Click here for the Central Authority designated by the United Kingdom and other practical information)](#)**

**Text of the declarations:**

(a) In accordance with the provisions of Articles 2 and 18 of the Convention, Her Majesty's Principal Secretary of State for Foreign Affairs is designated as the Central Authority; and the Senior Master of the Supreme Court (...), the Scottish Executive Justice Department (...) and the Registrar of the Supreme Court* (...) are designated as additional authorities for England and Wales, Scotland and Northern Ireland respectively.

\* By a note of 10 June 1980 the British Government notified that instead of the Registrar of the Supreme Court of Northern Ireland, designated in 1967 as the additional authority for Northern Ireland in conformity with Article 18 of the Convention, the Master (Queen's Bench and Appeals) is designated as the said additional authority. The address of the Master (Queen's Bench and Appeals) is Royal Courts of Justice, Belfast 1.

(b) The authorities competent under Article 6 of the Convention to complete the Certificate of Service are the authorities designated under Articles 2 and 18.

(c) In accordance with the provisions of Article 9 of the Convention, the United Kingdom designates as receivers of process through consular channels the same authorities as those designated under Articles 2 and 18.

(d) With reference to the provisions of paragraphs (b) and (c) of Article 10 of the Convention, documents for service through official channels will be accepted in the United Kingdom only by the central or additional authorities and only from judicial, consular or diplomatic officers of other Contracting States.\*

(e) The United Kingdom declares its acceptance of the provisions of the second paragraph of Article 15 of the Convention.

(f) In accordance with the provisions of the third paragraph of Article 16 of the Convention, the United Kingdom declares, in relation to Scotland only, that applications for setting aside judgments on the grounds that the defendant did not have knowledge of the proceedings in sufficient time to defend the action will not be entertained if filed more than one year after the date of judgment.

The authorities designated by the United Kingdom will require all documents forwarded to them for service under the provisions of the Convention to be in duplicate and, pursuant to the third paragraph of Article 5 of the Convention, will require the documents to be written in, or translated into, the English language.

> *Extract from a letter dated 11 September 1980 addressed by the Foreign and Commonwealth Office to the Permanent Bureau:*
> "(...)Thank you for your letter of 31 July in which you ask for assistance in the interpretation of the declaration made by the United Kingdom on 17 November 1967 in relation to Article 10(c) of the Convention.
> I am happy to confirm that our declaration does not preclude any person in another Contracting State who is interested in a judicial proceeding (including his lawyer) from effecting service in the United Kingdom "directly" through a competent person other than a judicial officer or official, e.g., a solicitor. (...)"

## United States of America: Declarations
*Articles [2,15,16,29]*

**(Click here for the Central Authority designated by the United States of America and other practical information)**

**Text of the declarations:**

(...)
3. In accordance with the second paragraph of Article 15, it is declared that the judge may, notwithstanding the provisions of the first paragraph of Article 15, give judgment even if no certificate of service or delivery

has been received, if all the conditions specified in subdivisions (a), (b) and (c) of the second paragraph of Article 15 are fulfilled.

4. In accordance with the third paragraph of Article 16, it is declared that an application under Article 16 will not be entertained if it is filed (a) after the expiration of the period within which the same may be filed under the procedural regulations of the court in which the judgment has been entered, or (b) after the expiration of one year following the date of the judgment, whichever is later.

5. In accordance with Article 29, it is declared that the Convention shall extend to all the States of the United States, the District of Columbia, Guam, Puerto Rico, and the Virgin Islands."

By a Note dated 22 April 1970 the Embassy of the United States of America informed the Netherlands Ministry of Foreign Affairs as follows:

"Under Article 2 of the Convention, each State is required to designate a Central Authority to receive requests for service of documents coming from other countries. Although this Central Authority always is to be available, its use is not compulsory and there is provision (Articles 8 through 11) for service through channels outside the Central Authority, including service by diplomatic or consular officers. These provisions are optional, however, and, since consular officers of the United States are prohibited by regulation from serving legal process or appointing other persons to do so, the United States will not avail itself of these provisions of the Convention. It is anticipated that courts in the United States will be advised by the Department of Justice of the possibility of sending requests for service of legal process directly to the Central Authority of the country concerned.
(...)

**Notification pursuant to Article 31 of the Convention (11-III-2015)**

"[ ... ] inform the Ministry ... of certain developments regarding the way judicial assistance is afforded to foreign tribunals and to litigants before such tribunals by the Government of the United States. Since 2003, the Department of Justice of the United States of America has contracted the service of process function performed by the Central Authority to a private contractor to handle requests for service of process in civil and commercial matters in the United States pursuant to the Hague Service Convention.

The Department of Justice of the United States of America has informed the Department of State that, on February 1, 2015, it renewed its contract for the service of process function with ABC Legal, which does business as Process Forwarding International located in Seattle, Washington. The new contract will run through January 31, 2016, with the option to extend the contract through January 31, 2020. The use of a private contractor to perform the service of process function does not imply the designation of a new U.S. Central Authority for the Hague Service Convention, but rather reflects the delegation of certain activities conducted by the U.S. Central Authority, which remains the U.S. Department of Justice.

Process Forwarding International is the only private process server company authorized to act on behalf of the United States to receive requests for service, proceed to serve the documents, and complete the certificate of service . Process Forwarding International is responsible for executing requests for service of process in the following areas: the United States (the fifty states and the District of Columbia), Guam, American Samoa, Puerto Rico, the U.S. Virgin Islands and the Commonwealth of the Northern Mariana Islands.

