**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| HYDENTRA HLP INT. LIMITED, a foreign corporation d/b/a METART  Plaintiff,  v.  MAXIMUM APPS INC., a foreign company d/b/a SEX.COM, CLOVER HOLDINGS LIMITED PARTNERSHIP, a foreign company, d/b/a SEX.COM; SEX.COM; FREDERICK VALIQUETTE, an individual, and; John Does 1-20,  Defendants. | **Case No.** **1:15-cv-22463-MGC** |

**DEFENDANTS MAXIMUM APPS. INC.'S AND FREDERICK VALIQUETTE'S**
**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

In the present case, the Plaintiff Hydentra HLP Int. Ltd, a *limited company incorporated and operating under the laws of the Republic of Cyprus*, has brought suit against Defendant Maximum Apps, Inc., *a Canadian corporation* and Frederic Valiquette, *a Canadian resident*, as well as Clover Holdings Limited Partnership, a limited company incorporated in St. Vincent and the Grenadines, concerning a website (sex.com), which is managed entirely out of Canada. What is lacking entirely in the present action is any relevant or substantial connections to the United States whatsoever. Accordingly, pursuant to Fed. R. Civ. P. 12(b)(2), Defendants Maximum Apps, Inc. ("Maximum") and Frederic Valiquette ("Mr. Valiquette") move for the dismissal of the Amended Complaint filed by Plaintiff Hydentra HLP Int. Ltd. ("Hydentra"). In support of this Motion, Maximum and Mr. Valuquette state as follows.

## FACTS RELEVANT TO JURISDICTION

Hydentra is a foreign corporation, organized under the laws of the Republic of Cyprus. *Amended Complaint*, ¶1.  Hydentra allegedly owns and operates a number of adult entertainment websites and is the owner of certain copyrights and trademarks on the adult materials displayed at those websites.  *Amended Complaint*, ¶¶17-20.  In its complaint, Hydentra alleges that its intellectual property has been infringed as a result of materials which allegedly appeared at the website located at Sex.com.  *Amended Complaint, passim*.

The domain name Sex.com is registered to Clover Holdings, Inc. ("Clover") *Valiquette Affid*., ¶2.  Clover purchased the domain name in 2010 from its former owner, Escom, Ltd. in the course of a bankruptcy proceeding.  *See Valiquette Affid*., ¶2 and Exhibit 1 hereto.

Neither Maximum nor Mr. Valiquette have any ownership interest in Clover.  *Valiquette Affid*., ¶3.  Neither Maximum nor Mr. Valiquette have any ownership interest in the domain name www.sex.com.  *Valiquette Affid*., ¶4.  Neither Maximum nor Mr. Valiquette are responsible for the registration of the sex.com domain, nor is either the registrant of the domain.  *Valiquette Affid*., ¶¶5-6.  Neither Maximum nor Mr. Valiquette are party to the registration agreement between Network Solutions and Clover.  *Valiquette Affid*., ¶7.  Neither Maximum nor Mr. Valiquette are responsible for Clover's selection of Perfect Privacy, LLC, nor are either party to the agreement between Perfect Privacy and Clover.  *Valiquette Affid*., ¶8.

Maximum and Clover are completely and entirely separate entities: they do not have common ownership, nor do they have common management.  *Valiquette Affid*., ¶10.  The only relationship that exists between Maximum and Clover is a contractual one: Maximum and Clover are each party to a Website Management Agreement, under which Maximum agreed to manage the website that a visitor sees upon typing the domain name www.sex.com into an

2

internet browser.  *Valiquette Affid*., ¶11.  Maximum remits a portion of its advertising revenue to Clover.  *Id..*

The Sex.com website is managed entirely from Canada.  *Valiquette Affid*., ¶13. Maximum's employees are all located in Canada.  *Valiquette Affid*., ¶14.  The programmers who provide services to Maximum are all located in Canada.  *Id*.  *The servers that store the files displayed on Sex.com are all located in Canada.  Valiquette Affid*., ¶15.  The hosting company that hosts the Sex.com website is located in Canada.  *Valiquette Affid*., ¶16.  Sex.com's DMCA agent is a Canadian attorney.  *Valiquette Affid*., ¶17 and Exhibit 1 to the *Valiquette Affid.*

The website located at sex.com is, in essence, simply an electronic bulletin board where users can post, or "pin," adult-themed photos and videos.  *Valiquette Affid*., ¶18.  The Sex.com website's content is user-generated: visitors to the site can "pin" their favorite images, videos, or animation files.  *Valiquette Affid*., ¶19.  Although Maximum does not generally refer to the website as such, the media have taken to referring to the Sex.com website as "the pinterest of porn" because the site's functionality (user-generated content that is "pinned" to an electronic bulletin board) is very similar to that of the mainstream social networking and content sharing website, Pinterest.com.  *Valiquette Affid*., ¶20.

Maximum derives the vast majority of its revenues from advertising that appears on the Sex.com website in one form or another.  *Valiquette Affid*., ¶21.  Banner advertisements and block advertisements appear at the Sex.com website, as do pop-up and pop-under windows, which link to third party websites.  *Valiquette Affid*., ¶22.  The vast majority of the advertising that appears on the Sex.com website is sold through advertising brokers.[1]  *Valiquette Affid*., ¶23.

---

[1] A small percentage of ads are sold directly when an advertiser, looking to advertise on the Sex.com website, contacts Maximum directly.  The advertising purchaser then buys the right to display whatever it chooses in the space provided on the Sex.com website.  *Valiquette Affid*., ¶23.

In other words, Maximum enters into agreements with advertising brokers who, in turn, sell the advertising space on the Sex.com website to clients around the globe. *Valiquette Affid.*, ¶24. The overwhelming majority of these brokers are located outside of the United States. *Valiquette Affid.*, ¶25.

Although it is possible for advertisers to contract to have their ads be targeted to viewers in a particular country – and some undoubtedly do – this "geolocation" has almost always been performed (when it's performed at all) by the advertising brokers, and not Maximum[2] *Valiquette Affid.*, ¶26. To be clear, the advertising at issue is *not promoting the Sex.com website*, but rather is promoting the websites and/or products of third-parties. *Valiquette Affid.*, ¶27. Maximum does not select what advertising is displayed on the Sex.com website, nor does it decide where in the world that advertising is displayed, instead, those decisions are made by the advertisers who buy advertising. *Valiquette Affid.*, ¶28.

