# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

| | |
|---|---|
| HYDENTRA HLP INT. LIMITED,<br>a foreign corporation d/b/a METART<br><br>    Plaintiff,<br><br>v.<br><br>MAXIMUM APPS INC., a foreign company<br>d/b/a SEX.COM, CLOVER HOLDINGS<br>LIMITED PARTNERSHIP, a foreign<br>company, d/b/a SEX.COM; SEX.COM;<br>FREDERIC VALIQUETTE, an individual,<br>and; John Does 1-20,<br><br>    Defendants. | Case No.<br>**1:15-cv-22463-MGC** |

**DEFENDANTS MAXIMUM APPS. INC.'S AND FREDERIC VALIQUETTE'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND OPPOSITION TO PLAINTIFF'S ALTERNATIVE MOTION[1]**
<u>**FOR JURISDICTIONAL DISCOVERY**</u>

---

[1] Although Plaintiff's attempt to insert a cross-motion into its Opposition is improper and the "alternative motion" is not properly before the Court, the Defendants respond herein.

*"If you can't dazzle them with brilliance, baffle them with bull****."*

-   W.C. Fields

Unable to provide the Court with any legitimate support for its opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Plaintiff Hydentra HLP INT. Limited ("Plaintiff") instead turns to an age-old litigation tactic: if you can't provide the Court with quality, overwhelm it with quantity.  Plaintiff's gambit is clear – it is hoping to persuade the court by dint of the sheer *volume* of its submissions that there must be *some* basis for its assertion of personal jurisdiction in this Court over Maximum Apps., Inc. ("Maximum") and Frederic Valiquette ("Mr. Valiquette").  There is not.  Instead, Plaintiff relies solely on misstatements of law and demonstrably false assertions of "fact."  It is conduct that should not be countenanced, much less rewarded. In further support of their Motion to Dismiss, Defendants state as follows.

Plaintiff's Opposition is shocking both for the sheer number of misrepresentations (factual and legal), as well as the brazen nature of the unsupportable assertions. Although it is impossible (given page limitations) to respond fully to every one of the Plaintiff's misstatements of fact and law, Defendants will focus on some of the most egregious examples.

1.       **Ownership and Registration of the Sex.com Domain Name -** As was discussed in detail in Defendants' Memorandum of Law in Support of their Motion to Dismiss – with supporting evidence provided – neither Maximum nor Mr. Valiquette own the Sex.com domain, nor did they register the Sex.com domain.  *See* Defendants' Memorandum, pp. 2-3, 10-11.  Neither Maximum nor Mr. Valiquette entered into the agreements with Network Solutions or Perfect Privacy.  *Id.*  The sole owner and registrant of the Sex.com domain name is Clover Holdings Limited Partnership ("Clover"), an entity in which Defendants have no ownership interest.  *Id.*  Despite the incontrovertible (and uncontroverted) evidence supporting these crucial facts, Plaintiff simply pretends that these facts do not exist – basing the vast majority of their arguments in support of a

2

finding of personal jurisdiction over Maximum and Mr. Valiquette on the premise that they (and not Clover) entered into the contractual agreements with Network Solutions and Perfect Privacy. Pretending that the facts are different from what they actually are does not actually alter reality, despite Plaintiff's fervent wishes to the contrary.

2.      **Ownership of Maximum** – Plaintiff also asserts that, because Mr. Valiquette is the sole Director of Maximum, he "thus can be considered the exclusive owner."  Opposition, p. 3.  Not only does such an assertion find no basis in corporate law or governance, it could have been easily disproven by a simple check of publicly available records.  The sole shareholder of Maximum is GFL Groupe Financier Logistique Inc. ("GFL"), a Canadian corporation, and the shareholders of GFL are three family trusts, all of which is easily determinable through searches of an online registry.  *See* Affidavit of Frédéric Valiquette, Exhibit A ("Valiquette Aff."), ¶¶ 4-5.  Although Mr. Valiquette is *one* beneficiary of *one* of the three trusts that owns GFL, which in turn owns Maximum, he is not the sole shareholder of Maximum, nor does his status as Maximum's director magically transform him into a shareholder, much less "the sole shareholder."  *Id.*, ¶ 6.

