## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | |
|---|---|
| HYDENTRA HLP INT. LIMITED, a foreign corporation d/b/a METART <br><br>    Plaintiff, <br><br> v. <br><br> MAXIMUM APPS INC., a foreign company d/b/a SEX.COM, CLOVER HOLDINGS LIMITED PARTNERSHIP, a foreign company, d/b/a SEX.COM; SEX.COM; FREDERIC VALIQUETTE, an individual, and; John Does 1-20, <br><br>    Defendants. | **Case No. 1:15-cv-22463-MGC** <br><br><br> **MAXIMUM APPS, INC. AND FREDERIC VALIQUETTE'S OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS** |

*"It is a fundamental tenet of this Court that attorneys in this District be governed at all times by a spirit of cooperation, professionalism, and civility."*

-   Introductory Statement, Local Rules,
    Southern District of Florida

### INTRODUCTION

If the Court believes the tenets that <u>it</u> has set forth in the Local Rules of Practice, it should be outraged. The Plaintiff has chosen – as a matter of litigation strategy – to intentionally mislead this Court while playing a game of "gotcha" with the Defendants whose only real mistake was to believe that the Plaintiff was acting in the spirit of cooperation, professionalism, and civility mandated by this Court.

In seeking sanctions under Fed. R. Civ. P. 37(d), Plaintiff's counsel has failed to inform the Court (among other things) that:

(a)      they informed Defendants' counsel a little over a week before the depositions that they did not believe they would proceed with the depositions as scheduled as it would likely be a

"waste of time" given the Defendants' pending motions to dismiss for lack of jurisdiction and the parties' pending Joint Motion to Stay Discovery;

(b)      they never bothered to confirm with even a simple phone call that the depositions were going forward after the communication described above;

(c)      the default under the prevailing case law is that the Defendants, a Canadian corporation and a Canadian resident, would have had to be deposed (if at all) not in Florida, but Canada;

(d)      the Defendants had repeatedly informed the Plaintiff that, until the Court had resolved the personal jurisdiction question, the Defendants would not voluntarily come into the District;

(e)      the Plaintiff had assured Defendants that the deposition notices were no more than placeholders;

(f)      the Plaintiff failed to actually serve all of the attorneys that it claimed to have served in its certificate of service; and

(g)      the deposition notices were sent out *before* the Parties agreed on a Joint Motion to Stay all discovery, at which point the Plaintiff unequivocally told the Defendants that the Plaintiff "agrees that the motions [to dismiss for lack of jurisdiction] should be resolved before discovery and other pretrial tasks are done."

In short, having first noticed depositions in a location they knew to be improper; having subsequently agreed to a complete stay of discovery; and having actively misled the Defendants into believing that there was agreement between the parties that the noticed depositions were not proceeding as scheduled, the Plaintiff now attempts to engage in litigation-by-ambush, asking

this Court to use its power to punish the Defendants for having exercised the very cooperation, professionalism, and civility that it demands.

The Court, as noted, should be outraged.

## RELEVANT FACTUAL HISTORY[1]

On June 30, 2015, Plaintiff filed the present action against three foreign defendants: Maximum Apps Inc., a limited company incorporated and operating under the laws of Canada; Frederic Valiquette, a Canadian resident; and Clover Holdings Limited Partnership ("Clover"), a company incorporated in Saint Vincent and the Grenadines;

On September 21, 2015, Defendants Maximum Apps Inc. and Frederic Valiquette (collectively, the "Maximum Defendants") moved to dismiss the Amended Complaint pursuant to Rule 12(b)(2) for lack of personal jurisdiction, arguing that they do not have sufficient contacts with the United States or the State of Florida to be subject to this lawsuit.  (ECF No. 21).  That motion is fully briefed and awaiting the Court's ruling.  (ECF Nos. 48, 64).

On October 5, 2015, the Court entered its Order Setting Civil Trial Date and Pretrial Deadlines.  (ECF No. 26).  That Order contemplated that the Parties would complete discovery by February 5, 2016.  *Id.*  Anticipating a hearing or ruling on the Motion to Dismiss, however, the parties voluntarily refrained from initiating discovery, with the expectation that, if the matter was not dismissed for lack of personal jurisdiction, the parties would at that time propose a revised discovery schedule and other deadlines for the Court's approval.