Personal service will be the preferred method used in executing all requests. In the event personal service is

impracticable to effect, Process Forwarding International will serve process by such other method or methods as may be permitted under the law of the jurisdliction in which service is to be effected. As was the case in previous contract, Process Forwarding International is required to complete service of documents for return tom the foreign requester within 30 business days of receipt. In addition, under the new contract, Process Forwarding International will accept requests for expedited service, service within seven (7) business days of receipt, without charging an additional fee. Expedited service must be specifically requested; if it is not, service will be completed within 30 business days of receipt.

All requests for service of process should be transmitted to:

Process Forwarding International
633 Yesler Way
Seattle, Washington 98104
USA
Telephone : 001-206-521-2979
Fax: 001-206-224-3410
E-mail: info@hagueservice.net
Website: http://www.hagueservice.net

Requests for service must be transmitted in duplicate with an appropriate translation (one set will be served and the other will be returned by Process Forwarding International with a certificate of service). The full name and street address for the person or entity to be served must be included. For requests made under the Hague Service Convention, the Model Form for that Convention must be used.

There will continue to be a fee for service of process requests from persons in countries party to the Hague Service Convention. The service fees for requests under the Hague Service Convention will remain $95 through the expiration of the contract on January 31, 2016. There is no additional fee for expedited service requests. Payment of fees may be made by Visa, MasterCard, most international credit cards, bank transfers, international money orders and government-issued checks payable to Process Forwarding International. Personal checks are not accepted.

All service requests must comply with the payment schedule and method of payment described on Process Forwarding International's website. All service requests unaccompanied by proper payment in the manner indicated will be returned without processing. The website for Process Forwarding International provides specific guidance on methods of payment.

It will also be possible to check on the status of a service request on Process Forwarding International's website.

The United States notes that there is no requirement under U.S .. federal law that requests for service be sent to Process Forwarding International. The United States has no objection to the informal delivery of such documents by members of diplomatic or consular missions in the United States, through the mails or by private persons if that would be effective under applicable law, provided no compulsion is used."

**Venezuela: Declarations Reservations**
*Articles [5,8,10,1516]*

**(Click here for the Central Authority designated by Venezuela and other practical information)**

**Text of the declarations:**

1. Respecto del párrafo 3 de la letra b) del Artículo 5:
La República de Venezuela declara que las notificaciones y los documentos y otros recaudos anexos a las notificaciones serán aceptados sólo cuando se encuentren debidamente traducidos al idioma castellano.

2. Respecto del Artículo 8:
La República de Venezuela se opone al ejercicio de la facultad prevista en el primer párrafo de este artículo dentro de su territorio, con relación a otras personas que no sean nacionales del Estado de Origen.

3. Respecto del literal a) del Artículo 10:
La República de Venezuela se opone a la remisión de documentos por via postal.

4. Respecto de los literales a), b) y c) del Artículo 15:
La República de Venezuela declara que "los jueces venezolanos podrán decidir cuando se cumplan las condiciones previstas en las letras a), b) y c) de este artículo, a pesar de no haber recibido comunicación alguna comprobatoria, bien de la notificación o traslado, bien de la entrega del documento.

5. Respecto del Artículo 16:
La República de Venezuela declara que la demanda permitida por el tercer párrafo de este artículo no será admisible si se intenta después de la expiración del plazo previsto por la ley venezolana.

(Translation)
1. With regard to Article 5(b)(3):
The Republic of Venezuela declares that notices and documents and other items annexed to the notices will be accepted only when they are properly translated into the Spanish language.

2. With regard to Article 8:
The Republic of Venezuela does not agree to the exercise of the faculty provided for in the first paragraph of this Article within its territory, in respect of other persons who are not nationals of the country of origin.

3. With regard to Article 10 (a):
The Republic of Venezuela does not agree to the transmission of documents through postal channels.

4. With regard to Article 15 (a), (b) and (c):
The Republic of Venezuela declares that "Venezuelan judges shall be empowered to decide when the conditions contained in sections (a), (b) and (c) of this Article are fulfilled, even though they have not received any communication evidencing either the notice or transfer, or delivery of the document.

5. With regard to Article 16:
The Republic of Venezuela declares that the request allowed by the third paragraph of this Article shall not be admissible if it is made after the expiration of the period specified in Venezuelan law.
(...)

# Non-Member States of the Organisation

| States | S[1] | R/A/Su [2] | Type [3] | EIF [4] | Ext [5] | Auth [6] | Res/D/N [7] |
|---|---|---|---|---|---|---|---|
| Antigua and Barbuda | | 1-V-1985 | Su | 1-XI-1981 | | 1 | |
| Bahamas | | 17-VI-1997 | A | 1-II-1998 | | 1 | |
| Barbados | | 10-II-1969 | A | 1-X-1969 | | 1 | |
| Belize | | 8-IX-2009 | A | 1-V-2010 | | | |
| Botswana | | 10-II-1969 | A | 1-IX-1969 | | 3 | D<br>5,10,15 |
| Colombia | | 10-IV-2013 | A | 1-XI-2013 | | 1 | |
| Kuwait | | 8-V-2002 | A | 1-XII-2002 | | 3 | D,Res<br>6,8,9,10,15,16,18 |
| Malawi | | 24-IV-1972 | A | 1-XII-1972 | | 1 | |
| Pakistan | | 7-XII-1988 | A | 1-VIII-1989 | | 3 | D<br>8,15,16 |
| Republic of Moldova | | 4-VII-2012 | A | 1-II-2013 | | 1 | D,Res<br>5,8,15,16 |
| Saint Vincent and the Grenadines | | 6-I-2005 | Su | 27-X-1979 | | 3 | D<br>5,10,15 |
| San Marino | | 15-IV-2002 | A | 1-XI-2002 | | 3 | D<br>8,10,15 |
| Seychelles | | 18-XI-1980 | A | 1-VII-1981 | | 1 | D<br>8,10,15,16 |

# Type

### Antigua and Barbuda Type [Su]

By a Note of 1 May 1985 and received at the Ministry of Foreign Affairs of the Kingdom of the Netherlands on 17 May 1985, the Government of Antigua and Barbuda informed the Ministry of Foreign Affairs that it does consider itself bound by the Convention, which had been declared applicable to Antigua by the Government of the United Kingdom of Great Britain and Northern Ireland on 20 May 1970. (See under United Kingdom extensions.) The date of entry into force is the date of independence of this State.