A very small amount of Maximum's income (less than 1%) is derived from affiliate agreements Maximum has with other websites and companies. *Valiquette Affid.*, ¶29. If a user clicks on an affiliate link on the Sex.com website, Maximum gets a small payment from the website to which the user was directed. *Valiquette Affid.*, ¶30. Finally, a small amount of Maximum's income comes from payments from third parties who offer "white label" premium memberships through the Sex.com website.[3] *Valiquette Affid.*, ¶31. White label memberships, which are very common within the online adult entertainment industry, utilize the Sex.com logo, but are created, maintained, and run by a third party. *Valiquette Affid.*, ¶32. The memberships

---

[2] Maximum has been able to identify only a single instance in which it was asked directly to provide "geolocated" advertising. *Valiquette Affid.*, ¶XX.

[3] "A white label product or service is a product or service produced by one company (the producer) that other companies (the marketers) rebrand to make it appear as if they made it." *Fraserside IP L.L.C. v. Netvertising Ltd.*, 2012 U.S. Dist. LEXIS 180949 (N.D. Iowa Dec. 21, 2012).

are not with Maximum or the Sex.com website, but rather the third-party provider.  *Valiquette Affid*., ¶33.  The third party provider of white label memberships is also a Canadian company. *Valiquette Affid*., ¶34.

Maximum does **not** charge users a membership fee, does not require users to register or join in order to view photos or videos, and does not sell **any** products to consumers.  *Valiquette Affid*., ¶35.  Maximum does not aim its website at any particular country, but rather the website is aimed at the entire world of internet users.  *Valiquette Affid*., ¶36.  Indeed, the Sex.com website has visitors from more than 230 countries around the world.  *Valiquette Affid*., ¶37.

Maximum has never had a presence or significant contacts with the United States. *Valiquette Affid*., ¶38.  Maximum does not have (and has never had) any employees in the United States.  *Valiquette Affid*., ¶39.  Maximum does not have (and has never had) a bank account in the United States.  *Valiquette Affid*., ¶40.  Maximum does not own or lease (and has never owned or leased) real estate in the United States.  *Valiquette Affid*., ¶41.  Maximum does not pay (and has never paid) taxes in the United States.  *Valiquette Affid*., ¶42.  Maximum does not have (and has never had) an agent for the service of process in the United States.  *Valiquette Affid*., ¶43. Maximum does not have (and has never had) a telephone number in the United States. *Valiquette Affid*., ¶44.

Mr. Valiquette has never had significant contacts with the United States.  *Valiquette Affid*., ¶45.  He does not live (and has never lived) in the United States.  *Valiquette Affid*., ¶46. He does not maintain (and has never maintained) a bank account in the United States.  *Valiquette Affid*., ¶47.  He does not pay (and has never paid) taxes in the United States.  *Valiquette Affid*., ¶48.  He does not have (and has never had) a telephone number in the United States.  *Valiquette*

*Affid.*, ¶49.  Mr. Valiquette visits to the United States have been limited to short family vacations and to attend trade conventions.  *Valiquette Affid.*, ¶50.

Mr. Valiquette is not the owner of Maximum, although he does have an indirect beneficial interest in the Company.  *Valiquette Affid.*, ¶55.  Although Mr. Valiquette is the President of Maximum, he is not in charge of the company's day-to-day operations.  *Valiquette Affid.*, ¶56.

<u>**ARGUMENT**</u>

### I.   <u>Legal Standard</u>

"A court must dismiss an action against a defendant over which it has no personal jurisdiction."  *H.E.R.O., Inc. v. Self*, 2012 U.S. Dist. LEXIS 69044, *4 (S.D. Fla. May 17, 2012) (quoting *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1323-24 (M.D. Fla. 2011)).  "To withstand a motion to dismiss, the plaintiff must plead sufficient facts to establish a prima facie case of jurisdiction over the non-resident defendant's person."  *Id.* (citing *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x 623, 625 (11th Cir. 2010)).

If the plaintiff meets its pleading burden, the defendant can challenge the plaintiff's allegations through affidavits or other competent evidence.  *H.E.R.O., Inc. v. Self*, at *4.  "Once the defendant has presented sufficient evidence, 'the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents.'"  *Las Vegas Prof'l Football L.P. v. Shade*, 2010 U.S. Dist. LEXIS 50738, 2-3 (S.D. Fla. May 17, 2010) (citations omitted).  "The plaintiff must do more than merely reiterate the factual allegations in the complaint."  *H.E.R.O., Inc. v. Self*, at *4.  "It goes without saying that, where the defendant challenges the court's exercise of personal jurisdiction, the plaintiff bears the ultimate burden of establishing that personal jurisdiction is present."  *Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009).

## II.    The Complaint Must Be Dismissed as the Court Lacks Personal Jurisdiction Over Canadian Company Maximum Apps, Inc.

Hydentra alleges that Maximum is subject to personal jurisdiction pursuant to Fed. R.

Civ. P. 4(k)(2).[4]  *Amended Complaint*, ¶ 13.  Rule 4(k)(2) "allows a federal district court to

exercise personal jurisdiction over a foreign defendant when (1) the claim at issue arises under

federal law, and (2) exercising jurisdiction is consistent with the Constitution and laws of the

United States."[5]  *Schulman v. Institute for Shipboard Education,* 2015 U.S. App. LEXIS 14438

(11th Cir. 2015) (citations omitted).