3.      **HL Hosting Logistic Inc. and the Sex.com IP Address** – Without ever explaining the actual relevance to its jurisdictional argument, Plaintiff asserts that HL Hosting Logistic Inc. ("HLHL"), a non-party to this litigation, "maintains the servers that host Sex.com and the IP location for Sex.com reflects that such is with Maximum."  Opposition, p. 3.  To the extent that this allegation is even comprehensible, it is false.  HLHL does not host the website at Sex.com nor does it own the IP address used by Sex.com (or Maximum).  Valiquette Aff., ¶ 7.  HLHL is a Canadian corporation which has not been in business since it was liquidated in September 2013 and which is in the process of being formally dissolved.  *Id.*, ¶¶ 8-13.  Nor does HLHL own the IP address used by Sex.com.  That IP address is owned by the Canadian company Technologie Optic.ca from Montreal, Quebec, Canada.  *Id.*, ¶¶ 14-15.  This fact was also easily obtainable by running a

3

WHOIS-RWS search with the registration authority ARIN.  *Id.*, ¶ 15.

**4.**     **<u>Choopa LLC and Maximum's Hosting</u>** – In what is arguably one of the most glaringly false assertions made by the Plaintiff (although, admittedly, it is hard to choose), Plaintiff proffers to this Court an "expert" declaration by Mark Lidikay, which it uses to argue that "there must be a server hosting Sex.com in New Jersey" and that said server is operated by Choopa LLC. *See* Opposition, pp. 22-23; Lidikay Declaration.  Although the precise reasons why Mr. Lidikay's "method" of arriving at his conclusion is fatally flawed are technically complex, they are also largely irrelevant given that his conclusion is so easily disproved.  *See* Declaration of David Gucker, a Vice President of Choopa LLC, on Behalf of Choopa LLC ["Choopa Aff."], <u>Exhibit B</u>.  In his declaration, Mr. Guckker makes plain that Sex.com is not hosted by Choopa and has never been hosted by Choopa, whether in New Jersey or elsewhere.  Choopa Aff., ¶ 2.  There is no server at Choopa's facilities in New Jersey (or elsewhere) that hosts Sex.com, whether for US users or otherwise.  *Id.*, ¶ 3.  Choopa has no contractual relationship with Maximum or HLHL and has never had a contractual relationship with Maximum or HLHL.  *Id.*, ¶¶ 4, 6.  Choopa has no Border Gateway Protocol ("BGP") or formal peering relationship with HLHL and Choopa has never had a BGP or formal peering relationship with HLHL, whether with a server in New Jersey or elsewhere.  *Id.*, ¶¶ 5, 7.  Put simply, there is no business relationship between Choopa on the one hand and any of Maximum, Sex.com, or HLHL on the other. *Id.*, ¶ 8.[2]

To the contrary, for as long as Maximum has managed the website at Sex.com, the site has been hosted by Nexweb Solutions Internet Inc. ("Nexweb"), a Canadian company based in Montréal, Québec, Canada.  Valiquette Aff., ¶ 24.  All of Nexweb's servers are located in Canada and Canada only.  *Id.*, ¶ 25.  Nexweb has no servers in the United States.  *Id.*  The servers that host the Sex.com website are located in Canada only. *Id.*, ¶ 26.  None of Nexweb's servers that host the

---

[2] All of the foregoing is confirmed by Mr. Valiquette. Valiquette Aff., ¶¶ 16-23.

Sex.com website are located in the United States.  *Id.*  For as long as Maximum has managed the website at Sex.com, the site has been hosted only by Nexweb and only on servers in Canada.  *Id.*, ¶ 27.[3]  At the risk of belaboring the obvious, the Plaintiff's willingness to present the Court with blatantly (and verifiably) false "expert" opinion should give the Court great pause.

     **5.**     **<u>Banner Advertisements, Hard Coding and Geolocating</u>** – Throughout its Opposition, Plaintiff alleges that advertisements appearing on the Sex.com website are "hard-coded," which it alleges means the advertisements can't be from advertising brokers and that Maximum is engaging in geolocating.  *See*, *e.g.*, Opposition, pp. 4-5, 9-10, 15-20.  Once again, Plaintiff appears to believe that it understands the working of Maximum's website better than Maximum itself.  As is explained in great detail in Mr. Valiquette's Affidavit attached hereto, almost everything Plaintiff has said concerning "hard coding" and "geolocation" on the Sex.com website is flat-out wrong.  *See* Valiquette Aff., ¶¶ 29-43.  Although Defendants will not repeat here all of the technical explanations outlined in Mr. Valiquette's affidavit, a brief explanation is warranted: almost all traditional advertising on the Sex.com website comes from advertising brokers, who purchase the right to display whatever they choose in spaces provided on the website.  *Id.*, ¶¶ 29-35.  The advertising brokers are not agents of Maximum as they have no authority to act on behalf of Maximum or bind it to any contract or agreement.  *Id.*, ¶ 34.