On November 18, 2015, in discussing the Court ordered mediation, the parties agreed upon potential dates and a mediator.  However, so as not to mislead the Plaintiff in any way,

---

[1] Defendants apologize in advance for the length of the recitation of the factual history.  Such a detailed recitation is necessary for the Court to fully appreciate the extent to which the Plaintiff has intentionally attempted to mislead in its Motion.

counsel for the Maximum Defendants specifically wrote to Plaintiff, stating:

> I did want to make a couple of things clear, though, simply because I didn't want them to be a surprise if/when I raise them later.  First, we will likely ask in any event that the clients be allowed to attend the mediation via Skype so that they're not required to travel for it.  **And, if the Court hasn't ruled on our motions to dismiss by the mediation date, we would certainly not be willing to have the clients travel to Florida while the jurisdictional issues are still pending.**
>
> There's no reason we need to deal with these issues now, but I didn't want my silence on the matter to be mistaken for some sort of representation that the clients would be traveling to Florida for the mediation.

*See Declaration of Evan Fray-Witzer* [*"Fray-Witzer Decl."*], filed herewith, ¶ 2 and Exhibit 1 thereto (emphasis added).

On December 28, 2015, counsel for the Maximum Defendants, Matthew Shayefar, had a telephone conversation with Plaintiff's counsel, Spencer Freeman, concerning the timing of discovery in the case.  At that point in time, the parties had continued to refrain from engaging in ***any*** discovery because of the pendency of the Motions to Dismiss for lack of personal jurisdiction filed by all of the defendants.[2]  During that conversation, Attorney Freeman stated he was concerned about the existing discovery schedule given that the Court had not yet ruled on the Defendants' motions.  *See Declaration of Matthew Shayefar* [*"Shayefar Decl."*], filed herewith, ¶ 2.  Attorney Shayefar stated that, given the pendency of the Motions to Dismiss, and given that those motions challenged the Court's jurisdiction over the defendants, he did not think that the Court would expect the parties to have engaged in discovery prior to receiving a ruling on the pending motions.  *Shayefar Decl.,* ¶ 3.

In response, Attorney Freeman stated that he hoped that Attorney Shayefar was correct, but that the Plaintiff might send out deposition notices as placeholders to protect their right to take depositions if for some reason the Court were to disagree with the parties.  *Shayefar Decl.,* ¶

---

[2] Defendant Clover Technologies, Inc. has also moved to dismiss based upon improper service of process.

4

4.  Attorney Shayefar told Attorney Freeman that the Maximum Defendants (a Canadian citizen and a Canadian company) could not and would not agree to appear in Florida for depositions. *Shayefar Decl.,* ¶ 5.  Attorney Freeman stated that he understood, but might send out notices anyway just in case.  *Shayefar Decl.,* ¶ 6.

Following this conversation, counsel for the Maximum Defendants discussed Attorney Freeman's stated concerns further and concluded that the best course of action – both for the parties and for the Court – would be for the parties to work together, cooperatively, to formalize the Parties' agreement that all discovery would be stayed pending the Court's decision on the Motions to Dismiss, which would obviate the need for the Plaintiff to serve discovery; the need for the Defendants to move for protective orders; and the need to burden the Court with make-work motion practice where there wasn't any actual disagreement between the parties as to how the case should proceed.

In furtherance of that goal, the Maximum Defendants proposed to the Plaintiff that the parties agree to stay all discovery and present the Court with a joint motion seeking court approval of the parties' plan.  Attorney Shayefar called Attorney Freeman to discuss this proposal and, unable to reach him in person, left a voice mail to that effect.  *Shayefar Decl.,* ¶ 8. The next day, having not yet heard back from Attorney Freeman, Attorney Shayefar sent an email to Attorney Freeman in which he wrote:

> While I continue to believe that the court won't have expected us to be doing discovery while the motions to dismiss were pending and would change deadlines should they not be granted, I think the better way to handle this is rather than have you notice depositions and us have to ask the court to grant a protect[ive] order is to just up front ask the court to stay discovery and continue all dates until such time as the motions to dismiss are resolved.

*See Shayefar Decl.*, ¶ 9 and Exhibit 1 thereto.