### Saint Vincent and the Grenadines Type [Su]

By a Note received at the Ministry of Foreign Affairs of the Kingdom of the Netherlands on 6 January 2005, the Government of Saint Vincent and the Grenadines informed the Ministry of Foreign Affairs that it does consider itself bound by the Convention, which had been declared applicable to Saint Vincent by the Government of the United Kingdom of Great Britain and Northern Ireland on 20 May 1970. The date of entry into force is the date of independence of this State.

# Res/D/N

**Botswana: Declarations**
*Articles [5,10,15]*

(Click here for the Central Authority designated by Botswana and other practical information)

**Text of the declarations:**

(...)
4. It is declared that the Government of Botswana objects to the method of service referred to in sub-paragraphs (b) and (c) of Article 10.

5. It is declared that a judge of the High Court of Botswana may give judgment if all the conditions specified in paragraph 2 of Article 15 are fulfilled.

The authorities designated will require all documents forwarded to them for service under the provisions of the Convention to be in triplicate and pursuant to the third paragraph of Article 5 of the Convention will require the documents to be written in, or translated into the English language.

By a Note dated 8 October 1974 the Office of the President of the Republic of Botswana declared that the authorities designated by Botswana in terms of the Convention require henceforth all documents forwarded to them for service to be in duplicate.

**Kuwait: Declarations Reservations**
*Articles [6,8,9,10,15,16,18]*

(Click here for the Central Authority designated by Kuwait and other practical information)

**Text of the declarations:**

"(...)
4. The opposition to methods of service of judicial documents mentioned in Article 8 and 10 of the Convention.
5. The reservation against Paragraph 2 of Article 15.
6. The understanding of Paragraph 3 of Article 16 of the Convention, as for the time limit, mentioned in this paragraph, is the time fixed by the law of the trial judge or one year following the date of judgment which ever is longer."

*Additional information received 29-VI-2005:*

"1. The Central Authority, which shall receive requests for service of documents, sent by the other contracting state, pursuant to Article 2 of the Convention, is the Ministry of Justice (International Relations Department). The State has the right to designate many central authorities, pursuant to Article 18 of the Convention.
2. The Ministry of Justice is the competent authority to complete a certificate, mentioned in Article 6 of the Convention.
3. The competent authority to receive documents mentioned in Article 9 of the Convention is the Ministry of

Justice (International Relations Department)."

**Pakistan: Declarations**
*Articles [8,15,16]*

**(Click here for the Central Authority designated by Pakistan and other practical information)**

(...)
For the purposes of Article 8 of the Convention it is hereby declared that the Government of Pakistan is opposed to service of judicial documents upon persons, other than nationals of the requesting States, residing in Pakistan, directly through the Diplomatic and Consular agents of the requesting States. However, it has no objection to such service by postal channels directly to the persons concerned (Article 10(a)) or directly through the judicial officers of Pakistan in terms of Article 10(b) of the Convention if such service is recognised by the law of the requesting State.

In terms of the second paragraph of Article 15 of the Convention, it is hereby declared that notwithstanding the provision of the first paragraph thereof the judge may give judgment even if no certificate of service or delivery has been received, if the following conditions are fulfilled:

a) the document was transmitted by one of the methods provided for in the Convention;
b) the period of time of not less than 6 months, considered adequate by the judge in the particular case, has elapsed since the date of transmission of the document; and
c) no certificate of any kind has been received even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.

As regards Article 16, paragraph 3, of the Convention it is hereby declared that in case of ex-parte decisions, an application for setting it aside will not be entertained if it is filed after the expiration of the period of limitation prescribed by law of Pakistan.

**Republic of Moldova: Declarations Reservations**
*Articles [5,8,15,16]*

1. According to the article 5 paragraph 3 of the convention, the service of the document within the territory of the Republic of Moldova will be allowed only if the document which is to be served is written or translated into the official language of the Republic of Moldova.
2. The Republic of Moldova declares that it is opposed upon modalities of service of judicial documents within its territory mentioned in the article 8 paragraph 1 of the convention, except the case when the document is to be served upon a national of the state in which the documents originate, and upon modalities of transmitting of the documents mentioned in the article 10 of the convention.
3. According to the article 15 paragraph 2 of the convention, the Republic of Moldova declares that the judges of the Republic of Moldova may give judgment even if no certificate of service or delivery has been received, if all the conditions mentioned in this paragraph are fulfilled.
4. According to article 16 paragraph 3 of the convention, the Republic of Moldova declares that the writ of summons submitted in the conditions of the article 16 of the convention will be not entertained if it is filed after one year following the date of the judgment.

**Saint Vincent and the Grenadines: Declarations**
*Articles [5,10,15]*

The Government of Saint Vincent and the Grenadines declares that it is opposed to the channels of transmission provided for in Article 10*(b)* and *(c)* of the Convention.

The Government of Saint Vincent and the Grenadines declares that the provisions of the second paragraph of Article 15 of the Convention shall apply to Saint Vincent and the Grenadines.