In the present case, it is undisputed that the Plaintiff's claims arise under federal law,[6]

leaving the only inquiry under 4(k)(2) whether or not this Court's exercise of personal

jurisdiction over Maximum is constitutionally permissible.  In making this determination, the

Court examines two types of personal jurisdiction – general jurisdiction and specific jurisdiction

– to see if the requirements of either are met.  In the present case, the Plaintiff cannot come even

remotely close to proving that either form of personal jurisdiction is appropriate.[7]

### A.    Maximum is Not Subject to General Jurisdiction in the US

The United States Supreme Court has recently reiterated that an exercise of general

jurisdiction over a foreign defendant is permissible only in the most "exceptional" of

circumstances.  *Daimler AG v. Bauman*, 134 S.Ct. 746, 761, n. 19 (2014).  *See, also, Schulman,*

---

[4] Oddly, Hydentra also alleges that jurisdiction is proper under 28 U.S. C. §1391 and 28 U.S.C. §1400(a).  *Amended Complaint*, ¶¶ 13, 16.  Section 1391 deals with venue, not jurisdiction, and does not provide a basis for personal jurisdiction.  Similarly, Section 1400(a) is also a venue provision which provides that a copyright action may be instituted in any district in which the defendant or its agents are found.  Section 1400(a) does not provide a basis for personal jurisdiction and, even if it did, neither Maximum nor Mr. Valiquette are located in Florida, nor do they have agents located there.

[5] Courts have also noted that Rule 4(k)(2) is inapplicable if the foreign defendant identifies another U.S. District Court where jurisdiction is appropriate.  *See, e.g., Health Sci. Distribs., Co. v. Usher-Sparks*, 2012 U.S. Dist. LEXIS 36310 (M.D. Fla. 2012).  In the present case, Maximum and Mr. Valiquette do not contend that there is a more appropriate US District Court.

[6] With the exception of one claim which arises under Florida law.

[7] This Court has held previously that both a general and specific jurisdiction analysis is appropriate under Rule 4(k)(2).  *Jackson v. Grupo Industrial Hotelero, S.A.*, 2008 U.S. Dist. LEXIS 88922, *23-24 (S.D. Fla 2008).

*supra*.  Indeed, the *Daimler* court discussed at length how, in modern jurisprudence, the entire concept of general jurisdiction has "come to occupy a less dominant place," because of the strict limitations on the exercise of such jurisdiction.  *Id*. at 758.

Under *Daimler*, a court may only exercise general or "all-purpose" jurisdiction over a foreign corporation when the foreign corporation's connections with the relevant jurisdiction (here, the United States) are so "constant and pervasive as to render it essentially at home in the forum state."  *Id*. at 754 (citations and internal quotation marks omitted).  The connections must be so "continuous and systematic as to render the [foreign corporation] . . . comparable to a domestic enterprise in that [forum]."  *Id*. at 758, n.9 (citations and internal quotation marks omitted).  *See also Carmouche v*. *Tamborlee Mgmt*., 789 F.3d 1201, 1205 (11th Cir. 2015) ("A foreign corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business.").

In the present case, the Plaintiff makes precious few allegations in support of its assertion of personal jurisdiction, improperly aggregates those allegations over all the named defendants, fails to support (and cannot support) certain of its allegations, and, ultimately, fails to prove sufficient contacts by the defendants with the United States to support this court's exercise of personal jurisdiction.  Specifically, the Plaintiff's allegations (against any defendant) in support of its assertions that this Court may exercise jurisdiction over the Defendants are:

1.      That the Defendants registered the Sex.com domain name through Network Solutions, LLC, a company located in Florida, *Amended Complaint*, ¶5;

2.      That, by registering a domain through Network Solutions, LLC, the Defendants agreed to personal jurisdiction in Florida as a result of a forum selection clause contained in Network Solutions' click-through standard terms of service, *Id*.;

3.      That the Defendants utilized the privacy services of Perfect Privacy, LLC, which is also a company located in Florida, *Id*. at ¶6;

4.      That the Defendants registered for trademark protection for the "sex.com" mark, *Id*. at ¶7;

5.      That the Defendants registered their DMCA agent with the United States Copyright Office, *Id*. at ¶8;

6.      That the Defendants contract with United States advertisers, who, in turn, use geotracking to target their advertising to specific states, *Id*. at ¶9;

7.      That the Sex.com website receives a significant amount of traffic from the United States, *Id*. at ¶10; and

8.      That the Defendants "transact business" within the United States by virtue of operating the Sex.com website, *Id*. at ¶11.

As a starting point, the Plaintiff's attempt to aggregate the contacts of all of the Defendants is wholly and utterly impermissible. "Each defendant's contacts with the forum state must be assessed individually rather than simply viewing them collectively." *Calder v. Jones*, 465 U.S. 783, 790 (1984). *See also Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980) ("The Minnesota court also attempted to attribute State Farm's contacts to Rush by considering the 'defending parties' together and aggregating their forum contacts in determining whether it had jurisdiction. The result was the assertion of jurisdiction over Rush based solely on the activities of State Farm. Such a result is plainly unconstitutional."); *Keeton v. Hustler Magazine, Inc.*, 465

U.S. 770, 781 (1984) ("Each defendant's contacts with the forum State must be assessed individually."); *Celorio v. Google, Inc.*, 872 F. Supp. 2d 1327 (N.D. Fla. 2012) (same); *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1324 (M.D. Fla. 2011) ("In assessing personal jurisdiction, each defendant's contacts with the forum state must be weighed individually."); *E-One, Inc. v. R. Cushman & Assocs.*, 2006 U.S. Dist. LEXIS 67617 (M.D. Fla. 2006) ("Each defendant's contacts with the forum State must be assessed individually rather than simply viewing them collectively.").[8]

     With respect to the first four listed contacts, none apply to Maximum[9]: Maximum is not the owner or registrant of the Sex.com domain name (*see* Valiquette Affid., ¶6), did not register

---

[8] This is such a basic and fundamental proposition of jurisdictional law that it is difficult to believe that the Plaintiff is ignorant of the principle. Certainly, once Defendant Clover filed its Motion to Dismiss (Docket No. 24), discussing this issue, Hydentra was on notice of the glaring deficiency in its pleading. Nevertheless, Hydentra ignored the issue in its Opposition (Docket No. 31) and continued to attempt to aggregate the Defendants' alleged contacts with the United States.