     And, in the simplest terms, viewing the website's source code after it has been delivered to a visitor to the website demonstrates nothing about the actual creation of the webpage, but rather shows only how the webpage is displayed to the viewer via HTML.  It does *not* reveal the underlying source code or the algorithms or programming used to build the page, which is done using a back-end native programming language (PHP in this case). The PHP back-end code, which does not contain "hard-coded links," automatically outputs what appear to be hard-coded links to

---

[3] All of the foregoing has been confirmed by Mr. Éric Jodoin, Nexweb's President. *See*, *generally*, Affidavit on Behalf of Nexweb, <u>Exhibit C</u>.

the viewer, based on instructions it receives from the advertising broker.  *Id.*, ¶¶ 36-43. The *broker* may then engage in geolocating to determine which advertisement it wants the Sex.com website to display.  *Id.*, ¶¶ 36-38.  Although all of this sounds complicated, the concept behind it is relatively simple: viewing source code (as Mr. Jason Tucker has done) tells the visitor nothing about the actual creation of the webpage.  *Id.*, 43.  It is inconceivable that Mr. Tucker and Plaintiff are ignorant of these facts, and the fact that they try to mislead the Court into thinking otherwise is more than a little disconcerting.

6.   **Sponsor Pages** – Plaintiff tries to make much of the existence of sponsor pages on the Sex.com website, which it alleges are for U.S. based companies. Opposition, pp. 4-6. Despite the fact that revenue from *all* sponsor pages combined represent less than 1% of all revenues from the Sex.com website and that sponsor pages account for less than 0.05% of the pages on the website, even if the sponsor pages were relevant, Plaintiff's allegations are largely incorrect.  *See*, Valiquette Aff., ¶¶ 44-62.  Again, so as not to simply repeat that which is contained in Mr. Valiquette's affidavit, Defendants briefly state the following: (a) Maximum's relationship with Realty Kings is through its webmaster program run by an Irish corporation, *Id.*, ¶¶ 49-51; (b) Maximum has only ever received $71.76 in revenue from Paper Street Media, LLC, *Id.*, ¶¶ 54-56; and (c) Maximum has many sponsors, all of whom agreed that their relationship with Maximum is governed by Canadian law and all of whom control their own sponsor pages, *Id.*, ¶¶ 56-61.

7.   **SimilarWeb and Alexa Statistics** – Despite having been provided accurate internal traffic statistics for the Sex.com website in Defendants' Motion to Dismiss, Plaintiff continues to rely on inaccurate and unreliable statistics from unrelated third parties, SimilarWeb and Alexa. Opposition, pp. 22, 28-29; Lidikay Decl., ¶¶ 27-28. Neither of these services has access to the Sex.com actual website's traffic records: they instead provide statistics based on estimates and incomplete information.  *See*, Valiquette Aff., ¶¶ 69-79.  Both SimilarWeb and Alexa admit that

their statistics are mere guesses based on the habits of Internet users who use their "panels," and that they do not take into account mobile and phone users. *Id.* The Google Analytics data Maximum provided previously is based on Google's access to the actual data that Maximum has concerning the Sex.com website and its traffic records, including mobile and WAP Phone traffic. *Id.*, ¶ 77.

**8.    Defendants Are Not Subject To Jurisdiction Under Florida's Long Arm Statute**

Despite the fact that their complaint does not actually allege that personal jurisdiction exists over the Defendants under Florida's long-arm statute, Plaintiff insists in its opposition that such jurisdiction is proper under Fla. Stat. 48.193. Plaintiff is incorrect.