Attorney Freeman first responded, "Let me confer on my side, but I am inclined to agree."  *Id.*  Later that day, Attorney Freeman wrote: "This process makes some sense – to both gain clarity on the issue and account for what is normal process.  I presume you guys will be drafting the motion?"  *Id.*

Although Attorney Shayefar had hoped that the drafting of the joint motion would only take a day or so, and communicated this expectation to the Plaintiff, because of the holidays and the desire of the Clover's attorneys to also participate in the drafting, it took longer than originally anticipated to provide a draft motion to Plaintiff's counsel.  *See Shayefar Decl.,* ¶ 10.

On January 8, 2016, Plaintiff's counsel, having not yet received the Defendants' draft motion, forwarded three deposition notices by email purporting to notice the depositions of the corporate representatives of Maximum and Clover, and the deposition of Mr. Valiquette to be taken, in Florida, on January 28 and 29.  *See Shayefar Decl., ¶ 11* and Exhibit 2 thereto. Although these deposition notices each contained certificates of service attesting that service was accomplished through the Court's ECF system, the notices were never filed with the Court nor served through ECF.  Moreover, although the certificates of service *claimed* to have served Attorneys Evan Fray-Witzer, John O'Sullivan, and Jason Sternberg (among others), none of those three attorneys were served in any fashion.  *See Fray-Witzer Decl.*, ¶ 3.

The Defendants all understood from Plaintiff's prior statements that the notices were sent not because the Plaintiff actually intended to depose the Defendants on the dates indicated, but rather that the Plaintiff – concerned that it had not yet received the draft joint motion to stay – was (as it had stated previously) protecting itself against any unforeseen difficulties concerning entry of a stay.  Indeed, had any of the Defendants believed that the Plaintiff intended the notices as true deposition notices, they would have reminded Plaintiff's counsel that the case law

indicates clearly that the depositions could not be noticed for Florida (even if the motions to

dismiss had been decided), but rather had to be taken where the defendants work or reside which,

in the case of the Maximum Defendants, is Canada.  *Fray-Witzer Decl.*, ¶¶ 4-6; *Shayefar Decl.*,

¶¶ 11-12; *Declaration of Brady J Cobb* ["*Cobb Decl.*"], ¶ 6.

On January 9, 2016, Counsel for Clover sent the Plaintiff a draft of the joint motion to

stay discovery.  *See* Exhibit 1 hereto.  In the transmittal email, counsel wrote:

> I understand Spencer's been in touch with Matt Shayefar concerning the upcoming
> discovery cutoff and other pretrial deadlines we have in this matter. As Matt
> mentioned to Spencer, on the defense side, we believe the best course of action
> is to ask the Court to suspend all such pretrial deadlines until the Court has ruled on
> the pending MTDs.
>
> Attached is a draft Joint Motion. Please review and let us know whether Plaintiff
> will join the Motion and, if so, whether you have any comments.

*Id.*

> Attorney Freeman responded:
>
> Matthew and I did speak about this issue and I agreed with him in concept, and also
> told him that we needed to issue dep notices to cover our end just in case. I
> appreciate generally how neutrally the motion is drafted. I would possibly like to
> add a line that Plaintiff disagrees with each Defendant position in the pending
> motions, **but agrees that the motions should be resolved before discovery and
> other pretrial tasks are done**, other than our requested jurisdictional discovery -
> which has yet to be ruled on. Also, you may want to check the date that Clover filed
> its motion - it is represented as November 3, but I think it was September.
>
> Other than that, I am good with this. However, will need to confer further with
> Aaron to be sure that there isn't something that I have missed.

*Id.* (emphasis added).

The next day, Attorney Freeman approved the Joint Motion to Stay for filing.  *Id.*  The

Joint Motion to Stay itself, which was filed with the Court on January 11, 2016 and expresses the

collective intent and views of the parties, states in part:

The Parties submit that there is good cause for the requested stay, because the personal jurisdiction issues raised in the motions to dismiss are potentially case-dispositive. … This is especially so here, because all the Defendants are located in foreign countries and requiring them to engage in costly international discovery and other litigation process in a matter over which this court may lack jurisdiction would do "nothing but waste the resources of the litigants in the action before the court, delay resolution of disputes between other litigants, [and] squander scarce judicial resources." (citations omitted)

…The Parties' joint request for a stay is merely one of timing and sound case management. If Defendants' motions to dismiss are denied, the Parties will then, as directed by the Court, work together to expeditiously complete discovery and other pre-trial matters. Conversely, if this case is dismissed for lack of personal jurisdiction, all parties will have been spared the unnecessary expenditure of time and resources, and the Court will be spared the burden of addressing any disputes that may arise prior to its ruling on the motions to dismiss.[3]

Joint Motion, p. 2 and p. 6.