The Central Authority will require all documents forwarded to it for service under the provisions of the Convention to be in duplicate and, pursuant to the third paragraph of Article 5 of the Convention, will require the documents to be written in, or translated into, the English language.

## San Marino: Declarations
*Articles [8,10,15]*

**(Click here for the Central Authority designated by San Marino and other practical information)**

(...)
4. In conformity with Article 21, second paragraph, letter a), the Republic of San Marino declares its opposition to the use of methods of transmission pursuant to Articles 8 and 10.
5. In conformity with Article 21, second paragraph, letter b), the Republic of San Marino declares pursuant to the second paragraph of Article 15, that its judges, notwithstanding the provisions of the first paragraph of said Article, may give judgment even if no certificate of service or delivery has been received, if all the conditions referred to in letters a), b) and c) are fulfilled.

## Seychelles: Declarations
*Articles [8,10,15,16]*

**(Click here for the Central Authority designated by the Seychelles and other practical information)**

(...)
(ii) Article 8
The Government of the Republic of Seychelles declares that it is opposed to service by a Contracting State of judicial documents upon persons abroad, without application of any compulsion, directly through the diplomatic or consular agents of that Contracting State unless the document is to be served upon a national of the State in which the documents originate.

(iii) Article 10
The Government of the Republic of Seychelles declares that it objects to paragraphs (b) and (c) of this Article, in so far as they permit service of judicial documents through officials or persons other than judicial officers.

(iv) Article 15
The Government of the Republic of Seychelles declares that notwithstanding the provisions of the first paragraph of this Article, the judge may give judgment even if no certificate of service or delivery has been received, if all the following conditions are fulfilled:

a) the document was transmitted by one of the methods provided for in this Convention,
b) a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,

9/19/10 10:03 AM

c) no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.

(v) Article 16
The Government of the Republic of Seychelles declares that it will not entertain an application for relief if filed later than one year following the date of the judgment.

EXHIBIT "C"

| **State or REIO** | Saint Vincent and the Grenadines |
|---|---|
| **Is bound by:** | • Convention of 5 October 1961 Abolishing the Requirement of Legalisation for Foreign Public Documents [12]<br>• Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters [14] |
| **Has signed:** | No results. |

EXHIBIT "D"

| States | S[1] | R/A/Su [2] | Type [3] | EIF [4] | Ext [5] | Auth [6] | Res/D/N [7] |
|---|---|---|---|---|---|---|---|
| Antigua and Barbuda | | 1-V-1985 | Su | 1-XI-1981 | | 1 | |
| Bahamas | | 17-VI-1997 | A | 1-II-1998 | | 1 | |
| Barbados | | 10-II-1969 | A | 1-X-1969 | | 1 | |
| Belize | | 8-IX-2009 | A | 1-V-2010 | | | |
| Botswana | | 10-II-1969 | A | 1-IX-1969 | | 3 | D<br>5,10,15 |
| Colombia | | 10-IV-2013 | A | 1-XI-2013 | | 1 | |
| Kuwait | | 8-V-2002 | A | 1-XII-2002 | | 3 | D,Res<br>6,8,9,10,15,16,18 |
| Malawi | | 24-IV-1972 | A | 1-XII-1972 | | 1 | |
| Pakistan | | 7-XII-1988 | A | 1-VIII-1989 | | 3 | D<br>8,15,16 |
| Republic of Moldova | | 4-VII-2012 | A | 1-II-2013 | | 1 | D,Res<br>5,8,15,16 |
| Saint Vincent and the Grenadines | | 6-I-2005 | Su | 27-X-1979 | | 3 | D<br>5,10,15 |
| San Marino | | 15-IV-2002 | A | 1-XI-2002 | | 3 | D<br>8,10,15 |
| Seychelles | | 18-XI-1980 | A | 1-VII-1981 | | 1 | D<br>8,10,15,16 |

# Type

### Antigua and Barbuda Type [Su]

By a Note of 1 May 1985 and received at the Ministry of Foreign Affairs of the Kingdom of the Netherlands on 17 May 1985, the Government of Antigua and Barbuda informed the Ministry of Foreign Affairs that it does consider itself bound by the Convention, which had been declared applicable to Antigua by the Government of the United Kingdom of Great Britain and Northern Ireland on 20 May 1970. (See under United Kingdom extensions.) The date of entry into force is the date of independence of this State.

### Saint Vincent and the Grenadines Type [Su]

By a Note received at the Ministry of Foreign Affairs of the Kingdom of the Netherlands on 6 January 2005, the Government of Saint Vincent and the Grenadines informed the Ministry of Foreign Affairs that it does consider itself bound by the Convention, which had been declared applicable to Saint Vincent by the Government of the United Kingdom of Great Britain and Northern Ireland on 20 May 1970. The date of entry into force is the date of independence of this State.

EXHIBIT "E"

Filed on behalf of: Plaintiff

Name of the Deponent: Ms. Nicole Charles

Number of Statement: 1

No. of Exhibits: "A"

Case Action No.: 1:15-cv-22463-MGC

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

BETWEEN

HYDENTHRAHLP INT. LIMITED, A FOREIGN CORPORATION d/b/a METART          PLAINTIFF

-VS-

CLOVER HOLDINGS LIMITED PARTNERSHIP d/b/a SEX.COM          DEFENDANTS

C/O E.M. FRENCH, DIRECTOR, EGMONT STREET, BONADIES PLAZA

SUITE 3, KINGSTOWN, SAINT VINCENT

---

## THE AFFIDAVIT OF PROCESS SERVICE

---

The Affidavit of Process Service dated 11TH August, 2015, before me Israel R. Bruce and conducted by Nicole Charles, upon Mr. Ralph E. Baynes Office Manager of **LEEWARD TRUST CORPORATION** the registered agent for **CLOVER HOLDINGS LIMITED PARTNERSHIP** at Egmont street, Bonadie's plaza suite 3, Kingstown, Saint Vincent  on 6th day of August 2015 at 3:30pm was served according to    the    laws    and    customs    of    Saint    Vincent    and    The    Grenadines.