[9] Even if this were not the case, these contacts would not support a finding of general personal jurisdiction. *See, e.g., Associated Transport Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070, 1075 (11th Cir. 1999) ("[A] party's purchases in the United States are never enough to justify jurisdiction." (*citing Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408 (1984))); *Frasier v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) ("When a defendant's contacts with the United States are confined to intermittent purchases, limited self-promotion, and a few narrow relationships with American businesses, the exercise of nationwide general jurisdiction would 'offend traditional notions of fair play and substantial justice.'" (*citing Helicopteros, supra*)); *Celorio v. Google, Inc.*, 872 F. Supp. 2d 1327, 1333-34 (N.D. Fla. 2012) ("[T]o extend jurisdiction in Florida to any company that contracts with Google, an international corporation, would thwart the due process protections that underlie the personal jurisdiction analysis."); *MPS Entertainment, LLC v. Sorrentino*, 2013 U.S. Dist. LEXIS 141307, *9 (S.D. Fla. 2013) (holding that a forum selection clause contained in the agreement between the parties was not sufficient to confer personal jurisdiction where there was no separate independent basis for such jurisdiction (and cases cited therein)); *LG Display Co., LTD. v. Obayashi Seikou Co., LTD*, 919 F. Supp. 2d 17, 27 (D.D.C. 2013) ("[A] party's contacts with government agencies do not enter the jurisdictional calculus. . . . Thus, Tanaka did not make any meaningful contact with the District of Columbia by submitting patent applications with the U.S. Patent and Trademark Office."); *Liberty Media Holdings, LLC v. Letyagin, et al.*, Civil No. 11-62107-CV-Williams (S.D. Fla. Dec. 14, 2011) ("The Court agrees that merely registering a domain name with a company in Florida is insufficient to support general jurisdiction over the website's operator."); *Graduate Mgmt. Admission Council v. Raju,* 241 F. Supp. 2d 589, 595 (E.D. Va. 2003) ("[M]ere registration of the domain name with a company located in Virginia does not support personal jurisdiction in this state"); *See, e.g., Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 223 (4th Cir. 2002) ("[T]he mere act of registering the Domain Names in Virginia was deemed insufficient to provide personal jurisdiction."); *Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d 589, 595 (E.D. Va. 2003) ("First, mere registration of the domain name with a company located in Virginia does not support personal jurisdiction in this state."); *America Online, Inc. v. Huang*, 106 F. Supp. 2d 848, 856-57 (E.D. Va. 2000); *Heathmount A.E. Corp. v. Technodome.com*, 106 F. Supp. 2d 860, 867 (E.D. Va. 2000); *Proprietors of Strata Plan No. 36 v. Coral Gardens Resort Mgmt., Ltd.*, 2009 U.S. Dist. LEXIS 97704 (E.D. Va. 2009).

the domain name, www.Sex.com (*id. at* ¶5), did not enter into the registration agreement with

Network Solutions (*id. at* ¶7), did not agree to the forum selection clause in the Network

Solutions agreement (*id. at* ¶7), did not enter into the privacy agreement with Perfect Privacy (*id.*

*at* ¶8), and did not apply for the registration for the sex.com trademark (*id. at* ¶9.  *See also*

Exhibit 2 hereto, demonstrating that not even defendant Clover applied for the trademark for

sex.com).

With respect to the remaining four factors (which actually apply to Maximum), none can

support a finding of general jurisdiction.

*Listing of DMCA Agent*

First, with respect to the registration of an agent to receive DMCA takedown notices, it

cannot be stressed enough that the agent appointed by Maximum *was himself located in Canada,*

*not the United States*.  Even when a foreign corporation *has* appointed an agent within the

relevant jurisdiction, courts have routinely rejected that contact as a sufficient basis for an

exercise of personal jurisdiction.  *See, e.g., Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d

1286, 1293 (11th Cir. 2000) ("Courts of appeals that have addressed this issue have rejected the

argument that appointing a registered agent is sufficient to establish general personal jurisdiction

over a corporation."); *Chipman, Ltd. v. Thomas B. Jeffery Co.*, 251 U.S. 373, 379 (1920)

("Unless a foreign corporation is engaged in business within the State, it is not brought within

the State by the presence of its agents."); *Sofrar, S.A. v. Graham Engineering Corp.*, 35 F. Supp.

2d 919, 921 (S.D. Fla.1999) (finding no general jurisdiction under Florida's long-arm statute,

even though defendants appointed an agent for service of process and were registered to do

business in the state).

Instead, the Plaintiff asserts that the mere act of *listing* of a Canadian-based DMCA agent with the United States Copyright Office's directory of DMCA agents is a sufficient - or relevant - contact with the United States for jurisdictional purposes.[10]  It is neither.  *See, e.g., LG Display Co., LTD. v. Obayashi Seikou Co., LTD*, 919 F. Supp. 2d 17, 27 (D.D.C. 2013) ("Stated simply, a party's contacts with government agencies do not enter the jurisdictional calculus."); *Freiman v. Lazur*, 925 F. Supp. 14, 24 (D.D.C. 1996) (government contacts doctrine prevented the exercise of personal jurisdiction when the defendant applied to register a copyright with the U.S. Copyright Office in Washington, D.C.); *Mgmt. Insights, Inc. v. CIC Enters., Inc.*, 2001 U.S. Dist. LEXIS 24221 (D. Tex. 2001) ("[W]ere the Court to assume, arguendo, that CIC does have regular and continuous contact with the DOL, the Court finds that the government contacts exception to personal jurisdiction applies to restrict the Court from premising extension of jurisdiction over CIC on its contacts with a governmental entity."); *Lamb v. Turbine Designs, Inc.*, 41 F. Supp. 2d 1362, 1365 (N.D. Ga. 1999) ("Rooted in the constitutional right to petition the government and first recognized in the District of Columbia, the 'governmental contacts' principle prevents a court from exercising jurisdiction based solely on a defendant's contact with a federal instrumentality.").