A.    Defendants Do Not Conduct or Carry On Business In Florida – As was discussed in Defendants' Memorandum in Support of their Motion to Dismiss, neither Maximum nor Mr. Valiquette has any meaningful contacts with the United States as a whole, much less Florida. *See,* Memorandum, p.5.[4]  "In order to establish that a defendant is 'carrying on business' for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Tarasewicz v. Royal Caribbean Cruises, Ltd.*, 2015 U.S. Dist. LEXIS 84779, 61-62 (S.D. Fla. June 30, 2015) (*citing Future Tech. Today, Inc. v. OSF Healthcare Sys.,* 106 F. Supp. 2d 1278, 1281 (S.D. Fla. 1999) aff'd, 218 F.3d 1247 (11th Cir. 2000)).

Plaintiff's primary basis for asserting jurisdiction over Maximum and Mr. Valiquette under this section is the existence of the contracts with Network Solutions and Perfect Privacy. As has

---

[4] "Maximum has never had a presence or significant contacts with the United States. Valiquette Affid., ¶38. Maximum does not have (and has never had) any employees in the United States. Valiquette Affid., ¶39. Maximum does not have (and has never had) a bank account in the United States. Valiquette Affid., ¶40. Maximum does not own or lease (and has never owned or leased) real estate in the United States. Valiquette Affid., ¶41. Maximum does not pay (and has never paid) taxes in the United States. Valiquette Affid., ¶42. Maximum does not have (and has never had) an agent for the service of process in the United States. Valiquette Affid., ¶43. Maximum does not have (and has never had) a telephone number in the United States. Valiquette Affid., ¶44. Mr. Valiquette has never had significant contacts with the United States. Valiquette Affid., ¶45. He does not live (and has never lived) in the United States. Valiquette Affid., ¶46. He does not maintain (and has never maintained) a bank account in the United States. Valiquette Affid., ¶47. He does not pay (and has never paid) taxes in the United States. Valiquette Affid., ¶48. He does not have (and has never had) a telephone number in the United States. Valiquette Affid., ¶49."

been conclusively proven twice now, *neither Maximum nor Mr. Valiquette are party to the agreements with Network Solutions or Perfect Privacy.* Even if they *had* been party to those agreements, it would be an insufficient basis for the exercise of personal jurisdiction. *Liberty Media Holdings, LLC v. Letyagin, et al.*, Civil No. 11-62107-CV-Williams (S.D. Fla. Dec. 14, 2011) ("The Court agrees that merely registering a domain name with a company in Florida is insufficient to support general jurisdiction over the website's operator."); *Graduate Mgmt. Admission Council v. Raju,* 241 F. Supp. 2d 589, 595 (E.D. Va. 2003) ("[M]ere registration of the domain name with a company located in Virginia does not support personal jurisdiction in this state"); *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 223 (4th Cir. 2002) ("[T]he mere act of registering the Domain Names in Virginia was deemed insufficient to provide personal jurisdiction."); *Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d 589, 595 (E.D. Va. 2003) ("First, mere registration of the domain name with a company located in Virginia does not support personal jurisdiction in this state."); *America Online, Inc. v. Huang*, 106 F. Supp. 2d 848, 856-57 (E.D. Va. 2000); *Heathmount A.E. Corp. v. Technodome.com*, 106 F. Supp. 2d 860, 867 (E.D. Va. 2000); *Proprietors of Strata Plan No. 36 v. Coral Gardens Resort Mgmt., Ltd.*, 2009 U.S. Dist. LEXIS 97704 (E.D. Va. 2009).

Plaintiff's argument that specific jurisdiction over Maximum and Mr. Valiquette based on Maximum's use of advertising brokers (none of whom are located in Florida) is similarly misplaced. Plaintiff's supposition is that, because Maximum sells advertising space to brokers, and those brokers, in turn, utilize that space for their clients' advertisements, and some of those brokers *may* use geolocation tools to tailor the advertisements that users see when they visit the Sex.com website (though there is no suggestion that any broker actually used geolocation services to tailor ads specifically to individuals in Florida, as opposed to the United States as a whole), that Maximum and Mr. Valiquette are conducting business in Florida. Even if the proposition were

factually accurate, it would still fail since Plaintiff cannot claim (and does not even try to claim) that its claims arise out of these advertising brokers having alleged directed advertisements (which have nothing to do with the Plaintiff's intellectual property) towards Florida residents. *See, e.g., Henriquez v. El Pais Q'Hubocali.com,* 500 F. App'x 824, 829 (11th Cir. 2012) (displaying advertisements in the state insufficient to constitute operating for jurisdictional purposes); *Wallack v. Worldwide Machinery Sales, Inc.,* 278 F. Supp. 2d 1358, 1366 (M.D. Fla. 2003) ("The fact that a foreign defendant contracts with a Florida resident is not enough to establish personal jurisdiction over the foreign defendant.").