Once the Parties filed their Joint Motion to Stay, they continued their agreed-upon stay of discovery. Given the communications between the parties and the content of the recently-filed Joint Motion, none of the defense counsel expected that the noticed depositions would occur, nor did counsel believe that Plaintiff's thought that such depositions would occur as originally (and improperly) noticed. *See Fray-Witzer Decl.*, ¶¶ 4-6; *Shayefar Decl.*, ¶¶ 11-12; *Cobb Decl.*, ¶ 6.

Indeed, there were no additional communications concerning the purported depositions until January 19, 2016. On that date, Attorney Brady Cobb (local counsel for the Maximum Defendants) was attending a deposition in another of the cases filed in this District by the Plaintiff. At the close of the deposition on that day, Attorney Cobb specifically raised the fact

---

[3] The communications between the parties and the language of the Joint Motion gives lie to Plaintiff's outlandish claim that the Joint Motion to Stay was not intended to cover the noticed depositions (Plaintiff's Motion, ¶4). This Court has previously admonished Attorney Behar for making representations in his filings which were clearly "beyond what the facts would fairly support." *Risk Ins. & Reinsurance Solutions v. R+V Versicherung,* 2007 U.S. Dist. LEXIS 103618, *19 (S.D. Fla. Nov. 29, 2007) ("Plaintiff and its counsel clearly embellished the SAC beyond what the facts would fairly support. However, none of these allegations, either individually or collectively rise to the level of a Rule 11 violation…. This is not to say that the Court in any way condones this sort of sloppy pleading. While such overblown pleadings have unfortunately become all too familiar, counsel should take more pride in their professional reputations and avoid conforming to these low practices.").

that the Plaintiff had sent out deposition notices as placeholders in *this* case, but pointed out that the parties had subsequently agreed upon and filed the Joint Motion.  Attorneys Behar and Freeman told Attorney Cobb that they did not want to waste time, that they did not think the depositions would go forward on the dates indicated, and that they would contact Attorney Cobb to discuss the issue further.  *See Cobb Decl.*, ¶¶ 3-4.

Plaintiff's counsel said nothing further about the purported deposition dates; they did not call or contact the Defendants to communicate that, notwithstanding all that they had said, they actually intended to go forward with the depositions.[4]  On January 27, 2016, having not heard from Plaintiff's counsel and in an abundance of caution, Attorney Cobb sent an email to Plaintiff's counsel simply confirming that that the depositions were not going forward at that time.  *See Cobb Decl.,* ¶ 5 and Exhibit 1 thereto.  At approximately 2:30 p.m., Attorney Cobb emailed:

> Given the pending motion to stay and the 12(b)(6) motions, my clients will not be appearing for depositions tomorrow. We will reschedule and/or address the depositions once the aforementioned depositions are ruled upon.

*Id.*

Attorney Freeman responded: "Man....I wish you had told me that before I flew out to Florida."  *Id.*  The idea that counsel had actually travelled across the country for a deposition that the parties had agreed would not proceed (and which could not properly be noticed to take place in Florida) without ever having even called opposing counsel to confirm was so inconceivable

---

[4] This Court has previously noted the use of similar tactics by Plaintiff's counsel.  In *De Palo v. Ludlam Retail Associated, Ltd.*, Civil Action No. 12-20323 (S.D. Fla. October 8, 2013), Attorney Behar sought sanctions from the defendant after the defendant failed to appear to allow plaintiff's expert access to defendant's property.  In deciding Plaintiff's motion, the court noted: "It takes two to tango, and in this instance, it is Plaintiff's counsel who has unnecessarily complicated something very simple. Defendant clearly erred in not arranging for the Japanese Restaurant to be open at the time of the September 20th inspection. Had Plaintiff simply asked Defendant to arrange for Plaintiffs' expert to return to inspect that space, and to compensate the expert for his doing so, the Court has no doubt that Defendant would have agreed to this. Plaintiffs counsel's eleventh hour email, asking for an untold amount of sanctions, fees and costs, was not a meaningful conferral, and was bound to be unsuccessful."