Dated the   10th day September 2015

Israel R. Bruce
ISRAEL R. BRUCE LL.B
(Hons)
BARRISTER AT LAW & SOLICITOR
ST VINCENT & THE GRENADINES

EXHIBIT "F"

travel.state.gov    • U.S. Passports &     • Students Abroad   • U.S. Visa   • Intercountry Adoption   • International Parental   • | ✉ Contact Us   • 🇺🇸 Find U.S. Embassies
International Travel                                                                      Child Abduction                                                & Consulates



SEARCH 🔍

travel.state.gov  >  Passports & International Travel  >  Country Information  >  **St. Vincent
& the Grenadines**

Print        Email



# Saint Vincent and the Grenadines
*Official Name: Saint Vincent and the Grenadines*

LAST UPDATED: AUGUST 25, 2014

## Alerts & Warnings

2015 Hurricane and Typhoon
Season                                          SEE ALL NEWS
June 3, 2015

## Embassy Messages

More

## Quick Facts

- PASSPORT VALIDITY:          • VACCINATIONS:
  Must be valid at time of entry   None

- BLANK PASSPORT PAGES:       • CURRENCY
  One page required for entry stamp  RESTRICTIONS FOR
                               ENTRY:
                               None

- TOURIST VISA REQUIRED:
  None

                             • CURRENCY
                               RESTRICTIONS FOR EXIT:
                               None

                                        Expand All

**Embassies and Consulates**

**Destination Description**

St. Vincent and the Grenadines is an English-speaking developing Caribbean island nation. Tourism facilities are widely available. Read the Department of State Fact Sheet on St. Vincent and the Grenadines for additional information on U.S. – St. Vincent and the Grenadines. relations.

**Entry, Exit & Visa Requirements**

**Safety and Security**

**Local Laws & Special Circumstances**

**Health**

**Travel & Transportation**

Please see Fact Sheet for this country.

---

Assistance for U.S. Citizens

U.S. Embassy Bridgetown
Wildey Business Park
Wildey
St. Michael BB 14006
Barbados, W.I.

- Telephone
  +(246) 227-4399

- Emergency After-Hours
  Telephone
  +(246) 227-4000

- Fax
  +(246) 431-0179

- Email
  BridgetownACS@state.gov

- U.S. Embassy Bridgetown

---



click to enlarge

### Enroll in STEP

Enrolling in this free service will allow us to better assist you in case of an emergency while you are abroad.

[ENROLL]



- About Us
- Newsroom
- Passport Statistics
- Legal Considerations

- Find a U.S. Embassy or Consulate
- Contact Us
- Careers
- Consular Notification and Access

STAY CONNECTED

- Dipnote Blog
- Facebook
- Flickr

- @travelgov
- Youtube
- RSS

travel.state.gov

U.S. Passports & International Travel

Students Abroad

U.S. Visa

Intercountry Adoption

International Parental Child Abduction

Privacy • Copyright & Disclaimer • FOIA • No FEAR Act Data • Office of the Inspector General • USA.gov • GobiernoUSA.gov

This site is managed by the Bureau of Consular Affairs, U.S. Department of State.

EXHIBIT "G"

# SEX.COM

## PRESS KIT

Hi there! Thank you for downloading the Sex.com Press Kit. We've prepared a few interesting facts for you. If there is something more you'd like to know, feel free to send us an email! The address can be found at the bottom of this page.

## SITE STATS*

What does an average month look like on Sex.com?

**New Visitors**

**65M** Visitors

**7.8** Pages/Session

**05:58** Time on site

**53.2%** English speaking users

**57%** / **43%**

**Returning Visitors**

**5.3%** Spanish speaking users

**4.3%** Portuguese speaking users

**3.9%** French speaking users

**7.6%** Others

**BONUS INFO** About 25% of our total traffic is 100% American.

*Google Analytics, August 2014

## THE SEX.COM STORY

Sex.com is a free virtual community for the discovery and sharing of porn. However, before its current identity, it underwent a pretty tumultuous journey.

**May 1994** — Gary Kremen registers Sex.com for free with Network Solutions.

**May 1995** — Stephen Cohen steals the domain name by tricking Network Solutions with a forged fax.

**1995 2001** — Kremen sues Cohen and the battle lasts 6 years, led by cyberlawer Charles Carreon.

In the meantime, Cohen has turned Sex.com into a lucrative porn empire, earning him approx. $100M.

**April 2001** — Kremen wins the case, retrieves the Sex.com domain, and Cohen is ordered by court to pay a $65M judgement.

**May 2001** — After refusing to pay, faking bankruptcy and moving assets out of the country, Cohen fled to Mexico to escape his arrest warrant.

**October 2005** — Cohen is arrested in Tijuana, Mexico for immigration violations, and is handed over to US authorities.

Cohen is charged with federal civil contempt and the amount for damages owed to Kremen increases to $82M.

**January 2006** — Kremen sells the Sex.com domain to Escom LLC, for $14M

**February 2010** — Escom files for bankrupcy, and the domain name sale is held at a Sedo brokered auction

**October 2010** — Offshore holding company, Clover Holdings, based in the Caribbean island of St. Vincent, put in the winning bid of $13 million.