### Advertisers and "Geolocation"

Next, Hydentra alleges that Maximum has contracted with advertisers in the United States (who advertise on the Sex.com website, not the other way around) and that such contacts

---

[10] Ironically, adoption of the Plaintiff's position would be counter to public policy and defeat the *protections* provided to rightsholders under the DMCA.  Congress enacted the DMCA to "foster cooperation among copyright holders and service providers in dealing with infringement on the Internet. . . .  These considerations are reflected in Congress' decision to enact a notice and takedown protocol encouraging copyright holders to identify specific infringing material to service providers."  *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1021-22 (9th Cir. 2013).  If a foreign website-operator subjects itself to jurisdiction within the United States simply by virtue of designating a DMCA agent, the website operator will have strong incentive not to do so, thwarting the purposes of the DMCA.

justify an exercise of general personal jurisdiction.  Preliminarily, Hydentra is wrong about how advertisers come to advertise on the Sex.com website: for the most part, Hydentra enters into agreements with advertising brokers, the vast majority of whom are located outside the United States, and those brokers sell advertising space to clients around the globe.  *Valiquette Affid.*, ¶¶23-24.  Although Maximum has, over the years, entered into occasional agreements with advertising brokers located in the United States (and some direct advertisers), such minimal contacts cannot support a finding of general jurisdiction.  *See, e.g. Frasier v. Smith*, 594 F3d 842, 847, 850 (11th Cir. 2010) ("A defendant does not confer general jurisdiction on the courts of Florida by occasionally soliciting business there." "When a defendant's contacts with the United States are confined to intermittent purchases, limited self-promotion, and a few narrow relationships with American businesses, the exercise of nationwide general jurisdiction would 'offend traditional notions of fair play and substantial justice.'" (*citing Helicopteros, supra*)); *Associated Transport Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070, 1075 (11th Cir. 1999) (denying jurisdiction under Rule 4(k)(2) and collecting cases in which extensive purchases and sales in a forum were insufficient to establish general jurisdiction); *Tarasewicz v. Royal Caribbean Cruises, Ltd.*, 2015 U.S. Dist. LEXIS 84779 (S.D. Fla. June 30, 2015) ("The fact that a foreign defendant contracts with a Florida resident is not enough to establish personal jurisdiction over the foreign defendant.").

> *U.S. Visitors to Website*

1.      Hydentra next argues that Maximum is subject to general personal jurisdiction in the United States based on the percentage of visitors to the Sex.com website who come from the United States.  Preliminarily, Hydentra again has its facts wrong.  Although Hydentra alleges that "upon information and belief, over 40% of Sex.com's viewers are in the United States"

(*Amended Complaint*, ¶10), the actual number is approximately 16%. *Valiquette Affid.* ¶51. In support of its assertion, Hydentra produced (attached to its opposition to Clover's Motion as Exhibit H) a printout from a site called "similarweb.com," which purports to show web traffic to the Sex.com website during the month of August 2015. Docket No. 31, p. 74. On its face, Hydentra's exhibit is misleading (even if not intentionally so): it purports to present an "estimate" of web traffic from desktop computers only, although that reference actually refers to desktop computers and more modern smart phones that utilize a particular software protocol (HTML) to access the web. And, although the majority of U.S. web traffic comes from such devices, much of the world (ignored by Hydentra's exhibit) utilize an earlier protocol known as "WAP" or Wireless Access Protocol.[11]

As the Court can see from the Google Analytics reports (attached to Mr. Valiquette's affidavit as Exhibits 2 and 3), during the month of August 2015, approximately 13.6 million visitors accessed the Sex.com website from desktop computers and the more modern HTML smart phones, while 11.4 million visitors accessed the Sex.com website from a wireless WAP device. *Id*. While the Google Analytics reports indicate that 26.38% of desktop and smart phones users were from the United States, only 3.75% of wireless WAP users were from the United States, resulting in an average of 16% of total users in August 2015 coming from the United States. During the same period, the average percentage of visitors from India was 23% and the Sex.com website had visitors from over 230 different countries. *Id*.

Even putting aside the precise numbers, however, this Court (and others) have rejected the argument that a foreign defendant may be subject to general personal jurisdiction in the United States based on a website that garners significant traffic from the United States. *See, e.g.,*

_____

[11] Ironically, it is Hydentra that seems to display a US-focus while Maximum and Sex.com are clearly global in their focus.

*Liberty Media Holdings, LLC v. Letyagin, et al.*, Civil No. 11-62107-CV-Williams (S.D. Fla. Dec. 14, 2011) ("Plaintiff contends that Defendant has 'considerable' web traffic originating from the United States and has presented an exhibit showing that fifteen percent of the visitors to the website are from the United States.  Precedent, however, establishes that maintaining a website accessible to users in a jurisdiction does not subject a defendant to be sued there: those users must be directly targeted, such that the defendant can foresee having to defend a lawsuit . . . ." (and cases cited therein)).

The Federal District Court for the Northern District of Iowa was recently faced a similar flurry of lawsuits alleging facts nearly-identical to those alleged in this action.[12]  The undersigned *pro hac vice* counsel represented the defendants in seven such suits and, in each of those actions, the District Court dismissed the complaints after extensively examining both general and specific jurisdiction and finding that an exercise of personal jurisdiction was constitutionally impermissible.  *See, e.g., Fraserside IP L.L.C. v. Hammy Media, LTD,* 2012 U.S. Dist. LEXIS 5359 (N.D. Iowa Jan. 17, 2012) (rejecting personal jurisdiction despite allegations that "xHamster's website www.xHamster.com is visited daily by over 1,500,000 internet users worldwide with roughly 20 percent of the site's visitors being from the United States"); *Fraserside IP, L.L.C. v. Youngtek Solutions, Ltd.,* 2013 U.S. Dist. LEXIS 3779 (N.D. Iowa Jan. 10, 2013) (allegations that "17 to 20 percent of visitors to Youngtek's websites are U.S. citizens"); *Fraserside IP L.L.C. v. Netvertising Ltd.,* 2012 U.S. Dist. LEXIS 180949 (N.D. Iowa Dec. 21, 2012) (allegations that "16.7% percent of HardSexTube's website's daily visitors are

---

[12] Over the last six months, Hydentra has filed 17 near-identical lawsuits against the owners and operators of adult websites, four of which have been filed in this Court and many of which have named foreign defendants.  The motivation for Hydentra is clear: while its Met-Art.com website sells subscriptions for $8.34 a month, it can pressure foreign companies to pay tens of thousands of dollars in settlements to avoid having to defend themselves in foreign courts which lack jurisdiction.  Undoubtedly, if Hydentra is successful in its revenue-generating strategy, the Court can expect Hydentra's case filings to increase exponentially.

from the United States"); *Fraserside IP L.L.C. v. Letyagin*, 885 F. Supp. 2d 906 (N.D. Iowa

2012) (allegations that "eighteen percent of SunPorno's website's 2,500,000 daily visitors are

from the United States); *Fraserside IP L.L.C. v. Youngtek Solutions Ltd.*, 2012 U.S. Dist. LEXIS

98041 (N.D. Iowa July 16, 2012) (allegations that "the EmpFlix.com website is allegedly visited

daily by over 1,500,000 internet users worldwide with approximately 16.9 percent of the site's

visitors coming from the United States. The TNAFlix.com website is allegedly visited daily by

over 3,000,000 internet users worldwide with approximately 21.5 percent of the site's visitors

coming from the United States"). The same result should obtain in the present case (which is

presented on near-identical allegations).