      B.  <u>Defendants Have Not Committed a Tortious Act Nor Caused Injury In Florida</u> – In its Opposition, Plaintiff (a company incorporated in the Republic of Cyprus) continues to assert that it suffered injury in Florida (a location where it has no presence) and/or that Maximum and Mr. Valiquette (a Canadian company and resident, respectively) committed a tort in Florida by virtue of having entered into a management agreement with Clover (a limited company incorporated in St. Vincent and the Grenadines) to manage a website hosted and run entirely out of Canada. The proposition makes little sense and this Court has previously rejected this argument when presented on near-identical facts. *Liberty Media Holdings, LLC v. Letyagin, et al.*, Civil No. 11-62107-CV-Williams (S.D. Fla. Dec. 14, 2011) ("Precedent, however, establishes that maintaining a website accessible to users in a jurisdiction does not subject a defendant to be sued there: those users must be directly targeted, such that the defendant can foresee having to defend a lawsuit . . . ." (and multiple cases cited therein)). Even if this weren't the case, jurisdiction would still be improper as violating Defendants' due process rights, as discussed in detail in their Opposition.

      **9.**    <u>**Jurisdiction Is Not Proper Under F.R.C.P. 4(k)(2)**</u> – Easily taking the prize for the most bizarre assertion made by the Plaintiff is its claim that: "despite Plaintiff's repeated allegations in its Amended Complaint that jurisdiction is proper pursuant to Rule 4(k)(2), Defendants entirely

fail to specifically contest this assertion . . . and thus such remains undisputed." Opposition, p. 15. Given that Defendants' Memorandum speaks *only* about jurisdiction under Rule 4(k)(2), *see,* Memorandum, pp. 7-26 (since that was the only basis for jurisdiction articulated in Plaintiff's complaint), Defendants are left to wonder what Plaintiff was reading when it crafted its opposition.

10.     <u>Unrelated Actions/Trademarks</u> – Because Defendants have, at this point, exhausted all of the synonyms known to them for "shocked," they simply state that nowhere is the Plaintiff's ***intent*** to willfully mislead this Court more on display than in the section of their Opposition entitled "Trademarks." To fully appreciate what the Plaintiff has done in this section, one needs to take it sentence-by-sentence. Plaintiff first notes that Sex.com is a registered trademark, which is true. If one were to look at the Plaintiff's own exhibits, however, one would note immediately that neither Maximum nor Mr. Valiquette are the registrants of the trademark. Plaintiff then segues from this first irrelevancy into an equally irrelevant discussion of two actions brought by HVL Cyber Web Solutions Inc. ("HVL") (a non-party to this action) concerning intellectual property. It is clear that Plaintiff hopes, by juxtaposing these two sentences, to suggest that the actions brought by HVL were related to the Sex.com trademark: they were not. Plaintiff then points to the fact that HVL brought an action in California against a company that conducted business in California as somehow inconsistent with Defendants' position in this litigation. Putting aside that the positions are not actually inconsistent, it bears repeating that ***HVL Cyber Web is not a party to the present litigation.***

11.     <u>Plaintiff Is Not Entitled To Jurisdictional Discovery</u> – Finally, Plaintiff asks that, if the Court is inclined to grant the Defendants' Motion to Dismiss that it instead grant Plaintiff wide-ranging jurisdictional discovery. This request should be denied. Jurisdictional discovery is only appropriate where Plaintiff has persuaded the Court that – despite the evidence provided by Defendants – jurisdictional discovery might provide sufficient evidence to prove jurisdiction proper.