that Defendants actually assumed that Attorney Freeman was joking, writing: "Spencer.  Please

tell me that you are kidding.  Evan."  *Cobb Decl.*, ¶ 5 and Exhibit 1 thereto; *Fray-Witzer Decl.*, ¶

9 and Exhibit 2 thereto.  Attorney Freeman responded that he was serious and was on a layover

in Dallas.  *Id.*  Counsel immediately spoke by telephone and Attorney Fray-Witzer suggested that

Attorney Freeman might still be able to return home from Dallas.  Attorney Freeman said that he

would continue on to Florida and that, while Attorney Behar might choose to conduct the

depositions for the sole purpose of putting the non-attendance on the record, the parties would

nonetheless "figure it out."  *Fray-Witzer Decl.*, ¶ 11.

On the same day, counsel for Clover emailed Plaintiff to express *its* surprise at the

Plaintiff's position:

> First, none of the counsel for Clover had these depositions on our calendars.  I now
> understand why this likely is the case: although we have three lawyers on this file,
> all of whom the COS on the Clover notice says were being served with the notice,
> that was not in fact done.  Rather, only I appear to have been served with the notice,
> and I have no recollection of that and apparently did not forward to the team.  Thus,
> you did not serve who should have been served.  Please be sure all counsel who
> have appeared for Clover are properly served for all future items of service.

> Second, I emailed you, Spencer, on January 15, letting you know that as set out in
> Clover's pending MTD, Clover's position is that due to the jurisdictional and
> service problems present here, Clover is not a proper defendant in this action and
> thus should not be obligated in any way to participate in this proceeding as it is
> essentially a non-party.  You wrote back that you "understood."  Given this
> agreement, I would imagine you are not taking the position that Clover would be
> obligated to appear on Friday, but please let me know.

> Third, Clover is neither a Florida company nor does it have its principal place of
> business in Florida.  And Clover obviously has not availed itself of the power of
> this jurisdiction through the assertion of a counterclaim.  Given these facts, if any
> deposition were to occur, you would need to travel to Clover's representative, rather
> than vice versa, so the notice, which purports to require such appearance in this
> district, is facially invalid.

> Fourth, the notices actually preceded our filing of a Joint Motion to Stay All
> Discovery.  Thus, in all events, I think the position taken in that motion would
> supersede any apparently earlier-issued discovery notices.

Exhibit 2 hereto.

On February 9, 2016, Plaintiff sent an email notifying Defendants of its intent to file the present motion. Attorney Cobb indicated to Attorney Behar that the Maximum Defendants did not agree to the relief sought. In an attempt to outline the Maximum Defendants' position, however, Attorney Fray-Witzer called and emailed Attorney Freeman on February 9, 2016, requesting a return call. *Fray-Witzer Decl.*, ¶ 12. Attorney Freeman did not respond to those messages and, on February 10, 2016, Plaintiff filed its present motion seeking sanctions against the Maximum Defendants.[5]

## **ARGUMENT**

I.   The Depositions Were Not "Properly Noticed" Given That the Maximum Defendants Are Located in Canada.

Even if the Parties had not agreed to the stay of discovery, and even if the Plaintiff had not intentionally led the Maximum Defendants to believe that the depositions were not proceeding pursuant to the notices sent prior to the filing of the Joint Motion, sanctions would be inappropriate under Fed. R. Civ. P. 37 as the depositions were not "properly noticed" as required under the Rule.

Putting aside Plaintiff's failure to actually serve all of the counsel that they claimed (and certified) that they had served, the depositions could not be properly noticed in Florida at all. "There is no dispute that the default rule in federal procedure is that a defendant who has not

---

[5] One might be tempted to wonder why Plaintiff filed its motion against the Maximum Defendants only, even though Clover similarly did not appear for its deposition. The answer would appear to lie in another case entirely. As the Court is aware, Plaintiff has filed numerous, near-identical actions in this Court and across the country. The undersigned represents a number of Defendants in these other actions. In one such action, on February 5, 2016, the Parties attended a Court-ordered mediation in Miami. The Plaintiff was dissatisfied (to say the least) with the Defendants' position in that mediation, abruptly ending the mediation. Five days later, the Plaintiff not only filed two frivolous motions seeking sanctions in *that* case, but also filed the present motion in *this* case. It would seem that the Plaintiff has sought to express its displeasure with the settlement position of an opposing party in an entirely different case by filing unwarranted requests for sanctions in that case and this one.