**May 2012** — Sex.com relaunches, marketing itself as a Pinboard community for porn.

## SEX IS SOCIAL

We're social! Despite some challenges due to the nature of our site, we're continually growing our social presence.

**25K** fans

**28.6K** followers

**7.3K** followers

**2.4K** pinners

## CONTACT US

media @ sex.com

Last updated August 2014

EXHIBIT "H"



 Sex.com

The world's leading authority in porn pics, free sex videos, pictures of naked women and perfect girls



**Global Rank**
Worldwide
1,839 ↑



**Country Rank**
United States
1,163 ↑



**Category Rank**
Adult
118 ↑

# Traffic Overview

## Estimated Monthly Visits

Showing last 6 months



## Engagement

On Desktop, in August, 2015

| | |
|---|---|
| Visits | **8.8M** |
| ⏱ Time On Site | **00:08:42** |
| 📰 Page Views | **13.46** |
| ➜ Bounce Rate | **34.02%** |

## Traffic by countries

On Desktop, Last 3 months



| | | |
|---|---|---|
| 🇺🇸 | United States | **39.21%** |
| 🇷🇺 | Russia | **4.96%** |
| 🇩🇪 | Germany | **4.13%** |
| 🇮🇳 | India | **3.84%** |
| 🇬🇧 | United Kingdom | **3.52%** |

## Traffic Sources

On Desktop, Last 3 months



# Referrals



# 18.51%
Of traffic is from Referrals

Top Referring Sites:

Theporndude.com

Imagetwist.com

Tineye.com

Imagebam.com

Straight.fleshbot.com



Sex.com

Top Destination Sites:

Camonster.com

Xvideos.com

Imagefap.com

Secure.xsrving.com

Box.anchorfree.net

# Search



**18.12%**
Of traffic is from **Search**

**100%**
**Organic Searches**

**0%**
**Paid Searches**

Organic Keywords:

sex.com

секс

www.sex.com

sex

sex com

Paid Keywords:

No Paid Keywords

# Social



4.64%
Of traffic is from Social



**Stumbleupon**

36.97%

**Reddit**

25.27%

**Facebook**

20.71%

**Youtube**

6.74%

**Twitter**

6.24%

# Display Advertising



## 0.28%
Of traffic is from Display Ads

## Top Publishers

Paseilimitado.com

Youjizz.com

Facebook.com

Pornsexbig.blogspot.com

Jbzd.pl

## Top Ad Networks



Propeller Ads Media

Adcash.com

sh.st

Paid Referrals

Other

Misc Ads

## Display Ads

No display ads available for this website

# Audience Interests

## Categories



Adult



Internet And Telecom > Search Engine



Games > Roleplaying



People And Society



News And Media > Technology News

## Also visited websites

Smutty.com

Tineye.com

Camonster.com

F-list.net

Qkantton.wordpress.com

## Topics

hot service chat porn tube high list que live cam cams blonde leer ass resto account furry más

# Similar Sites

## Similarity


Asylum.com


Porn.com


Hotsex.com


Oy-Sex.com


Twilightsex.com


Xnxx.com


Psychologytoday.com


Raunchygfs.com


Myolderlovers.com


Sexetc.org

Rank


☐ Google.com


☐ Amazon.com


☐ Xnxx.com


☐ Huffingtonpost.c..


☐ Porn.com


💋 Adultfriendfinde...


☐ Cosmopolitan.co..


☐ Manhunt.net


☐ Playboy.com


🔲 Psychologytoday..

# Related Mobile Apps

NO APPS FOUND

EXHIBIT "I"

Service Agreement
Site Terms of Use and DMCA Claims

- [Site Terms of Use and DMCA Claims](#)

Service Agreement

- [General Provisions](#)
- [Domain Names (nsWebAddress)](#)
- [ccTLD Domain Names](#)
- [.BIZ Domain Names](#)
- [.INFO Domain Names](#)
- [.EU Domain Names](#)
- [.NAME Domain Names](#)
- [.US Domain Names](#)
- [.CA Domain Names](#)
- [.CN Domain Names](#)
- [.TW Domain Names](#)
- [.PRO Domain Names](#)
- [.MOBI Domain Names](#)
- [.GD Domain Names](#)
- [.TEL Domain Names](#)
- [.CO Domain Names](#)
- [.XXX Domain Names](#)
- [.XYZ Domain Names](#)
- [United TLD Domain Names](#)
- [.UK Domain Names](#)
- [.PW Domain Names](#)
- [Private Registration](#)
- [Change of Registrar Service](#)
- [Registrant Name Change Agreement](#)
- [Extended Year Service](#)
- [Email (nsMail)](#)
- [Web Forwarding](#)
- [WHOIS Business Listing](#)
- [nsWebsite and Website Builder Tool](#)
- [MyComputer Services](#)
- [Certified Offer Service](#)
- [Hosting Service (Web Hosting)](#)
- [Online Marketing Services (nsMarketing)](#)
- [Paid Advertising Services (nsMarketing)](#)
- [Website Design Services (Design/Develop)](#)
- [Ecommerce Services (nsCommerceSpace)](#)
- [MessageGuard](#)
- [WatchDog (nsProtect Safe)](#)
- [Website Migration Services (TransferMe)](#)
- [Free Website Package](#)
- [goMobi Services](#)

- MyTime Support Services
- ContactMe Biz Pro Service
- Email Marketing Service
- Domain Expiration Protection
- ReputationAlert
- TRUSTe
- Network Solutions Buyer's Club
- New gTLD Services
- SiteLock Security Services
- WebLock Service
- Premium DNS Service
- Take-a-Payment Services