### Operation of Website

Finally, Hydentra contends that jurisdiction over Maximum is proper simply because it

operates a website accessible within the United States. Here, too, Hydentra is mistaken. *See,

e.g., MPS Entertainment, LLC v. Sorrentino*, 2013 U.S. Dist. LEXIS 141307, *14-15 (S.D. Fla.

2013) ("It appears that Plaintiffs also argue that HAO's operation of a website constitutes

sufficient activity with the State of Florida to support the finding of general jurisdiction over

HAI. . . .  I disagree" (and numerous cases collected therein)); *Frasier v. Smith, supra* at 847

("Though the maintenance of a website is, in a sense, a continuous presence everywhere in the

world, J&B Tours' Internet contacts with Florida were no in any way substantial." (internal

quotations and citations omitted)); *Liberty Media Holdings, LLC v. Letyagin, et al.*, Civil No. 11-

62107-CV-Williams (S.D. Fla. Dec. 14, 2011) ("Precedent, however, establishes that

maintaining a website accessible to users in a jurisdiction does not subject a defendant to be sued

there: those users must be directly targeted, such that the defendant can foresee having to defend

a lawsuit . . . ." (and cases cited therein)).

B.      Maximum is Not Subject to Specific Jurisdiction in The United States

In order to assert specific personal jurisdiction over Maximum in the United States,

Hydentra must demonstrate that an exercise of such jurisdiction comports with the requirements

of Due Process under the United States Constitution.[13]  The Eleventh Circuit Court of Appeals

has outlined a three-stage analysis to determine if an exercise of specific personal jurisdiction

comports with the requirements of Due Process: "First, the Defendant must have contacts related

to or giving rise to the plaintiff's cause of action.  Second, the defendant must, through those

contacts, have purposely availed itself of forum benefits.  Third, the defendant's contacts with

the forum must be such that it could reasonably anticipate being haled into court there." *Frasier

v. Smith,*594 F.3d 842, 850 (11th Cir. 2010).

In the present case, Hydentra cannot meet (and has not met any of the three required

factors.

Causation

"The Court considers, first, whether the plaintiff's claims arise out of or relate to at least

one of the defendant's contacts with the forum.  This inquiry focus[es] on the direct causal

relationship between the defendant, the forum, and the litigation." *Tobinick v. Novella,* 2015

U.S. Dist. LEXIS 8085, 16-17 (S.D. Fla. Jan. 23, 2015)(internal citations and quotation marks

omitted).

---

[13] Hydentra seems to misunderstand its own basis for personal jurisdiction under Rule 4(k)(2).  In its opposition to Clover's Motion to Dismiss, Hydentra dedicates extensive argument to its assertion that it can meet the requirements of Florida's long arm statute.  Putting aside the fallacy of Hydentra's arguments, they are, more importantly, moot. Rule 4(k)(2) is itself a long-arm statute, applying to the United States as a whole.  *Meyer v. Carnival Corp.*, 2013 U.S. Dist. LEXIS 53455, 31-32 (S.D. Fla. 2013)(holding that Rule 4(k)(2) "gives a court 'personal jurisdiction over foreign defendants for claims arising under federal law when the defendant has sufficient contacts with the nation as a whole to justify the imposition of United States' law but without sufficient contacts to satisfy the due process concerns of the long-arm statute of any particular state.")  Florida's long arm statute is immaterial given that a relevant federal statute governing sevice of process exists.  *See, e.g., Tarasewicz v. Royal Caribbean Cruises, Ltd.*, 2015 U.S. Dist. LEXIS 84779 , *54 (S.D. Fla 2015)(and numerous cases cited under the "Determining Personal Jurisdiction" heading).

Of the scant "contacts" with the United States alleged in the Amended Complaint, the only one which could even conceivably be argued as having a direct causal relationship to Hydentra's claims is Hydentra's allegation that Maximum operates a website which is accessible within the United States and that Hydentra's works have been infringed on that website.

This allegation is insufficient to establish a link between Maximum's alleged contact with the United States and Hydentra's claim because Hydentra has not taken the next causal step: nowhere does Hydentra allege that any of its works were infringed by any user within the United States.  This omission is fatal.

"Federal copyright law has no extraterritorial effect, and cannot be invoked to secure relief for acts of infringement occurring outside the United States." *Palmer v. Braun*, 376 F.3d 1254, 1258 (11th Cir. 2004)(*citing Subafilms, Ltd. v. MGM-Pathe Communications*, 24 F.3d 1088, 1091 (9th Cir. 1994) (en banc).  "Thus, it is only where an infringing act occurs in the United States that the infringement is actionable under the federal Copyright Act, giving the federal courts jurisdiction over the action." *Id. See also Foreign Imported Prods. & Publ., Inc. v. Grupo Indus. Hotelero, S.A.*, 2008 U.S. Dist. LEXIS 108705 (S.D. Fla. Oct. 24, 2008)("Federal copyright law has no extraterritorial effect, and therefore it is only where an infringing act occurs in the United States that the infringement is actionable under the federal Copyright Act, giving the federal courts jurisdiction over the action. …Stated another way, district courts do not have subject matter jurisdiction over infringing acts that took place 'wholly outside' the United States or 'entirely overseas.'")

Accordingly, the only legitimate claim for infringement that Hydentra could hope to bring would be one in which some portion of the alleged infringement occurred within the United States.  Hydentra fails to allege any contacts by Maximum with the United States that

resulted in infringing activity occurring within the United States and, as such, there is no causal

relationship between Maximum's operation of the Sex.com website and any legitimate claim

which might be brought by Hydentra.