*Zapata v. Royal Caribbean Cruises, Ltd.*, 2013 U.S. Dist. LEXIS 36030, *13-14 (S.D. Fla. Mar. 15, 2013) ("In this case, Hartley has presented evidence that it has no contacts with Florida. I am not persuaded that additional discovery beyond the Affidavit submitted by Mr. Hartley will illuminate any facts tending to further prove or disprove that the lack of personal jurisdiction over Hartley. … In light of Mr. Hartley's sworn statement that Hartley 'does not have a contract' with RCCL, I do not see any benefits to Plaintiff's request for jurisdictional discovery."); *Celorio v. Google Inc*., 872 F. Supp. 2d 1327, 1335 (N.D. Fla. 2012) ("Plaintiff asserts that he has a right 'to conduct discovery to elicit further jurisdictional facts.' . . . Plaintiff has failed to show that the exercise of personal jurisdiction over Defendants On Demand Books and Mr. Epstein would be proper, and there is no genuine dispute over jurisdictional facts. Accordingly, Plaintiff's request . . . is due to be denied.").

"When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery*." Viasystems, Inc. v. EBM-Papst St. Georgen Gmbh & Co., KG,* 646 F.3d. 589, 598 (8th Cir. 2011). *See also Fraserside IP LLC v. Kovalchuk, et. al.,* 2012 U.S. Dist. LEXIS 28704, *8 (N.D.Iowa March 5, 2012) ("Here, Fraserside has offered nothing but conclusory assertions about Kovalchuk's contacts with Iowa. Fraserside has failed to proffer facts that, if proven, would affect my exercise of jurisdiction over Kovalchuk. Thus, its request for jurisdictional discovery is denied."); *McLaughlin v. McPhail,* 707 F.2d 800, 806 (4th Cir. 1983) (denying jurisdictional discovery proper where plaintiff "offered nothing beyond his bare allegations that the defendants had had significant contacts with the [forum] state of Maryland"); *Rich v. KIS Cal., Inc.,* 121 F.R.D. 254, 259 (M.D.N.C.1988) ("[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition.").

## CONCLUSION

For the reasons state herein, Maximum and Mr. Valiquette respectfully request that the Amended Complaint be dismissed as against them in accordance with Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and that the Plaintiff's "Alternative Motion" for jurisdictional discovery be denied.

**Respectfully submitted:**

| | |
|---|---|
| /s/ Evan Fray-Witzer | /s/ Brady J. Cobb |
| Evan Fray-Witzer (# 564349 - *pro hac vice*) | Brady J. Cobb, Esquire |
| CIAMPA FRAY-WITZER, LLP | Florida Bar No. 031018 |
| 20 Park Plaza, Suite 505 | COBB EDDY, PLLC |
| Boston, MA 02116 | 642 Northeast Third Avenue |
| Telephone: (617) 426-0000 | Fort Lauderdale, Florida 33304 |
| Facsimile: (617) 423-4855 | Telephone (954) 527-4111 |
| Evan@CFWlegal.com | Facsimile  (954) 900-5507 |
| | bcobb@cobbeddy.com |

/s/ Valentin Gurvits
Valentin D. Gurvits (# 643572 - *pro hac vice*)
Matthew Shayefar (# 685927 - *pro hac vice*)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Telephone: (617) 928-1804
Facsimile: (617) 928-1802
vgurvits@bostonlawgroup.com
matt@bostonlawgroup.com

***Attorneys for Maximum Apps, Inc. and Frederic Valiquette***

**CERTIFICATE OF SERVICE**

**I hereby certify** that a true and correct copy of the foregoing was served electronically via the CM/ECF

electronic filing system on all counsel or parties of record on the attached service list this 5thst day of November, 2015.

/s/ Brady J. Cobb
Brady J. Cobb

**SERVICE LIST**

**1:15-cv-22463-MGC**

*Counsel for Plaintiff:*

Aaron Behar, Esquire
Jaclyn Behar, Esquire
BEHAR BEHAR
1840 North Commerce Parkway
Suite One
Weston, Florida 33326
Telephone: (954) 688-7642
Facsimile: (954) 332-9260
AB@BeharBehar.com
JB@BeharBehar.com

Spencer D. Freeman, Esquire
Freeman Law Firm, Inc.
1107 ½ Tacoma Avenue South
Tacoma, WA 98402
Telephone: (253) 383-4500
Facsimile: (253) 383-4501
Email: sfreeman@freemanlawfirm.org

*Counsel for Defendant Clover Holdings Limited Partnership*:

John F. O'Sullivan
Allen Paige Pegg
Hogan Lovells US LLP
Brickell World Plaza
600 Brickell Ave.
Suite 2700
Miami, FL 33131
305 459-6651
305-459-6550 (fax)
john.osullivan@hoganlovells.com
allen.pegg@hoganlovells.com

13