asserted any claims in the forum of the litigation has the right to insist on being deposed in its

home forum where it is headquartered." *Balu v. Costa Crociere S.P.A.,* 2011 U.S. Dist. LEXIS

85299 (S.D. Fla. Aug. 3, 2011) (citations omitted).  *See also El-Ad Residences at Miramar*

*Condo. Ass'n v. Mt. Hawley Ins. Co.,* 2010 U.S. Dist. LEXIS 130322 (S.D. Fla. Dec. 3, 2010)

("The law presumes that a defendant's deposition will be taken 'at his residence or place of

business or employment.'…  Moreover, the general rule is that absent 'exceptional or unusual

circumstances, when a deponent resides at substantial distance from the deposing party's

residence, the deposing party should be required to take the deposition at a location in the

vicinity in which the deponent resides, even if the deponent is a party.'")(citations omitted);

*Partecipazioni Bulgari SpA. v. Meige*, 1988 U.S. Dist. LEXIS 12122 (S.D. Fla. May 23, 1988)

("[M]odern discovery practice requires a plaintiff to conduct a deposition of a defendant, if

possible, at the defendant's place of residence or business…."); *Salter v. Upjohn Co.,* 593 F.2d

649, 651 (5th Cir. 1979) ("It is well settled that '(t)he deposition of a corporation by its agents

and officers should ordinarily be taken at its principal place of business,' especially when, as in

this case, the corporation is the defendant")(citations omitted)); *Perfect Web Techs., Inc. v.*

*InfoUSA, Inc.,* 2007 U.S. Dist. LEXIS 91994 (S.D. Fla. Dec. 13, 2007) ("It is well settled that the

deposition of a corporation by its agents and officers should ordinarily be taken at its principal

place of business, especially when, as in this case, the Corporation is the defendant.").[6]

---

[6] It would appear that the Plaintiff may have been intentionally attempting to manipulate a situation in which the
Defendants were (or are) forced to appear in Florida for depositions despite the clear case law to the contrary.  This
would not be a first for Attorney Behar, who has professed in public records his willingness to improperly
manipulate the deposition process to gain a strategic advantage.  In a presentation to the Board of Trustees of his
client, the Florida Gulf Coast University (the transcript of which was made a public record by the operation of law
once the litigation being discussed was closed), Mr. Behar touted his intent to manipulate the timing of depositions
to preserve his ability to raise questionable objections and threaten opposing counsel with sanctions or even threats
of a bar complaint.  *See* Exhibit 3 hereto, Transcript of Board of Trustees Executive Session, August 22, 2008
("From a timing standpoint the depositions in Flood are going to be taking place first.…  To the extent that the
lawyer gets into anything that is attorney/client privilege, *right now I have carte blanche to object all I want and
threaten any type of sanction, Bar complaints, all sorts of things available to me right now*.  If I go to a hearing

Because the "default rule" under the well-established case law is that the depositions of the Maximum Defendants should take place (if at all) in Canada, notices seeking to depose the Maximum Defendants in Florida were not proper, particularly where, as here, the Maximum Defendants have objected to personal jurisdiction in Florida.  As such, sanctions are not authorized under Rule 37(d).[7]

> II.   **The Maximum Defendants Were Substantially Justified in Not Appearing For Their Depositions and Any Sanctions Against Them Would Be Unjust Under the Circumstances of the Case.**

Even assuming that the depositions at issue were properly noticed, sanctions would be inappropriate in this case as the Defendants were substantially justified in not appearing and, as such, sanctions against them would be unjust.[8]

> A.   **The Parties Had Agreed That the Depositions Would Not Be Proceeding As Originally Scheduled.**

In support of their Motion, Plaintiffs string cite to a series of cases that stand for the unremarkable proposition that a party may not unilaterally decide that he will not appear at a deposition, even if that party has filed a contested motion for a protective order.  This simply did not happen here.  To the contrary, after the Plaintiff expressed its fear that the original discovery period might expire before the Court had ruled on the Maximum Defendants' Motion to Dismiss,

---

and expedite that process where I ask a court to now tell me what is and is not attorney/client privilege and to what extent are you going to permit her to testify or not testify to certain things, I run the risk that a judge may disagree with a lot of my points and open up the door so that she can testify openly in the Flood case.  Right now I can silence her a little bit in the Flood depositions, actually a lot, and limit the information that they get in that case. That's exactly what I want to do.…  And so far, knock on wood, her attorney has not moved forward on that process, despite his threats to do so." (emphasis added)).