Policies

- Privacy Policy
- Uniform Domain Name Dispute Resolution Policy
- Domain Deletion Policy
- Domain Transfer Policy
- Acceptable Use Policy

SSL Legal Repository

- Subscriber Agreements
- Relying Party Agreements
- Relying Party Guarantee
- Certification Practice Statement
- EV Subscriber Agreements
- EV Certification Practice Statement

LinkTogether™ Terms of Use

- LinkTogether™ Terms of Use

Report Seal Misuse

- SSL Seal Misuse
- WatchDog Seal Misuse

ALL SERVICES ARE GOVERNED BY THE GENERAL TERMS AND CONDITIONS THAT ARE LISTED BELOW ALONG WITH THE TERMS IN THE APPLICABLE SCHEDULE(S) FOR THE SPECIFIC SERVICES THAT ARE PURCHASED.

**This is Service Agreement Version Number 9.34**

**1. INTRODUCTION.** In this Service Agreement ("Agreement"), "you" and "your" refer to each customer ("Customer") and its agents, including each person listed in your account information as being associated with your account, and "we", "us" and "our" refer collectively to Network Solutions, LLC and its

wholly-owned subsidiaries ("Network Solutions"). This Agreement explains our obligations to you, and your obligations to us in relation to the Network Solutions service(s) you purchase. By purchasing or otherwise applying for Network Solutions service(s), you agree to establish an account with us for such services. When you use your account or permit someone else to use your account to purchase or otherwise acquire access to additional Network Solutions service(s) or to modify or cancel your Network Solutions service(s) (even if we were not notified of such authorization), this Agreement as amended covers any such service or actions. Additionally, you agree that each person listed in your account information as being associated with your account for any services provided to you (including, but not limited to, domain name registration services) is your agent with full authority to act on your behalf with respect to such services in accordance with the permissions granted, and that the Primary Contact and Account Administrative Contact for your account shall have the authority, without limitation, to terminate, transfer (where transfer is permitted by the Agreement), or modify such services or your account information, or purchase additional services. Any acceptance of your application(s) or requests for our services and the performance of our services will occur at our offices in Herndon, Virginia, the location of our principal places of business. Except as otherwise expressly set forth in this Agreement, you agree that if you list, directly or by default, Network Solutions as a contact for your account and/or any of the services in your account, we have the right, without notice, to remove our name and/or information from any such account or service and to replace the same with the name and/or information provided by you for any other contact associated with that account or service.

**2. VARIOUS SERVICES.** Sections 1 through 30 apply to any and all Network Solutions services that you purchase, whether purchased separately or as a part of a complete solution or package bundle. The terms and conditions set forth in the Schedules of this Agreement apply only to customers who have purchased the Network Solutions services referenced in those Schedules. In the event of any inconsistency between the terms of Sections 1 through 30 and the terms of the Schedules, the terms of the Schedules shall control with regard to the applicable Network Solutions service. IMPORTANT NOTICE CONCERNING SERVICES THAT ARE COMBINED TOGETHER AS A PART OF A BUSINESS SOLUTION: If you purchase Network Solutions services that are sold together as a "bundled" package (e.g., you select nsSpace™ that includes both a domain name (nsWebAddress™) and a Network Solutions Website builder or other services, as opposed to your purchasing such services separately), termination of any part of the services will result in termination of all Network Solutions services provided as part of the bundled package. Please see Section 10(d) of this Agreement for more information. You acknowledge and agree that some or all of the services you purchase or receive from us may be provided by one or more vendors, contractors or affiliates selected by Network Solutions in its sole discretion. As a part of your Services, Network Solutions may provide you access to third party functionality or services, including, but not limited to applications, widgets, RSS and other types of news, event and industry feeds, calculators, recommended copy, forms and templates that are incorporated or are offered as a part of one or more of the Services ("Third Party Functionality"). You expressly agree that any Third Party Functionality (including products, services or offering)s that are available to You as a part of any of the Network Solutions product or services shall be used by You in accordance with the terms of any relevant third party licenses. Your failure to abide by any third party license may result in the immediate termination of your services by Network Solutions. Furthermore, Network Solutions does not control such Third Party Functionality and is therefore not liable for any issues of any kind relating to the Third Party Functionality. Network Solutions reserves the right, at its sole discretion, to terminate, suspend, cancel or alter your access to Third Party Functionality at any time.

**3. FEES, PAYMENT AND TERM OF SERVICE.** As consideration for the services you purchased, you agree to pay Network Solutions the applicable service(s) fees set forth on our Website at the time of your selection, or, if applicable, upon receipt of your invoice from Network Solutions. All fees are due immediately and are non-refundable, except as otherwise expressly noted in one or more of the Schedules to

include commercial emails, telephone solicitations and other notices describing changes, upgrades, new products and services or other information pertaining to Internet security or to enhance your identity on the Internet and/or other relevant matters.

**18. SEVERABILITY.** You agree that the terms of this Agreement are severable. If any term or provision is declared invalid or unenforceable, in whole or in part, that term or provision will not affect the remainder of this Agreement; this Agreement will be deemed amended to the extent necessary to make this Agreement enforceable, valid and, to the maximum extent possible consistent with applicable law, consistent with the original intentions of the parties; and the remaining terms and provisions will remain in full force and effect.

**19. ENTIRE AGREEMENT.** You agree that this Agreement, the rules and policies incorporated by reference in this Agreement (including, without limitation, the dispute policy and the privacy statement) are the entire, complete and exclusive agreement between you and us regarding our services and supersede all prior agreements and understandings, whether written or oral, or whether established by custom, practice, policy or precedent, with respect to the subject matter of this Agreement, including, without limitation, any purchase order provided by you for the services.