<u>Purposeful Availment</u>

Even if the operation of the Sex.com website could be seen to give rise to Hydentra's

cause of action, specific jurisdiction could not be exercised over Maximum because Maximum

has not purposefully availed itself of the benefits of the forum.  Where an intentional tort such as

copyright infringement is alleged, the most appropriate test of whether a defendant has

purposefully availed itself of the forum's benefits is the *Calder* effects test.  *Tobinick v. Novella*,

2015 U.S. Dist. LEXIS 8085, 21-22 (S.D. Fla. Jan. 23, 2015).  *See also Oldfield v. Pueblo De*

*Bahia Lora, S.A.*, 558 F.3d 1210, 1221 (11th Cir. 2009) ("A different test, however, applies in

cases involving intentional torts. In those instances, the applicable test is the "effects" test

utilized in *Calder v. Jones* . . . .")  "The Calder 'effects' test is satisfied where the tort was

intentional; aimed at the forum state; and caused harm that the defendant should have anticipated

would be suffered in that state." *Tobinick, supra* at 22.

In the present case, Hydentra cannot reasonably argue that Maximum, by maintaining a

website accessible anywhere in the world, has expressly aimed the Sex.com website at the

United States.  This precise contention has been repeatedly rejected by Federal Courts both here

and elsewhere.  *See, e.g., Liberty Media Holdings v. Letyagin, supra* ("Plaintiff has not shown

that Defendant's conduct can, in line with the Constitution, subject it to jurisdiction in this forum.

Plaintiff contends that Defendant has 'considerable' web traffic originating from the United

States and has presented an exhibit showing that fifteen percent of the visitors to its website are

from the United States. . . .   Precedent, however, establishes that maintaining a website

19

accessible to users in a jurisdiction does not subject a defendant to be sued there; those users must be directly targeted, such that the defendant can foresee having to defend a lawsuit. . . . Here, Plaintiff has alleged that Defendant's website receives traffic and business from United States customers but has not met its burden of showing that Defendant did anything to target customers from the United States or even that anyone from the United States made a purchase on Defendant's website"); *Instabook Corp. v. Instapublisher.com*, 469 F. Supp. 2d 1120, 1127 (S.D. Fla. 2006) (finding insufficient contacts in a patent infringement case since, among other reasons, "Defendant could not reasonably anticipate being haled into court in Florida based on its operation of interactive websites accessible in Florida and its sales to two Florida residents" in the absence of "targeting or solicitation of Florida residents."); *Zamora Radio, LLC v. Last.FM, Ltd.*, 2011 U.S. Dist. LEXIS 69101 (S.D. Fla. 2011) (rejecting jurisdiction over foreign defendants who operate a highly interactive website because none of the activities were specifically aimed at Florida, as opposed to users of the internet world-wide); *Turi v. Stacey*, 2014 U.S. Dist. LEXIS 181228, 40-42 (M.D. Fla. Nov. 25, 2014)("Courts have stated that the focus of due process analysis should properly remain on traditional jurisdictional principles even where the lawsuit involves Internet activity. …Courts in this District have noted that 'the fact that the website of a company that sells products in Florida can be reached via a link on Defendants' website is too narrow a thread on which to find meaningful 'contact' for the purposes of due process'")(internal citations omitted); *Dynetech Corp. v. Leonard Fitness, Inc.*, 523 F. Supp. 2d 1344, 1347-1348 (M.D. Fla. 2007)("It is undisputed that Defendant Justin Leonard is an Arizona resident and that his corporation, Defendant Leonard Fitness, Inc., is a Nevada corporation…It is also undisputed that the subject websites were created in, and are operated from, Arizona. …Plaintiffs have not presented any evidence of any purposeful availment of the

privilege of conducting activities in Florida. While these websites likely are as accessible from Florida as they are from any other state or anywhere in the world where Internet access is available, such accessibility does not amount to 'purposeful availment' of conducting activities with Florida.")  *See also Fraserside IP L.L.C. v. Hammy Media, LTD*, 2012 U.S. Dist. LEXIS 5359, 24-25 (N.D. Iowa Jan. 17, 2012) ("Although I accept as true Fraserside's allegations that xHamster intentionally infringed Fraserside's registered copyrights and trademarks, these allegations, alone, fail to demonstrate that xHamster 'uniquely or expressly aimed' its tortious acts at Iowa. . . .  Although xHamster's website is both commercial and interactive, as an Iowa district court noted in a case presenting similar facts, such a website 'is arguably no more directed at Iowa than at Uzbekistan'"); *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) ("If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution."); *Quick Technologies, Inc. v. The Sage Group, PLC*, 313 F.3d 338, 345 (5th Cir. 2002) ("Sage Group's operation of a website containing company and product information and links to U.S. subsidiaries also does not provide sufficient grounds for the exercise of personal jurisdiction."); *Toys "R" Us, Inc. V. Step Two, S.A.*, 318 F.3d 446, 452-54 (3d Cir. 2003) ("[T]he mere operation of a commercially interactive web site should not subject the operator to jurisdiction ... Rather, there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the [jurisdiction]."); *ESAB Group, Inc. v. Centricut, L.L.C.*, 34 F. Supp. 2d 323, 331 (D.S.C. 1999) ("While it is true that anyone, anywhere could access Centricut's home page, including someone in South Carolina, it cannot be inferred from this fact alone that Centricut deliberately directed its efforts toward South Carolina residents."); *Johnson v. Arden*, 614 F.3d 785, 797-98 (8th Cir. 2010) ("[T]he Johnsons have

failed to prove that www.BoutiqueKittens.com is uniquely or expressly aimed at Missouri; thus *Calder* provides no support for their Lanham Act claim.").

There is, however, an even more fundamental reason why Hydentra cannot satisfy the *Calder* effects test.  As noted above, the test requires Hydentra to be able to demonstrate that Maximum aimed its conduct "at the forum… and caused harm that the defendant should have anticipated would be suffered in that [forum]." *Tobinick, supra* at 22.  This is a requirement that Hydentra cannot possibly meet because, by its own admission, Hydentra is not a United States company.  ***As such, even if Hydentra could allege that Maximum had intentionally committed some act of infringement, the harm would be felt not in the United States, but in Cyprus, where Hydentra is actually located.***

<u>Fair Play and Substantial Justice</u>

Finally, the Court would still have to determine whether an exercise of personal jurisdiction over Maximum comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985), *quoting Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 320 (1945).  In making such a determination, the Court weighs the strength of the Plaintiff's case on minimum contacts with the forum such that the defendant should reasonably anticipate being hailed into court there, with other factors which may still counsel against an exercise of jurisdiction.  *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 258-59 (11th Cir. Fla. 1996).