[7] To the extent that the Plaintiff attempts to argue that its attempt to take depositions in an improper location simply renders the discovery "objectionable" and not "improper" it would still not save the Plaintiff's Motion.  Rule 37(d)(2) provides that "A failure described in Rule 37(d)(1)(A) is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)."  As the Plaintiff's themselves acknowledge, "The filing of the [Joint] Motion to Stay is akin to the filing of a motion for protective order…")  Plaintiff's Motion, p. 6.  Under the Plaintiff's own analysis, then, Defendants' failure to appear was an excusable event.

[8] To be clear, even if the Court were to disagree with every argument presented in this Opposition, the "fault" for Defendants' failure to appear would lie entirely with the undersigned Counsel, not the clients themselves.

the Defendants sought to voluntarily allay its concern by proposing the Joint Motion.  After first agreeing to the *concept* of the stay, the Plaintiff agreed to the wording of the Joint Motion to be filed with the Court, specifically telling the Defendants that they, "appreciate generally how neutrally the motion is drafted… [and] would possibly like to add a line that Plaintiff disagrees with each Defendant position in the pending motions, **but agrees that the motions should be resolved before discovery and other pretrial tasks are done."**  *See* <u>Exhibit 1</u> hereto.  This direct statement – sent by the Defendants *after* the issuance of the notices of deposition – comported fully with Plaintiff's earlier statements that the notices had been sent only as placeholders.

The very text of the Joint Motion – which the Plaintiff agreed to – similarly confirms the intent of the parties:

> because all the Defendants are located in foreign countries and requiring them to engage in costly international discovery and other litigation process in a matter over which this court may lack jurisdiction would do "nothing but waste the resources of the litigants in the action before the court, delay resolution of disputes between other litigants, [and] squander scarce judicial resources."  (citations omitted)

Docket No. 68, p. 2.

This was again confirmed ten days before the originally noticed dates, when Attorney Freeman and Behar told Attorney Cobb that they didn't want to waste anyone's time by attempting to proceed and that they would reach out to him before the originally scheduled dates (which they did not do).  *Cobb Decl.*, ¶ 4.

In short, this situation is the antithesis of one in which a party *unilaterally* refuses to appear at his deposition, and the cases cited that deal with such a situation are simply inapplicable.

It is also worth noting that, pursuant to Rule 37(d), a party is only entitled to recover those reasonable expenses which were "caused by" the other party's failure to appear at his deposition.  Fed. R. Civ. P. 37(d)(3); *Frank v. Paddy's Inheritance, Inc.,* 2015 U.S. Dist. LEXIS 160200 (S.D. Fla. Nov. 30, 2015) ("The Court finds, however, that Defendants are only entitled to recover fees 'caused by' Plaintiff's failure to comply with his discovery obligations.")  In the present case – and given the facts as outlined above – the only party responsible for "causing" the Plaintiff's expenses is the Plaintiff itself.[9]

> B.     The Defendants Have a Justifiable Reason Not to Appear in The District Until the Jurisdictional Issue Is Resolved.

Finally, separate and apart from the parties' agreement that discovery would not proceed until after the Defendants' Motions to Dismiss were decided.  "As a general rule, Florida courts have personal jurisdiction over nonresidents when that nonresident is properly served with service of process while voluntarily present in the state.…  So-called 'tag jurisdiction' also satisfies the Fourteenth Amendment's due process requirements because jurisdiction based on physical presence alone ... is one of the continuing traditions of our legal system that define the due process standard of traditional notions of fair play and substantial justice."  *SPM Thermo-Shield, Inc. v. SICC, GmbH*, 2015 U.S. Dist. LEXIS 153859, 5-7 (M.D. Fla. Nov. 13, 2015).