**20. ASSIGNMENT AND RESALE.** Except as otherwise set forth herein, your rights under this Agreement are not assignable or transferable. Any attempt by your creditors to obtain an interest in your rights under this Agreement, whether by attachment, levy, garnishment or otherwise, renders this Agreement voidable at our option. You agree not to reproduce, duplicate, copy, sell, resell or otherwise exploit for any commercial purposes any of the services (or portion thereof) without Network Solutions prior express written consent.

**21. GOVERNING LAW.**

a. Except as otherwise set forth in the UDRP or any similar ccTLD policy with respect to any dispute over a domain name registration, this Agreement, your rights and obligations and all actions contemplated by this Agreement shall be governed by the laws of the United States of America and the State of Florida, without regard to conflict of laws principles, as if the Agreement was a contract wholly entered into and wholly performed within Duval County in the State of Florida.

b. Except as otherwise set forth in the UDRP or any similar ccTLD policy with respect to any dispute over a domain name registration, any judicial proceeding relating to or arising out of this Agreement or the Services shall be instituted only in a federal or state court of competent jurisdiction in Duval County in the State of Florida, and you consent to the personal jurisdiction of such court and waive the right to challenge the jurisdiction of such court on grounds of lack of personal jurisdiction or forum non conveniens or to otherwise seek a change of venue. You also agree to waive the right to trial by jury in any action that takes place relating to or arising out of this Agreement or the Services.

c. Notwithstanding the forgoing, for the adjudication of third party disputes (i.e., disputes between yourself and another party, not Network Solutions) concerning or arising from use of domain names registered hereunder, you acknowledge and agree that you shall submit, without prejudice to other potentially applicable jurisdictions, to the jurisdiction of the courts (i) of the domain name holder's domicile, and (ii) where Network Solutions' principal place of business is located, currently Jacksonville, Florida.

d. The application of the United Nations Convention of Contracts for the International Sale of Goods is expressly excluded.

**22. AGREEMENT TO BE BOUND.** By applying for a Network Solutions service(s) through our online

For the Take-a-payment Services, Network Solutions shall bill you on a recurring basis in advance during the term of the Agreement, and may be charged on an annual, monthly or other recurring billing cycle. Your customers' payments will be processed through your existing third-party terminal or by signing up for Simplify Commerce ("Simplify") at the time you purchase and/or sign-up for the Take-a-payment Services. The Take-a-payment Services will only store information related to payments made by your customers via Take-a-payment for a maximum of thirty (30) days. Additionally, Simplify or your third-party terminal merchant terms of service will further apply to your use of their services for the processing of the payments and may include additional processing fees for which you shall be solely responsible. For reference, Simplify's terms are located online here. In the instance that the terms of service for Simplify or your existing third-party terminal conflict with this Agreement, the terms of this Agreement will apply.

You acknowledge that Network Solutions makes no guarantees that any given customer will be able to access the Take-a-payment Services at any given time. Network Solutions shall not be liable to you for failure of accessibility to the Take-a-payment Services or any potential or actual losses that you may suffer from your inability to access or use the Take-a-payment Services or your customers' inability to access any websites that may utilize the Take-a-payment Services. Network Solutions provides all Take-a-payment Services on an "as is" basis and does not guarantee that the Take-a-payment Services will have no errors, defects or bugs or will otherwise function properly. You agree that Network Solutions is not responsible in any way for any malfunction or downtime in the Take-a-payment Services and any damage, injury or lost profits that may arise from such malfunction or downtime.

Network Solutions makes no guarantee that the Take-a-payment Services will operate seamlessly and without error with your own hardware, software or other services (including third party products) that you currently use. Network Solutions makes no guarantees regarding system uptime. From time to time, and as may be necessary to maintain such systems and Network Solutions hardware, Network Solutions reserves the right to take its servers and other hardware offline for repairs, upgrades or routine maintenance. You agree and understand that the Take-a-payment Services may be dependent on third party services that Network Solutions cannot control. You expressly agree that the availability of those third party services may impact the Take-a-payment Services and therefore you shall not hold Network Solutions liable for any actions of a third party that may adversely impact the Take-a-payment Services. Any uptime calculation or percentage that is provided as a part of the Take-a-payment Services does not include routine maintenance, unexpected downtime caused by network issues or third party vendors, and occurrences that are outside the control of Network Solutions, including but not limited to any force majeure occurrences.

You acknowledge and agree that the Take-a-payment Services are provided, in some cases, by third party Licensors to Network Solutions, including but not limited to Simplify ("Third Party Licensors"). For all Take-a-payment Services that are provided by Third Party Licensors, you agree with and shall abide by all Third Party Licensor terms and conditions, if any. Such Third Party Licensor terms and conditions are available upon request (the "Additional Terms and Conditions"). Any Additional Terms and Conditions are in addition to and supplement the terms and conditions provided in this Agreement. You acknowledge and agree that you will be subject to all Additional Terms and Conditions and that all such Additional Terms and Conditions shall be incorporated into this Agreement, to the extent those Additional Terms and Conditions do not conflict with the terms and conditions of this Agreement, as if set forth fully herein. You acknowledge that Network Solutions may, at its sole discretion, change any Third Party Licensors that provide services under this Agreement, or add or delete discrete services from the Take-a-payment Services. In the event that Network Solutions changes Third Party Licensors, Network Solutions may provide you with notification of changes in Third Party Licensors and refer you to information posted on Network Solutions' website relative to that change which shall be Take-a-payment Additional Terms and Conditions for the purposes of this

Agreement.