Given that (1) Hydentra is not located within the United States, (2) Maximum has no significant contacts with the United States, and (3) the Sex.com website is accessible anywhere in the world where the internet is available (and, indeed, is viewed in more than 230 countries), Maximum could not have reasonably expected to be haled into Court in the United States and an

exercise of personal jurisdiction over Maximum in the United States would not comport with fair play or substantial justice.

### III.    The Complaint Must Be Dismissed As The Court Lacks Personal Jurisdiction Over Canadian Resident Frederic Valiquette.

Putting aside the allegations concerning Maximum, as a corporate entity, and Clover, as a corporate entity (which Hydrenta improperly attempts to conflate), the Amended Complaint contains a *single* allegation concerning Mr. Valiquette, individually: "Defendant Frederic Valiquette is a resident of Montreal, Canada.  Upon information and belief, Defendant Valiquette directs, controls, and/or assists in determining the content on Sex.com." *Amended Complaint*, ¶4.

Hydentra is partially correct: Mr. Valiquette *is* a resident of Canada (though not Montreal).  Other than that, though, Hydrenta's seemingly random guesses – asserted on information and belief – are pure fiction.  Mr. Valiquette does not "direct or control" the content that appears on the Sex.com website: the content that appears at the website is primarily user generated content, with a small amount of advertising and paid promotional content, which content producers have specifically asked Maximum to post. [14] *Valiquette Affid*., ¶¶57.  Mr. Valiquette has not himself uploaded content to the Sex.com website (much less content alleged to infringe on Hydentra's copyrights or trademarks) (*Valiquette Affid*., ¶¶57) and has no meaningful contacts with the United States whatsoever.

---

[14] Because Mr. Valiquette has, on rare occasions, and in his role as an employee of Maximum: (1) played a role in determining what materials need to be removed from the website in response to takedown notices and (2) interacted with content producers who requested that their materials be posted on the Sex.com website (*Valiquette Affid*., ¶58), there might conceivably be some definition under which it could be said that Mr. Valiquette "assists in determining the content on Sex.com."  Defendants note these facts because they want to be completely accurate in their representations to this Court even though these facts do nothing to aid Plaintiff's jurisdictional arguments.

As is noted above (and verified by his sworn affidavit): Mr. Valiquette does not live (and has never lived) in the United States; he does not maintain (and has never maintained) a bank account in the United States; he does not pay (and has never paid) taxes in the United States; he does not have (and has never had) a telephone number in the United States; and his visits to the United States have been limited to short family vacations and to attend trade conventions.[15]  Mr. Valiquette is not the owner of Maximum, is not in charge of the company's day-to-day operations.

Given the wholesale lack of factual support (or allegations) contained in the Amended Complaint, it is hard to understand how Hydentra even believed it had a good faith basis for asserting a jurisdictional basis (or claims) against Mr. Valiquette.

## <u>CONCLUSION</u>

For the reasons state herein, Maximum and Mr. Valiquette respectfully request that the Amended Complaint be dismissed as against them in accordance with Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

---

[15] *See Vax-D Med. Techs., LLC v. Allied Health Mgmt.*, 2006 U.S. Dist. LEXIS 14340 (M.D. Fla. Mar. 14, 2006)("Florida courts, however, do not consider sporadic or occasional vacations sufficient to bestow personal jurisdiction"); *Radcliffe v. Gyves*, 902 So. 2d 968, 972 (Fla. 4th DCA Dist. Ct. App. 4th Dist. 2005)("Therefore, the only basis for general jurisdiction against the individual board members is his sporadic or occasional family vacations, which we find to be insufficient.")

**Respectfully submitted:**

/s/ Evan Fray-Witzer                          /s/ Brady J. Cobb
Evan Fray-Witzer (# 564349 - *pro hac*       Brady J. Cobb, Esquire
*vice* pending)                               Florida Bar No. 031018
CIAMPA FRAY-WITZER, LLP                        COBB EDDY MIJARES, PLLC
20 Park Plaza, Suite 505                       642 Northeast Third Avenue
Boston, MA 02116                               Fort Lauderdale, Florida 33304
Telephone: (617) 426-0000                      Telephone (954) 527-4111
Facsimile: (617) 423-4855                      Facsimile  (954) 900-5507
Evan@CFWlegal.com                              bcobb@cemlaw.net


/s/ Valentin Gurvits
Valentin D. Gurvits (# 643572 - *pro*
*hac vice* pending)
Matthew Shayefar (# 685927 - *pro*
*hac vice* pending)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Telephone: (617) 928-1804
Facsimile: (617) 928-1802
vgurvits@bostonlawgroup.com
matt@bostonlawgroup.com

*Attorneys for Maximum Apps, Inc.*
*and Frederic Valiquette*


## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served electronically via

the CM/ECF electronic filing system on all counsel or parties of record on the attached service list

this 21st day of September, 2015.


/s/ Brady J. Cobb
Brady J. Cobb

**<u>SERVICE LIST</u>**
**1:15-cv-22463-MGC**

Aaron Behar, Esquire
Jaclyn Behar, Esquire
BEHARBEHAR
1840 North Commerce Parkway
Suite One
Weston, Florida 33326
Telephone: (954) 688-7642
Facsimile: (954) 332-9260
AB@BeharBehar.com
jb@jaclynbentley.com

Spencer D. Freeman, Esquire
Freeman Law Firm, Inc.
1107 ½ Tacoma Avenue South
Tacoma, WA 98402
Telephone: (253) 383-4500
Facsimile: (253) 383-4501
Email: sfreeman@freemanlawfirm.org
***Counsel for Plaintiff***
(Moving for Admission pro hac vice)

John F. O'Sullivan
Allen Paige Pegg
Hogan Lovells US LLP
Brickell World Plaza
600 Brickell Ave.
Suite 2700
Miami, FL 33131
305 459-6651
305-459-6550 (fax)
john.osullivan@hoganlovells.com
allen.pegg@hoganlovells.com

***Counsel for Defendant Clover Holdings Limited Partnership***

26