Although it is true that such service is improper if the Defendant was lured into the jurisdiction under false pretenses (*id.*), the Defendants should not be put to the Hobson's choice of appearing within the jurisdiction and risking being served by the Plaintiff while here and then being forced to litigation the question of whether they had appeared voluntarily or were "lured"

---

[9] On the flipside, Defendants' significant expenses incurred in defending Plaintiff's baseless Motion are clearly caused by the Plaintiff.  "Under 28 U.S.C. section 1927, 'any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  *Eisenberg Dev. Corp. v. City of Miami Beach*, 95 F. Supp. 3d 1376, 1380 (S.D. Fla. 2015).  If sanctions are warranted at all, they are warranted against the Plaintiff.

here.  And, lest the Court think that the Maximum Defendants are simply engaged in unsubstantiated paranoia, Defendants note that – on January 19, 2016, the Plaintiff utilized the appearance of Constantin Lucian at his deposition (in another case filed by the Plaintiff in this District) as a way to serve him with process in a completely unrelated action, proving the Maximum Defendants' point.  Sometimes, paranoia is justified.[10]  Because the Plaintiff has amply demonstrated its willingness to improperly twist the litigation process to its own designs, the Defendants should be excused from entering the jurisdiction until such time as the Court has decided their Motions to Dismiss.

## CONCLUSION

The undersigned counsel take their duties as lawyers, professionals, and officers of the Court extremely seriously.  They share this Court's observation that "Local lawyers and the Court are proud of the courteous practice that has been traditional in the Southern District." Local Rules, Appendix A, Section I(A)(1).  "Civility in the practice of law is not just an aspirational goal, but a requirement of our Local Rules and the Oath of the Florida Bar."  *Barnes v. Frameless Shower Doors & Enclosures, Inc.,* 2015 U.S. Dist. LEXIS 145458 (S.D. Fla. Oct. 27, 2015).

Both the undersigned local counsel and *pro hac vice* counsel have always prided themselves on the cooperative and professional way in which they approach the practice of law. Counsel are, quite frankly, outraged at the misleading motion that the Plaintiff has put before this Court.  The Court should be too.

For the reasons outlined hereinabove, the Plaintiff's Motion for Sanctions should be denied in its entirety.

---

[10] Plaintiff has lured the Maximum Defendants into being Charlie Brown kicking the football once.  It does not intend to fall for "Lucy's" assurances of good faith a second time.

**Respectfully submitted:**

/s/ Evan Fray-Witzer

Evan Fray-Witzer (# 564349 - *pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, MA 02116
Telephone: (617) 426-0000
Facsimile: (617) 423-4855
Evan@CFWlegal.com

/s/ Valentin Gurvits

Valentin D. Gurvits (# 643572 - *pro hac vice*)
Matthew Shayefar (# 685927 - *pro hac vice*)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Telephone: (617) 928-1804
Facsimile: (617) 928-1802
vgurvits@bostonlawgroup.com
matt@bostonlawgroup.com

*Attorneys for Maximum Apps, Inc.*
*and Frederic Valiquette*

/s/ Brady J. Cobb

Brady J. Cobb, Esquire
Florida Bar No. 031018
COBB EDDY, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone (954) 527-4111
Facsimile (954) 900-5507
bcobb@cobbeddy.com

## <u>CERTIFICATE OF SERVICE</u>

**I hereby certify** that a true and correct copy of the foregoing was served electronically via the CM/ECF electronic filing system on all counsel or parties of record on the attached service list this 17th day of February, 2016.

/s/ Brady J. Cobb
Brady J. Cobb

17

<u>**SERVICE LIST**</u>

**1:15-cv-22463-MGC**

Aaron Behar, Esquire
Jaclyn Behar, Esquire
BEHARBEHAR
1840 North Commerce Parkway
Suite One
Weston, Florida 33326
Telephone: (954) 688-7642
Facsimile: (954) 332-9260
AB@BeharBehar.com
JB@BeharBehar.com

Spencer D. Freeman, Esquire
Freeman Law Firm, Inc.
1107 ½ Tacoma Avenue South
Tacoma, WA 98402
Telephone: (253) 383-4500
Facsimile: (253) 383-4501
Email: sfreeman@freemanlawfirm.org
***Counsel for Plaintiff***

John F. O'Sullivan
Allen Paige Pegg
Hogan Lovells US LLP
Brickell World Plaza
600 Brickell Ave.
Suite 2700
Miami, FL 33131
305 459-6651
305-459-6550 (fax)
john.osullivan@hoganlovells.com
allen.pegg@hoganlovells.com
***Counsel for Defendant Clover Holdings Limited Partnership***